IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN L. JERMAN, Individually and on behalf of Others similarly situated, | ) ) ) ) | CASE NO. 1:06-CV-01397 |
| | | JUDGE PATRICIA A. GAUGHAN |
| Plaintiffs, | ) ) | |
| | ) ) | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | ) ) | |
| CARLISLE, McNELLIE, RINI, KRAMER & ULRICH, et al., | ) ) ) | |
| Defendants. | ) ) | |

## A.  INTRODUCTION

On June 7 2006, this consumer class action was brought pursuant to Federal Civil Rule 23(b)(3) and/or 23(b)(2) for statutory damages, actual damages, attorney fees and costs under the Fair Debt Collection Practices Act ("FDCPA") and Ohio Consumer Sales Practices Act ("OCSPA") for deceptive, unfair and unconscionable debt collection practices.  By agreement of the parties and this Court's order, the only issue before this Court is whether Defendants violated the FDCPA and/or OCSPA by representing that a debt will be assumed valid unless a written dispute is made. (R. 6 at 2-3).  On September 22, 2006, Defendants, Carlisle, McNellie, Rini, Kramer & Ulrich (the debt collection law firm), and Adrienne S. Foster (an attorney and debt collector employed at the law firm) ("Defendants"), filed a motion to dismiss claiming that this case is controlled by *Savage* v. *Hatcher*, 2002 WL 484986 (S.D. Ohio 1992), *aff'd*, 109 Fed.Appx. 759 (6th Cir. 2004) (unreported) ("*Savage*") (Exhibits 1 and 2 respectively).

Neither the trial court nor the Sixth Circuit Court of Appeals requested that *Savage* be reported. In the Sixth Circuit, unreported decisions, like *Savage,* "carry no precedential value [and] have no binding effect on anyone other than the parties to the action."[1]  In fact, no other court has followed *Savage*, which is factually distinguishable from this case.  Even if *Savage* has any authority, it is contrary to the plain meaning of § 1692g(a)(3), devoid of reasoning, and contrary to the vast weight of authority.[2]  Thus, *Savage* should not be followed, and this Court should overrule Defendants' motion to dismiss.

## B.   OVERVIEW OF THE FDCPA

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors because  "[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers."[3]  The focus of the

---

[1]      *Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir. 1996).  *See also, Mitchell v. Chapman*, 346 F.3d 811 (6th Cir. 2003); *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2003); and *U.S. v. Orlando*, 663 F.3d 596, 602 (6th Cir. 2004).

[2]      *See, Camacho v. Bridgeport Financial Inc.,* 430 F.3d 1078 (9th Cir. 2005) ("*Camacho")*; *Turner v. Shenandoah Legal Group, P.C.,* 2006 WL 1685698 (E.D. Va., June 12, 2006) ("*Turner*") (Exhibit 3);  *Baez v. Wagner & Hunt, P.A.,* 442 F.Supp.2d 1273 (S.D. Fla. 2006) ("*Baez")*; *Walters v. PDI Management Services,* 2004 WL 1622217 (S.D. Ind. 2004) (Exhibit 4); *In re Risk Management Alternatives, Inc., Fair Debt Collection Practices Act,* 208 F.R.D. 493 (S.D. N.Y. 2002); *In re Sanchez,* 173 F. Supp.2d 1029 (N.D. Cal. 2001); *Castro v. ARS Nat. Services, Inc.,* 2000 WL 264310 (S.D. N.Y. 2000) (Exhibit 5); *Ong v. American Collection Enterprises, Inc.,* 1999 WL 51816 (E.D. N.Y. 1999) ("*Ong*")(Exhibit 6); *Reed v. Smith, Smith & Smith,* 1995 WL 907764 (M.D. La. 1995)("*Reed* ")(Exhibit 7); *Young v. Credit Bureau of Lockport, Inc.,* 1989 WL 79054 (W.D. N.Y. 1989) (Exhibit 8), *order modified*, 729 F.Supp. 1421 (W.D. N.Y. 1989); *Harvey v. United Adjusters,* 509 F.Supp. 1218, 1221 (D. Or. 1981) ("*Harvey")*; *Cf. Graziano v. Harrison,* 950 F.2d 107 (3rd Cir. 1991); *Ingram v. Corp. Receivables, Inc.,* 2003 WL 21018650 (N.D. Ill. 2003) (Exhibit 9); *Castillo v. Carter,* 2001 WL 238121 (S.D. Ind. 2001) (Exhibit 9); *Sturdevant v. Thomas E. Jolas, P.C.,* 942 F.Supp. 426 (W.D. Wis. 1996).

[3]      15 U.S.C. §§ 1692 (b) and (e).

FDCPA is on the conduct of the debt collector, not on the conduct of the consumer.[4] Whether a judgment or debt exists is not a factor.[5]  The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires defendants to give debtors certain information.[6] Congress intended the FDCPA to be enforced primarily by consumers.[7]   Thus, consumers act as "private attorneys general" to enforce it.[8]  The FDCPA is a strict liability statute.[9]   Its only defense is the bona fide error defense.[10]   The FDCPA is a broad remedial statute that must be enforced as "Congress has written it.[11]

---

[4]    *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) ("*Keele*").

[5]    *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982) ("*Baker*"); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1998); and *Keele, supra.*

[6]    15 U.S.C. §§§ 1692(d), 1692(e), and 1692(f).

[7]    *F.T.C. v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980).

[8]    *Baker v. G.C. Services*, 677 F.2d at 780, *citing* 123 Cong.Rec. 28112-13 (1977) (remarks  of Rep. Annuzio); 1977 U.S.Code Cong. & Adm. News, at 1700);  *and Whatley v. Universal  Collection Bureau,* 524 F.Supp. 1204, 1206 (N.D. Ga. 1981).

[9]    *See, Frey v. Gangwish*, 970 F.2d 1516, 1518-19 (6th Cir. 1992) ("*Frey*"); and *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2nd Cir. 1996) ("*Russell* ") ("[I]n general context of consumer protection - of which the Fair Debt Collection Practices Act is a part - it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.").

[10]    *See,* 15 U.S.C. § 1692k(c); *Edwards v. McCormick*, 136 F.Supp.2d 795, 799-801 (S.D. Ohio 2001) ("*Edwards*"); *Smith v. Trans. Sys. Inc.*, 953 F.2d 1025, 1034 (6th Cir. 1992) ("*Smith*").

[11]    *See, Frey,* 970 F.2d at 1521.

C.  **STANDARD FOR RULING ON A MOTION TO DISMISS**

For purposes of ruling on a motion to dismiss, the actual allegations (and reasonable inferences therefrom) of the plaintiff must be accepted as true.[12]  A Rule 12(b)(6) motion "should not be granted unless it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief."[13]  A Rule 12(b)(6) motion is directed solely to the complaint and any exhibits attached to it.[14]  The issue is not whether plaintiff will ultimately prevail but whether she is entitled to offer evidence to support her claims.[15]

Consequently, a complaint will be dismissed only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the fact of the complaint there is an insurmountable bar to relief.[16]  Since the law and facts demonstrate that Defendants violated the FDCPA and/or the OCSPA, the motion must be overruled.

---

[12]  *See, Scheuer vs. Rhodes,* 416 U.S. 232, 236 (1974)(*"Scheuer"*).

[13]  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[14]  *Roth Steel Prod. V. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).

[15]  *Scheuer,* 416 U.S. at 236.

[16]  *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 857, 858 (6th Cir. 1976).

## D.  <u>STATEMENT OF THE FACTS</u>

Plaintiff alleged in her Complaint that Defendants violated the Act by misrepresenting her rights in the disclosure statement that Congress requires Defendants to provide when they begin collecting a debt.  She claimed that Defendants altered the substance of the disclosure that § 1692g(a)(3) requires by disregarding its plain language.  In its place, Defendants substituted a version that diminished the protections that Congress expressly afforded consumers.  Rather than providing the statutory disclosure, which Congress adopted and which imposes no restriction on whether a dispute may be conveyed orally or in writing, Defendants expressly limited Plaintiff to disputing a debt in writing.

In this case, Defendants attached their interpretation of the "mini Miranda warnings" to the summons and complaint in the state court action.  Because the summons and complaint were the initial collection communication[17] on the debt, § 1692g(a)(3) requires that this dun disclose, *inter alia,* the following:

> [A] statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

Plaintiff alleged that Defendants violated this provision of the Act, and thereby restricted and misrepresented the rights of consumers, by disclosing this language with an added condition that the dispute must be made "in writing."  On one hand, Defendants invite Plaintiff to call the law firm at "(216)-366-7200" for "further

---

[17]  Although not relevant to the motion to dismiss, plaintiff's counsel would like to inform this Court that when the President signs the Financial Services Regulatory Relief Act of 2006 (H.R 3505), a debt collector's summons and complaint will not constitute an initial communication under the FDCPA.  The only relevancy of this change in the law is that class membership for the FDCPA class would end the effective date of the Act.

information."[18]   However, by stark contrast, Defendants altered the statutory disclosure by inserting the underlined words in the following sentence:

> The debt described herein will be assumed to be valid by the Creditor's law firm, unless the debtor(s), or either one of them, within thirty (30) days after the receipt of the notice disputes, <u>in writing</u>, the validity of all or some portion thereof.

The sole class issue presented is whether this diminishment of § 1692g(a)(3) violated the FDCPA and/or the OCSPA.

## E.    <u>SUMMARY OF ARGUMENTS</u>

15 U.S.C. § 1692g(a)(3) unambiguously requires debt collectors, as their first order of business, to disclose to consumers that the debt will be assumed valid "unless the consumer . . . disputes the validity of the debt, or any portion thereof," within thirty days. Defendants here admit that they varied the disclosure statement by inserting the additional requirement that any such dispute must be conveyed "in writing." They cannot dispute that § 1692g(a)(3) contains no writing requirement.  Thus, this Court should overrule Defendants' motion to dismiss.

Defendants cannot argue that their version of the consumer rights statement imposing the additional writing requirement serves the purpose of the law better than the statutory language itself does.  The basis for this position is a mistaken view that Congress provided in the FDCPA no function for an oral dispute.  Even if the usefulness

---

[18]     Exhibit A, attached to the complaint, provides in part:

As of April 15, 2006 you owe $51,185.90.  Because of interest, and other charges that may vary from day to day, the amount due may differ depending on the day you pay.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  For further information, write the law firm listed below or call (216) 360-7200.

of this provision were not apparent, this argument still would be an inadequate basis for ignoring the unambiguous Congressional directive.

Nevertheless, a consumer's oral notification that a debt is disputed dovetails specifically with the entire composition of the Act, including several other relevant provisions. Congress placed special duties on debt collectors once they know that the consumer considers a debt disputed.  These duties are triggered whether that knowledge is conveyed in writing or otherwise.

The Act itself belies the linchpin of Defendants' apparent position that permitting or encouraging consumers to lodge oral disputes is irrational.  This position simply ignores the compelling reasons that Congress wanted to encourage consumers to notify debt collectors of potential challenges.

Instead of addressing this central issue, Defendants rely upon *Savage*, which followed the decision of the Third Circuit in *Graziano*.  The *Graziano* court was unaware that Congress imposed different duties on debt collectors depending on whether they learn of a dispute in writing or orally.  Thus, the *Graziano* panel incorrectly assumed that only a written dispute had a statutory value or function.  This is clearly not the case.

In the nearly fifteen years since *Graziano* was decided, numerous federal district courts have identified this fatal flaw in the Third Circuit's opinion.  Every court which has analyzed *Graziano* has concluded that its fundamental assumption was wrong and thus has rejected its holding.  On the other hand, every court, which has followed *Graziano,* including *Savage*, has merely parroted its conclusion without scrutiny or otherwise deferred to the Third Circuit's authority.  Neither *Savage* nor *Graziano* can withstand

independent analysis.  Defendants confirm this assessment by their refusal here to engage the discussion.

**F.  ARGUMENTS OF LAW**

1.  This Court Should Follow Congress's Directive to Require Defendants to Disclose to Plaintiff and Other Consumers Their Right to Dispute a Debt by Both Written and Non-Written Means

   a.  The Plain Language of § 1692g(a)(3) Exposes the Error in Defendants' Disclosure Statement.

Defendants argue that their insertion of a writing requirement into the consumer rights disclosure statement mandated by § 1692g(a)(3) should be excused notwithstanding that Congress did not impose that limitation.  It appears that the foundation for this contention is Defendants' own assessment that this alteration of statutory language better serves the purposes of the Act.  Defendants' approach (and therefore the resulting considerable restriction on the rights of consumers) is unsupportable.

In stark contrast to Defendants' position, the correct result is reached by first relying on the most venerable canon of statutory construction to discern Congressional purpose.  "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."[19] No principle is more firmly enshrined in the methodology of statutory analysis than where the language employed by Congress is clear, the text controls and no further inquiry is permitted.[20]  The Supreme Court has consistently reaffirmed these principles.

---

[19]  *United States v. American Trucking Assns. Inc.,* 310 U.S. 534, 543 (1940).

[20]  *Estate of Cowart v. Nichols Drilling Co.,* 505 U.S. 469, 475 (1992).

Statutory interpretation begins with the plain language of the statute.[21]  If the language of the statute is clear, this Court need look no further than that language in determining the statute's meaning.[22] The provision imposing the disclosure requirement[23] at issue states:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.  15 U.S.C. § 1692g.

---

[21]   *See, Plaintiff Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980).

[22]   *See, Chapman v. The Higbee Company,* 319 F.3d 825 (6th Cir. 2003) (*en banc*) ("*Chapman*"); *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir. 1995); *Chrysler Corp. v. C.I.R.,* 436 F.3d 644 (6th Cir. 2006); *U.S. v. Plavcak,* 411 F.3d 655 (6th Cir. 2005).

[23]   The rights and obligations established by § 1692g were considered by the Senate to be a "significant feature" of the Act.  S. Rep. No. 382, 95th Cong., 1st Sess. at 4.

Section 1692g(a)(3) clearly does not have the writing.  The omission is plain.[24]  Indeed, Defendants cannot dispute that § 1692g(a)(3) does not reference a written notice of dispute.

> b.  <u>The Separate Requirements to Disclose That Some Specific Types of Disputes Must Be Conveyed in Writing Confirm That Congress Purposefully Omitted the Writing Requirement in § 1692g(a)(3).</u>

The degree of clarity in § 1692g(a)(3) leaves no basis for imposing a writing requirement.  A debt collector is obligated to accurately disclose each item of information in § 1692g(a).  "A debt collector may condense and combine the required disclosures, as long as he provides all required information."[25]  The omission of a writing requirement in § 1692g(a)(3) therefore should end the debate in accordance with established law.[26]

Nevertheless, Defendants implicitly argue that the separate writing requirement in §§ 1692g(a)(4) and (5) should be exported to § 1692g(a)(3).  Even if § 1692g(a)(3) were not unambiguous and therefore resort to secondary sources of Congressional intent were appropriate, Defendants' contention is the diametric opposite from the prevailing canons of construction that the language and structure of these subsections

---

[24]     *See, e.g., Camacho,* 430 F.3d 1078; *Turner, supra*; *Baez, supra*; *Sanchez,* 173 F.Supp.2d at 1033 ("The plain language of § 1692g(a)(3) does not require that a dispute be 'in writing."); *Harvey,* 509 F.Supp. at 1221 ("The notice also requires any dispute as to the validity of the debt to be in writing. That is not required under section 1692g(a)(3)."); *Reed,* 1995 WL 907764 at *2 ("[S]ubsection (a)(3) does not require that the consumer must dispute the validity of the debt, or any portion thereof, in writing.") (Exhibit 7).

[25]     FTC Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-50110, § 809(a)-4, at 50108 (Dec. 13, 1988) (hereinafter "FTC Commentary"); *accord, Baker v. G.C. Services Corp.,* 677 F.2d 775, 777-78 (9th Cir. 1982); *Terran v. Kaplan,* 109 F.3d 1428,1431 (9th Cir. 1997) ("[T]he collection letter contained all of the statements required under section 1692g.").

[26]     *See, Chapman*, *supra*; *Appleton*, 62 F.3d 791, 801; *Chrysler Corp.,* 436 F.3d 644; *Plavcak,* 411 F.3d 655; *U.S. Hanousek*, 176 F.3d 116, 1121 (9th Cir. 1999).

indicate that the omission of the "in writing" requirement in § 1692g(a)(3) was intentional. As succinctly stated by the Sixth Circuit Court of Appeals:

> The Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute. [Defendants] would have us ignore this fact and read an exception into the statute that is nowhere to be found in its text. This we cannot do, even though the exception [they] would have us adopt may be an eminently sensible one. We must enforce this statute as Congress has written it.[27]

Additionally, Congress demonstrated (in the subsections immediately following subsection (a)(3)) its ability to impose a writing requirement on debtors; its failure to do so in subsection (a)(3) is thus less likely to be the result of inadvertence.[28] Later opinions rejecting Defendants' position also have viewed the disparate writing requirement between § 1692g(a)(3) and §§ 1692g(a)(4) and (5) as confirmation of a different intent, not an inadvertent error or sloppy draftsmanship as Defendants suppose.[29] If "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts

---

[27]     *Frey,* 970 F.2d at 1521.

[28]     *See* Elwin Griffith, *The Plain Meaning of Language and the Element of Fairness in the Fair Debt Collection Practices Act,* 27 U. Tol. L.Rev. 13, 50 (1995) ("The plain language of section 1692g(a)(3) does not require the consumer to put his objections in writing, and the omission does not seem inadvertent, given the difference in language between sections 1692g(a)(3) and 1692g(a)(4).... This seems like a careful choice of language that puts the *Graziano* approach in doubt."); and *Ong,* 1999 WL 51816 at *2 (Exhibit 6).

[29]     *Rosado v. Taylor,* 324 F.Supp.2d 917, 929 (N.D. Ind. 2004) ("If 'Congress includes particular language in one section of a statute but omits in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion,' *Russello v. U.S.,* 464 U.S. 12, 23 (1983) (citation and quotation omitted). The text imposes no writing requirement..."); and *Sanchez,* 173 F.Supp.2d at 1033.

intentionally and purposefully in the disparate inclusion or exclusion."[30]   Defendants cannot turn this canon on its head to reach an erroneous result.

    c.  <u>Requiring Defendants to Disclose to Plaintiff the Right to Dispute Debts by Non-Written Means is an Essential Prophylactic Measure Consistent with Multiple Substantive Provisions.</u>

With two exceptions -- all relevant provisions of the FDCPA require debt collectors to act to protect consumers (and themselves) in response to a non-written notification of a dispute.  The overwhelming majority of FDCPA law is solicitous of oral disputes.  Defendants now seek to undermine this vital balance that Congress has struck by barring the very notice that the Act requires to be disclosed to alert consumers to their rights and to encourage oral disputes.  The effect of this tactic, if successful, would be to eliminate significant protections that Congress adopted for the benefit of unsophisticated consumers, contrary to the very purpose of this consumer legislation.[31]

Defendants overlook § 1692c(c) that contains the only other FDCPA provision activated by a written dispute:

> (c) If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> > (1) to advise the consumer that the debt collector's further efforts are being terminated;
> >
> > (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

---

[30]    *Rusello v. U.S.,* 464 U.S. 16, 23 (1983).

[31]    *See, Baker,* 677 F.2d at 777-78.

> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt.

In all other respects, the FDCPA requires Defendants to act upon non-written notice of a dispute. The other provisions vividly illustrate the utility of the § 1692g(a)(3) disclosure.

The provision most often cited and specifically relied upon by courts is § 1692e(8):

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

Section 1692e(8) dramatically exposes the objective inaccuracy of the holding in *Graziano* that there is no "statutory ground" for a debt collector to act on an oral dispute.[32]   The plain meaning of this provision, as confirmed in the seminal decision interpreting this subsection,[33] shows that Congress expressly anticipated oral notifications alerting debt collectors that a debt is disputed and required debt collectors to act in response. Accordingly, *Graziano's* pivotal truism that only a written dispute triggers the § 1692g(b) obligation to verify a debt is immaterial because an oral dispute triggers other consumers' rights.

---

[32]    *Graziano,* 950 F.2d at 112.

[33]    *Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998) ("*Brady*").

Another example of the efficacy of non-written disputes is illustrated by *Randolph v. IMBS, Inc.*[34] In *Randolph*, three debt collectors began collecting accounts, which, unbeknownst to the collectors, had been discharged in bankruptcy.  When advised of the discharge, the collectors immediately closed their files and ceased all collection activity.[35]  The Seventh Circuit held that the collectors had not violated § 1692f's prohibition against unfair or unconscionable collection efforts because "all three collectors desisted immediately on learning about the bankruptcy proceedings."[36]  The means by which the collectors learned of the discharge was immaterial.

The *Randolph* holding can be applied to a myriad of common situations where debt collectors innocently attempt to collect, for example, void or previously paid debts, or merely pursue the wrong person.  In each of these and other circumstances, an oral dispute to the collector provides notification that permits appropriate investigation and corrective behavior.  Oral notification not only protects consumers but also provides debt collectors with an opportunity to avoid FDCPA liability.  Defendants' contention that this Court should ignore Congress's stated preference in § 1692g(a)(3) for the widest possible flow of dispute information and instead to discourage all but formal written disputes does not even serve the ultimate interests of the collection industry.

Just as informal notice and appropriate corrective action by the collectors absolved them of liability in *Randolph*, informal notice with or without an appropriate response can be the basis for escaping or aggravating liability.  Sections 1692k(b) and

---

[34]    368 F.3d 726 (7th Cir. 2004)("*Randolph*").

[35]    *Id.* at 728.

[36]    *Id.*  at 733.

(c) establish as elements for imposing statutory damages or excusing liability whether the collector's noncompliance was "intentional."

Thus, a collector's conduct undertaken after receiving notice of relevant information, however conveyed, is a key indicator of intent. For example, a debt collector continuing to collect after receiving notice that militates against doing so can expect to be assessed higher § 1692k(b) damages.[37] Conversely, a collector who acts unlawfully but unknowingly meets the first prong of the § 1692k(c) affirmative defense.[38]

Other statutory examples of the efficacy of non-written disputes and notification abound. Section 1692c(a)(1) bars communication with the consumer at "a time or place known or which should be known to be inconvenient to the consumer." For example, this provision is violated when a collector continues to call at work after the consumer orally informed collector not to do so.[39]

Similarly, § 1692c(a)(2) bars all communication with a consumer "if the debt collector knows the plaintiff is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." Again, Defendants are bound by this rule irrespective of whether this information is

---

[37] *See, e.g., Cacace v. Lucas,* 775 F.Supp. 502, 507 (D.Conn. 1991) (Maximum statutory damages awarded where debt collector continued to use offending letter after being put on notice of its illegality).

[38] *See, e.g., Smith,* 953 F.2d at 1034; *Edwards*, 136 F.Supp.2d at 799-801; and *Russell*, 74 F.3d at 36.

[39] *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 and note 10 (9th Cir. 1994) ("*Fox*"); *accord, Austin v. Great Lakes Collection Bureau, Inc.,* 834 F.Supp. 557, 559 (D.Conn. 1993); *Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.,* 969 F.Supp. 609,612 (D.Nev. 1997). These rulings also confirm the Federal Trade Commission's identical endorsement of the role of informal notification under this provision. FTC Commentary, § 805(a)-2, 53 Fed. Reg. at 50104 (Dec. 13,1988) ("A debt collector may not call the consumer at any time, or on any particular day, if he has credible information (from the consumer or elsewhere) that it is inconvenient.").

conveyed in writing.[40]  Simply stated, activation of this rule depends only on "what the debt collector knows," not how it learns it.[41]

Section 1692c(a)(3) prohibits collection communications "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." Again, Congress did not condition this rule on a debt collector's receipt of formal or written notice.[42]

Congress reaffirmed the importance that it continues to place on simple notification of a dispute by informal means when it added in 2003 its anti-theft of identity amendments to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*  In a provision applicable solely to debt collectors under the FDCPA, Congress enacted within the FCRA the requirement that certain debt collectors must inform third parties of an allegedly fraudulent account when they themselves are "notified that any information relating to a debt that the [debt collector] is attempting to collect may be fraudulent or may be the result of identity theft." 15 U.S.C. § 1681m(g). Conspicuously absent from § 1681m(g) is any requirement that the dispute be in writing.

---

[40]  *Kuhn v. Account Control Technology, Inc.,* 865 F.Supp. 1443,1453 (D.Nev. 1994). The FTC agrees. FTC Commentary, § 805(a)-3, 53 Fed. Reg. at 50104 (If a debt collector learns that a consumer is represented by an attorney in connection with the debt, even if not formally notified of this fact, the debt collector must contact only the attorney and must not contact the consumer.").

[41]  *Randolph,* 368 F.3d at 729.

[42]  FTC Commentary, § 805(a)-4, 53 Fed. Reg. at 50104 ("A debt collector may not call the consumer at work if he has reason to know the employer forbids such communication (*e.g.*, if the consumer has so informed the debt collector."); *compare, Adams v. Law Offices of Stuckert & Yates,* 926 F.Supp. 521, 529 (E.D.Pa. 1996) (no "evidence suggesting that debt collector knew or had reason to know that [consumer's] employer prohibited its employees from receiving such communications at the workplace").

d.  Defendants' Unexamined Reliance on *Graziano* and *Savage*, and Their Refusal to Address the Reasoning of the Contrary Weight of Authority Confirm Their Error.

Before *Graziano,* the federal courts that had addressed this oral/written dispute issue had, as *Graziano* acknowledges, unanimously held that the § 1692g(a)(3) disclosure must be made as enacted by Congress without the limitation to a writing requirement.[43]   The *Reed* decision (Exhibit 7) was the first to reject *Graziano's* abandonment of this plain language and portended future events.  Once the First Circuit decided *Brady* and authoritatively exposed the error in the Third Circuit's assertion that there is no "statutory ground" for debt collectors to act on an oral dispute, the federal district courts began a trend of refusing to follow *Graziano.*  Beginning with *Ong* (Exhibit 6)*,* the courts, which have independently examined *Graziano,* have unanimously concluded that § 1692g(a)(3) contains no writing requirement.  These decisions further recognize that the *Graziano* holding was indefensible for finding no utility in oral disputes and was therefore simply wrong in concluding that applying the plain language was "incoherent"[44]

Some other opinions, including *Savage*, follow *Graziano.*  However, each opinion is subject to the same flaw as Defendants' instant submittal: none answers the criticism that the provision for oral disputes permeates the FDCPA and thus none can rehabilitate the objectively erroneous foundation on which the *Graziano* court based its decision.

---

[43]     *Graziano,* 950 F.2d at 112.

[44]     *In re Sanchez, supra*; *Sambor v. Omnia Credit Services, Inc.,* 183 F.Supp.2d 1234,1240 n. 4 (D.Ha. 2002); *Rosado v. Taylor, supra; In Re Risk Management Alternatives, Inc., Fair Debt Collection Practices Act Litigation,* 208 F.R.D. 493,501-03 (S.D.N.Y. 2002); *Spearman v. Tom Wood Pontiac-GMC,* 2002 WL 31854892 at *6-8 (S.D.Ind. Nov. 4,2002) (Exhibit 11).

e.  *Savage* has no precedential value, and is not controlling in this case.

It is axiomatic that  unpublished decisions, like *Savage*, have no precedential value whatsoever except as to res judicata for the parties and their privities.[45]  Neither plaintiff nor Defendants were parties or privities in *Savage*, and therefore *Savage* has no precedential value in this case.  Defendants ignore this well-established law.

Furthermore, as explained above, *Savage* is devoid of analysis and contrary to the well-reasoned law on this issue.  Moreover, *Savage* is factually distinguishable from this case.  In *Savage*, the initial dun, which parrots § 1692g(a)(3) provides in part:

> I will assume all portions of this debt to be valid unless you dispute the validity of this debt or any portion thereon within thirty (30) days of the date you receive this letter.

In this case, the initial dun states:

> The debt described herein will be assumed to be valid by the Creditor's law firm, unless the debtor(s), or either one of them, within thirty (30) days after the receipt of the notice disputes, in writing, the validity of all or some portion thereof.

Thus, the disclosure in *Savage* expressly permitted oral and written dispute.  On the other hand, Defendants in this case required the dispute to be in writing.  Therefore, *Savage* is factually distinguishable and not controlling in this case.

f.  *Savage* Provides No Basis to Relieve Defendants From Liability.

Anticipating that the motion to dismiss will be overruled, Defendants assert that "even if this Court were to find the reasoning in the *Camacho* decision persuasive, [Defendants] cannot be held to have violated the FDCPA as a matter of law because

---

[45]    *See, Lyons v. City of Xenia,* 417 F.3d 565 (6th Cir. 2005); *U.S. v. Cromer*, 389 F.3d 662, ftn. 13 (6th Cir. 2004); *Muncie Power Products, Inc. v. United Technologies Automotive, Inc.,* 328 F.3d 870, 875 (6th Cir. 2003); *Stone v. William Beaumont Hosp.,* 782 F.2d 609, 614 (6th Cir. 1986); *Waldron v. Jackson,* 348 F.Supp.2d 877 (N.D. Ohio 2004).

the 6th Circuit's decision in *Savage* is binding precedent in the U.S. District Court for the Northerly District of Ohio."  (R.9 at 5).  Defendants ignore that this argument is in addition to the sole issue for this Court to decide.  (R. 6 at 2-3).  Therefore, the request must be summarily rejected.

Even if this Court addresses the request, it must be rejected.  Defendants cite no provision of the FDCPA or any authority whatsoever to support this unusual request. This plea is directly contrary to the standard of strict liability that Congress has imposed, ignores the affirmative defenses that Congress has allowed for Defendants to avoid liability, assumes facts that are unlikely to be proven true, and is in all respects an *ultra vires* attempt to short-circuit the orderly adjudicatory process ordered by this Court.

Defendants apparently believe that their professed lack of fault is a defense to their violation of this law.  It is incorrect.  "The FDCPA is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages."[46]  If Defendants are indeed blameless, the trier of fact may well consider that factor when it calculates statutory damages under § 1692k(b).

Otherwise, mere lack of bad intent is an inadequate excuse.  Courts have rejected almost identical attempts (but at least properly proffered with supporting evidence) to excuse liability because of the collector's good faith attempt to comply with the Act, including seeking and receiving competent legal advice.[47]  In any event, the assumptions that underlie Defendants' request for dispensation are highly suspect and

---

[46]    *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 63 (2d Cir. 1993) (citations omitted); *see also, Pittman v. J.J. Mac Intyre Co.,* 969 F. Supp. at 613; *Irwin v. Mascott,* 112 F.Supp.2d 937, 963 (N.D. Cal. 2000) .

[47]    *Baker,* 677 F.2d at 779; and *Fox,* 15 F.3d at 1514.

at this juncture mere speculation inconsistent with logic and public facts. There is no evidence, at this Rule 12(b)(6) stage of the litigation that Defendants acted in good faith reliance on *Savage*. To the contrary, the evidence may well show the opposite.

The evidence may show that no person reasonably trained in or knowledgeable about the FDCPA has ever recommended following *Graziano's* holding. Indeed, it is almost certain that the evidence will show, as it did in *McCabe v. Crawford and Company*,[48] that the American Collector's Association (ACA), debt collectors' trade group, has specifically directed its industry members to use its § 1692 model disclosure form that tracks the statutory language verbatim, including specifically § 1692g(3).[49]

The evidence should also show that this model disclosure form has been widely published and has never been seriously challenged in any jurisdiction *post-Graziano*.[50] Defendants also assume that a least sophisticated consumer would be misled by reading the disclosures mandated by the Act into believing that a non-written dispute would trigger the verification process. This assumption indulges the conjecture that this

---

[48]    272 F.Supp.2d 736, 749-50 (N.D. Ill. 2003).

[49]    The ACA model disclosure for § 1692g(3) is as follows:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that the debt or any portion thereof is disputed, this office will obtain verification of the debt or obtain a copy of a judgment, if there is one and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

[50]    *See, e.g., Wilson v. Quadremed Corp.,* 225 F.3d 350, 352 (3rd Cir. 2000); *McStay v. I.C. Systems, Inc.,* 308 F.3d 188,189 (2d Cir. 2002); *Turner v. J.V.D.B. & Associates, Inc.,* 330 F.3d 991, 994 (7th Cir. 2003); *Marshall-Mosby v. Corporate Receivables, Inc.,* 194 F.3d 830, 832-33 (7th Cir. 1999); *Russell,* 74 F.3d at 32; *Jang v. A.M. Miller and Associates,* 122 F.3d 480, 482 (7th Cir. 1997); *Olson v. Risk Management Alternatives, Inc.,* 366 F.3d 509, 511 (7th Cir. 2004).

person would not be able to understand the clear meaning of the final two sentences of the model form that tracks §§ 1692g(a)(4) and (5). In fact, that assumption is at odds with the applicable legal standard.[51]

In discovery, the evidence might show the opposite from Defendants' suppositions. The evidence may well confirm the notion that Defendants purposefully eschewed using the ACA model form, even though they had been assured that its use would insure compliance with the Act, because they wished to discourage consumers from lodging oral disputes that would then interfere with their view of an efficient collection operation. Rather than demonstrating good faith, the evidence may show that Defendants seized on *Savage* as an opportunity to avoid the inconvenience of complying with the Act.

Speculation will not resolve this question. There is no "equitable" defense to liability under the FDCPA. Defendants may present any relevant exculpatory evidence that they wish in the damage phase of these proceedings.

g. Defendants' Appeal to Amend the FDCPA by Judicial Interpretation Can Only Create Havoc.

Twenty-six years ago, the Supreme Court stated in the context of the Consumer Credit Protection Act, which the FDCPA is a part, that the judiciary is ill equipped to substitute its judgment through statutory interpretation for the legislative decisions made by Congress. "[J]udges are not accredited to supersede Congress or the appropriate

---

[51] The standard refers to people "of below-average sophistication or intelligence....that protects the naive and the credulous... [while] carefully protect[ing] the concept of reasonableness....' [T]he least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and read a collection notice with some care." *Clomon v. Jackson*, 988 F.2d 1314, 1318-20 (2nd Cir. 2003).

agency by embellishing upon the regulatory scheme."[52]  The wisdom of this admonition and the danger of such judicial activism are illustrated here.

The decision to afford statutory protections to unsophisticated consumers on the basis of whether they exercised their rights in writing is a legislative decision with far-reaching conclusions.  While the majority of the population may be quite capable of drafting a letter, a significant minority unfortunately does not have that capability, for lack of either literacy or English language skills.[53]  Also, people naturally tend to use the telephone rather than write, particularly when encouraged to do so by debt collectors, like Defendants, who provide a telephone number to call "[f]or further information."[54]

Imposing a writing requirement in any consumer protection statute therefore places a burden, sometimes insurmountable, on a portion of its intended beneficiaries.[55]  Imposing such a requirement under the FDCPA has an even greater disproportionate effect, since Congress designed the Act expressly to protect the least sophisticated debtor or consumer.[56]  Congress carefully balanced a host of competing considerations relevant to this decision and found only two appropriate occasions under the FDCPA where it required Plaintiffs to express themselves in writing, as discussed above.  In all

---

[52]    *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565 (1980)(Truth In Lending Act).

[53]    *See,* National Institute for Literacy, the State of Literacy in America: Estimates at the Local, State and National Levels (1998), available through: http://www.nifl.gov.  Pursuant to F. Evid. R. 201, this Court can take judicial notice of this fact.

[54]    *See,* Exhibit A attached to complaint, which states: "For further information, write the law firm listed below or call (216) 360-7200." *See also, Miller v. Payco-General American Credits, Inc.,* 943 F.2d 482, 484 (4th Cir. 1991); and *Woolfolk v. Van Ru Credit Corp.,* 783 F.Supp. 724, 726 (D.Conn. 1990).

[55]    *See,* White and Mansfield, *Literacy and Contract,* 132 Stanford Law & Policy Rev. 233 (2002).

[56]    *Swanson,* 869 F.2d at 125.

other situations, Congress omitted any such requirement and obligated debt collectors to respond to consumers' disputes made known by any means.

The mischief created by the *Graziano* holding extends to a host of unintended consequences that inevitably flow from its decision to withhold from consumers important information that is linked to an array of other rights and obligations within the statutory framework.  The effectiveness of each of these other provisions is necessarily compromised if consumers are told, contrary to the statutory language, that they may only dispute a debt in writing.  In view of the absence of any ambiguity in § 1692g(a)(3), the Supreme Court in 2004 provided the only appropriate reply to the same claim as Defendants' current argument that Congress made a mistake when it adopted this subsection: "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent."[57]  "It is not for a court to remake the balance struck by Congress, or to introduce limitations on an express right of action where a no limitations has been written by the legislature."[58]

2.    <u>This Court Should Hold that Defendants' Failure to Disclose to Plaintiff and Other Consumers Their Right to Dispute a Debt by Both Written and Non-Written Means Constitutes a Violation of the OCSPA.</u>

The OCSPA is a remedial statute, entitled to liberal construction and broad application to accomplish its purpose in protecting consumers and promoting fair

---

[57]    *Lamie v. United States Trustee,* 540 U.S. 526, 124 (2004).

[58]    *Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057,1060 (9th Cir. 2002).

business dealings.[59]  Under the OCSPA, strict liability is imposed whenever a supplier is shown to have committed unfair, deceptive, or unconscionable acts or practices.[60]

"Deceptive" refers to "likelihood of deception or the propensity to deceive."  *Id.* at 82.  It is how the consumer views the act or statement, which determines whether it is unfair or deceptive.[61]  The "basic test is one of fairness."[62]  Proof of actual deception is not required.[63]  Proof that defendants knowingly violated the OCSPA is not required to prove a violation.[64]

The OCSPA prohibits suppliers from engaging in unfair, deceptive, and/or unconscionable acts as defined by ORC §§ 1345.02 and/or .03.  Moreover, O.R.C. § 1345.09(D) provides for a statutory injunction, which means that a consumer does not have to prove equitable principles in order to obtain injunction relief.[65]  This Court can issue a mandatory or prohibiting injunction.[66]

---

[59]     Ohio Administrative Code § 109:4-3-01(A); *Bierlein v. Alex 's Continental Ins. Inc.*, 16 Ohio App.3d 294, 297-8 (Montgomery Cty. 1984); *Liggins v. May Co.*, 44 Ohio Misc. 81 (C.P. Cuyahoga Cty. 1975).

[60]     *Thomas v. Sun Furn. & Appliance Co.*, 61 Ohio App.2d 78 (Hamilton Cty. 1978).

[61]     *See, Brown v. Bredenbeck*, 2 Ohio Op.3d 286 (C.P. Franklin Cty. 1975); *Frey v. Vin Devers, Inc.*, 80 Ohio App.3d 1, 6-7 (Lucas Cty. 1992); *D & K Roofing, Inc. v. Pleso*, 77 Ohio App.3d 181 (Trumbull Cty. 1991); *Fletcher v. Don Foss of Cleveland, Inc.*, 90 Ohio App.3d 82, 86-87 (Cuyahoga Cty. 1993).

[62]     *Funk v. Montgomery AMC/Jeep/Renault*, 66 Ohio App.3d 815, 823 (Hamilton Cty. 1990).

[63]     *Brown v. Spitzer Ford*, 11 Ohio Op.3d 84 (Cuyahoga Cty. 1978).

[64]     *D & K Roofing, Inc.*, 77 Ohio App.3d at 184.

[65]     *Brown v. Deacon's Chrys. Plym., Inc.*, 14 Ohio Op.3d 436 (Cuyahoga Cty. 1979).

[66]     *See Brown v. Spitzer Ford*, 11 Ohio Op.3d 84 (Cuyahoga Cty. 1978).

The OCSPA applies to acts or practices committed by a "supplier" in the course of a "consumer transaction." A "consumer transaction" is broadly defined to mean a sale, lease, assignment, award by chance, or other transfer of an item for goods, a service, a franchise or an intangible, to an individual primarily for personal, family or household purposes. *See* O.R.C. § 1345.01(A). A "supplier" is defined by O.R.C. § 1345.01(C) to mean: "a seller, lessor, assignor or franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer." Contrary to Defendants' argument in a footnote, the OCSPA applies.[67]

In this case, Plaintiff alleges that she is a "consumer" and that Defendants are "suppliers" as defined by O.R.C. §§ 1345.01(C) and (D). Plaintiff further alleges that Defendants filed a foreclosure action against her on behalf of Countrywide Home Loans, Inc. (R. 1 at ¶¶ 3-5, 7).[68] Defendants effected the "consumer transaction"

---

[67]    Defendants' reliance upon *Kafele v. Frank & Wooldridge Comp.*, 108 Fed.Appx. 307, 2004 WL 1859348 (6th Cir. 2004) (unreported) (Exhibit 12) is misplaced. Defendants ignore that their argument is in addition to the sole issue for this Court to decide. (R. 6 at 2-3). Therefore, it should be summarily rejected. Also, courts do generally not consider arguments in footnotes. Even if the argument is considered, as explained above, *Kafele* has no precedential value whatsoever except as to *res judicata* for the parties and their privities. Assuming *arguendo* that this Court considers the argument, it is not controlling. In *Kafele*, the only reason the court found that the complaint did not state a claim for relief under the FDCPA and OCSPA was that the *pro se* consumer "did not allege the existence of a consumer debt or transaction within the meaning of those act." In this case, Defendants do not dispute the applicability of the FDCPA, and therefore, concede the existence of a consumer debt or transaction. Moreover, Plaintiff's complaint makes the allegations necessary for the applicability of the OCSPA. Thus, *Kafele* is not controlling. Even if it were controlling, Plaintiff should be granted leave to amend the complaint. *See*, order dated August 30, 2006. (R. 7).

[68]    Countrywide purchased the mortgage from Key Bank. Pursuant to F. Evid. R. 201, this Court can take judicial notice of this transaction from the Ashtabula County Recorder's office. Thus, Countrywide is a dealer in intangibles, and is not exempt under the OCSPA, because it does not have an office in Ohio. *See, Hanlin v. Ohio Builders and Remodelers, Inc.*, 212 F.Supp.2d 752 (S.D. Ohio 2002).

between Plaintiff and Countrywide.  Accordingly, courts have held that debt collection activities are covered by the OCSPA.[69]  Thus, the only question is whether Defendants' conduct constitutes a deceptive practice.

In this case, Defendants failed to disclose to Plaintiff her right to dispute the debt by oral means.  This nondisclosure has the likelihood of deception or the propensity to deceive a consumer, who was only informed that he/she could dispute the debt in writing.  Thus, Defendants' conduct can be considered deceptive and/or unfair in violation of the OCSPA.  Accordingly, Defendants' motion to dismiss the OCSPA claim should be overruled.

## G.  **CONCLUSION**

For the foregoing reasons, it is respectfully requested that this Court overrule Defendants' motion to dismiss, conduct the December 13, 2006 case management conference, and grant plaintiff all other relief to which she may be entitled.

/s/Edward A. Icove
Edward A. Icove 0019646
SMITH AND CONDENI, LLP
1801 East Ninth St., Suite 900
Cleveland, OH  44114
(216) 771-1760; (216) 771-3387 Fax
Edward@smith-condeni.com

Attorney for Plaintiffs

---

[69]     *See, e.g., Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49 (Summit Cty. 1984); *Liggins v. May Co.,* 44 Ohio Misc. 81 (C.P. Cuyahoga Cty. 1975); *Thomas v. Sun Furniture & Appliance Co., supra.*

CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2006 this document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this through the Court's system.

s/Edward A. Icove
Edward A. Icove
Attorney for Plaintiffs