**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

_____

|  |  |  |
|---|---|---|
| KAREN L. JERMAN, | ) | **CASE NO.:  06-cv-01397-PAG** |
| Individually and on behalf of herself | ) | |
| and all others similarly situated, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | **JUDGE PATRICIA A. GAUGHAN** |
| v. | ) | **(Magistrate Judge Perelman)** |
|  | ) | |
| CARLISLE, McNELLIE, RINI, | ) | |
| KRAMER & ULRICH, and | ) | |
| ADREINE S. FOSTER | ) | |
|  | ) | |
| Defendants. | ) | |

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Carlisle, McNellie, Rini, Kramer & Ulrich ("Defendant law firm") and

Adreine S. Foster ("Ms. Foster") (collectively "Defendants") have filed Defendants' Motion for

Summary Judgment ("Defendants' Motion") (Doc. #23) arguing that: (1) their foreclosure

complaint was not an initial communication; (2) a bona fide error defense protects them from

liability; and (3) they are protected by absolute immunity.  As discussed below, Defendants are

wrong.

**I.     PROCEDURAL HISTORY**

On June 7, 2006, Plaintiff Karen Jerman ("Ms. Jerman") filed her class action complaint

alleging that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et*

*seq.* ("FDCPA").   Defendants filed a motion to dismiss on September 22, 2006.  (Doc. #9).  The

1

Court denied Defendants' Motion to Dismiss by Opinion and Order of November 22, 2006.

(Doc. #14).  *Jerman v. Carlisle*, *McNellie, Rini, Kramer & Ulrich, et al.*, 464 F.Supp.2d 720

(N.D. Ohio 2006) ("*Jerman*").  The Court held that 15 U.S.C. § 1692g(a)(3) does not impose a

writing requirement on a consumer to dispute a debt, and that it would not insert a writing

requirement into the statute.  The Court agreed with *Camacho v. Bridgeport Financial, Inc.,* 430

F.3d 1078 (9ᵗʰ Cir. 2005) ("*Camacho*"), and the majority of district courts that have refused to

impose a written requirement on a consumer to dispute a debt.  The Court's rationale was that

"the plain meaning of the statute is neither absurd in its results nor contrary to legislative intent."

*Id.* at 725.

On January 5, 2007, Ms. Jerman filed her First Amended Complaint.  (Doc. #17).

Defendants filed their Answer on January 26, 2007.  (Doc. #19).

On February 23, 2007, Defendants filed a Motion to Stay Class Action Discovery.  (Doc.

#20).  Because this Court had previously considered the issue at the Case Management

Conference, and ordered that discovery would not be bifurcated (Doc. # 16), Ms. Jerman filed a

Motion to Compel Discovery on February 28, 2007 (Doc. #21).  Also, on February 28, 2007, Ms.

Jerman filed a F.Civ.R. P. 56(f) Motion.  (Doc. #22). This Court granted the Motion to Stay

Class Discovery, denied the Motion to Compel, and continued discovery until May 1, 2007 so

that Ms. Jerman could obtain additional evidence to oppose Defendants' Motion.  On April 11,

2007, Ms. Jerman took the depositions of Richard McNellie ("Mr. McNellie") and Ms. Foster.

("McNellie Depo.", and "Foster Depo.", Exhibits A and B attached hereto).

In opposition to Defendants' Motion, Ms. Jerman relies upon these depositions,

deposition exhibits ("Depo. Exhibit"), Defendants' supplemental production of April 19, 2007,

and an unreported case,  which are attached hereto as Exhibits C through H).

## II.  <u>STATEMENT OF FACTS</u>

On April 13, 2006, a representative of Defendants called Ms. Jerman "and verified her address and phone number,"  Exhibit C at 14 ("Party Detail Report"), which was not provided in response to Ms. Jerman's written discovery.  (Foster Depo. Exhibit B, at 26-28). On April 17, 2006, Defendants filed a foreclosure action against Ms. Jerman on behalf of their client, Countrywide Home Loans, Inc. ("Countrywide").  On April 20, 2006, Ms. Jerman was served with the summons and complaint (Depo. Exhibit 3 at 19-21, Exhibit D at 19-21), which had attached to the process a form: "Notice under the Fair Debt Collection Practices Act." (Depo. Exhibit 3 at 22, Exhibit D at 22).[1]

On April 25, 2006, counsel for Ms. Jerman wrote Ms. Foster and advised that she disputes the debt because it was paid in full on or about January 6, 2006; and verification of the debt was requested.  (Depo. Exhibit 3 at 42, Exhibit D at 42).  On May 4, 2006, Countrywide

---

[1] Attached hereto as Exhibit E is a copy of the docket obtained from the Ashtabula County Common Pleas Court in *Countrywide Home Loans, Inc. v. Jerman*, Case No. 06cv0459. Pursuant to F. Evid. R. 201, it is respectfully requested that this Court issue an order granting judicial notice of this docket. The "most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." *Colonial Penn Insurance Company v. Coil,* 887 F.2d 1236, 1239 (4th Cir. 1989), *citing* 21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5106 at 505 (1977).  "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir. 1979) (citations omitted).  *See also Green v. Warden, U.S. Penitentiary,* 669 F.2d 364, 369 (7th Cir.), *cert. denied,* 461 U.S. 960 (1983); *Ives Laboratories, Inc. v. Darby Drug Co.,* 638 F.2d 538, 544 n.8 (2nd Cir. 1981), *rev'd on other grounds sub. nom.,* 456 U.S. 844 (1982); *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969) ("Federal courts may take judicial notice of proceedings in other courts of record."); *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir.), *cert. denied,* 449 U.S. 996 (1980) (same).

advised Ms. Foster that the debt was paid in full.  On May 5, 2006,  Ms. Foster sent via facsimile

to Ms. Jerman's counsel a copy of the judgment entry dismissing the foreclosure case without

prejudice.  (Depo. Exhibit 4 at 2, Exhibit F at 2; Depo. Exhibit 3 at 43-45, Exhibit D at 43-45;

Foster Depo., Exhibit B at 28-31).  No additional documentation was provided by Ms. Foster to

Ms. Jerman's counsel.  (Foster Depo., Exhibit B at 31, Exhibit F at 31).

## III.  **QUESTIONS PRESENTED**

1.   Was Defendants' foreclosure complaint and summons served on Ms. Jerman an

   initial communication to collect a debt?

2.   Have Defendants demonstrated a bona fide error defense?

3.   Are Defendants entitled to absolute immunity?

Ms. Jerman respectfully requests that the first question be answered in the affirmative

and the second and third questions be answered in the negative.

## IV.  **ARGUMENT**

### A.   **STANDARD FOR SUMMARY JUDGMENT.**

F.Civ.R. P. 56(c) provides that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories and admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law.  A summary judgment, interlocutory in
> character, may be rendered on the issue of liability alone, although there is a
> genuine issue as to the amount of damages.

The entry of summary judgment is inappropriate where there exists a genuine and material issue

of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("*Anderson*"). Substantive

law defines which facts are material and only disputes over facts that might affect the outcome of

the case will defeat summary judgment.  *Id.* at 248.

A factual dispute is genuine if a "reasonable jury could return a verdict for the non-moving party." *Id. See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) ("*Celotex*"). Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" to prevent its entry. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 547, 586-87 (1986). It is not sufficient for the party opposing summary judgment to provide a scintilla of evidence supporting its case. *Anderson*, 477 U.S. at 252. *See also Dixon v. Anderson*, 928 F.2d 212, 216 n.5 (6th Cir. 1991).

There is no dispute as to facts regarding Defendants' violation of the FDCPA, and their inability to meet the burden of proving each of the elements of the bona fide error defense.

### B. A PLEADING MAY BE AN INITIAL COMMUNICATION.

Defendants first argue that their foreclosure complaint and summons served on Ms. Jerman was not an initial communication within 15 U.S.C. §1692g(a). Defendants' Motion at 5-7. Defendants are wrong. The majority of courts have held that a pleading may be an initial communication.

The Seventh Circuit in *Thomas v. Law Firm of Simpson & Cybak*, 392 F.3d 914 (7th Cir. 2004) (*en banc*) ("*Thomas*"), decided this issue, *i.e.* – "whether [Defendant]'s service of a summons and complaint, filed in state court, was an 'initial communication' within the meaning of the FDCPA, such that its service triggered an obligation to notify [the plaintiff] of his validation rights within five days." *Thomas*, 392 F.3d at 917.

The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The Seventh Circuit immediately recognized that "the FDCPA's broad definition of 'communication' encompasses the service of a summons and complaint," reasoning that the summons and complaint conveyed information regarding the plaintiff's debt. *Id.* The Court then acknowledged that except for the rare cases in which the literal application of a statute produces a result at odds with the intentions of its drafters, "the plain language of a statute should be conclusive." *Id.* Applying that basic rule of statutory construction to the case before it, the Seventh Circuit stated, "This is not such a case; rather, viewing the service of a summons and a complaint as an 'initial communication' is consistent with the drafters' intent." *Id.*

The Seventh Circuit identified the fundamental reason supporting its decision that "communication," as defined by the FDCPA, must include service of pleadings. By adopting an exception for service of pleadings, the Court:

> would erode the Section 1692g requirement to inform debtors of their validation rights; debt collectors could avoid their obligation to advise debtors of their validation rights altogether by initiating litigation. Such a loophole, creating an end-run around the validation notice requirement, is inconsistent with the drafters' intention of protecting debtors from 'unfair, harassing, and deceptive' collection tactics, especially because many debtors cannot afford to hire attorneys to represent them in collection actions.

*Thomas,* 392 F.3d at 918. The Seventh Circuit noted, "Congress was careful to except pleadings from the definition of 'communication' where it so intended. [15 U.S.C. § 1692e(11)]. *** No such pleadings exception exists in Section 1692g." *Id.*

The Seventh Circuit is not the only jurisdiction to find the definition of "communication" to include service of a summons and complaint. Indeed, the United States Court of Appeals for

6

the Second Circuit and the Court of Civil Appeals of Oklahoma reached the same conclusion.

In *Goldman v. Cohen*, 445 F.3d 152, 157 (2nd Cir. 2006), the Second Circuit joined the Seventh Circuit and held that "a consumer debt collector's initiation of a lawsuit in state court seeking recovery of unpaid consumer debts is an `initial communication' within the meaning of the Fair Debt Collection Practices Act. In *Thweatt v. Law Firm of Koglmeier, Dobbins, Smith & Delgado, P.L.C.*, 425 F.Supp.2d 1011 (D. Ariz. 2006), the district court considered the issue of whether a summons and complaint served in a state court action could be considered an "initial communication" under the FDCPA. The court found persuasive the rationale of the Seventh Circuit's decision of *Thomas,* that to except the service of pleadings from the definition of "communication" would erode the 15 U.S.C. §1692g requirement to inform debtors of their validation rights; debt collectors could avoid their obligations to advise debtors of their validation rights altogether by initiating litigation.

Furthermore, Judge Rice has stated: "A lawsuit initiated to collect debts is certainly included within th[e] definition [of 'communication' in 15 U.S.C. § 1692a(2)]." *Sprouse v. City Credits Co.*, 126 F.Supp.2d 1083, 1089 n. 8 (S.D. Ohio 2000). Also, in *Mendus v. Morgan & Assoc., P.C.*, 994 P.2d 83, 88 (Okla. Ct. App. 1999) ("*Mendus*"), the Court of Appeals of Oklahoma found that a summons or pleading is a "communication" under the FDCPA. The Court stated, "reliance placed upon the nonbinding FTC Commentary in light of [*Heintz v. Jenkins*] is done so at the debt collector's peril." *Id.* Noting that the FDCPA, Section 1692a(2), "allows the broadest definition to the term 'communication,'" the Court stated:

> This broad scope definition is not consistent with the FTC Commentary's
> exception for pleadings and process. However, pleading, process, and notice are

7

part of lawyers' "litigation activities" and as the Supreme Court said, "an ordinary court-related document does in fact, 'notify' its recipient that the creditor may 'invoke' a judicial remedy." [*Heintz v. Jenkins*] 514 U.S. at 296

*Mendus*, 994 P.2d at 88.

Defendants rest their argument on the Eleventh Circuit's decision of *Vega v. McKay*, 351 F.3d 1334 (11th Cir. 2003) ("*Vega*").  The Seventh Circuit *en banc* disagreed with *Vega* and stated:

> But the Eleventh Circuit relied principally on non-binding Federal Trade Commission ("FTC") staff commentary issued before Heintz, see Federal Trade Commission -- Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (1988), to which we do not give significant weight. See Heintz, 514 U.S. at 298 (declining to give much weight to FTC staff commentary discussing the FDCPA's application to attorneys). Indeed, the FTC itself, in a more recent Advisory Opinion letter issued in 2000 noted the following: "In light of Heintz, the Commission concludes that, if an attorney debt collector serves on a consumer a court document 'conveying information regarding a debt,' that court document is a 'communication' for purposes of the FDCPA." Federal Trade Commission-Staff Opinion Letter of March 31, 2000, at 3, available at http://www.ftc.gov/os/2000/04/fdcpaadvisoryopinion.htm.

*Thomas*, *supra*, 392 F.3d at 920.  Thus, the clear weight of authority holds that service of a summons and complaint is a "communication" as defined by the FDCPA.

Defendants also point to the recent amendment to the FDCPA.  Effective October 13, 2006, the Act was amended:  "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)."  15 U.S.C. § 1692g(d).  This amendment confirms that pleadings were included in the definition of "communication" which required a provision of the validation notice.  The amendment only affects a "formal pleading in a civil action" after its enactment, *i.e.* – October 13, 2006.  Because Defendants' summons and complaint served upon Ms. Jerman on April 20, 2006, before the amendment became law, their summons and complaint are subject to the requirements of 15

8

U.S.C.§ 1692g(a).

Furthermore, Mr. McNellie has admitted that: "[t]his is the form that we use as an attachment to our Complaint for the purpose of compliance with the Fair Debt Collection Practices Act." (McNellie Depo. Exhibit A, at 25). "[W]e decided that we should be safe" and "we came up with the notice, and that's when we added it and that's the way its been." (McNellie Depo. Exhibit A, at  36-38). Therefore, Defendants intended that the summons and complaint convey the statutory information, and are estopped from arguing otherwise.

### C.    <u>NO BONA FIDE ERROR DEFENSE EXISTS.</u>

Next, Defendants argue that their violation of the FDCPA resulted from a bona fide error. Defendants' Motion at 7-13.   Defendants are wrong.  Although 15 U.S.C. § 1692k(c) provides: that "[a] debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," a mistake of law is not a bona fide error.

This narrow exemption provides complete immunity to a debt collector's violation of the FDCPA only where the debt collector carries the burden of proof of each element of the defense. *See Fair Housing Advocates Assoc., Inc. v. City of Richmond Heights, Ohio,* 209 F.3d 626, 634-635 (6th Cir. 2000) (party claiming exemption from statutory liability has burden of proof to all elements of exemption).

Defendants have failed to meet their burden of producing evidence as to each element of the bona fide error defense for three reasons.  First, Defendants' action was not unintentional.

Second, a mistake of law[2] is not a bona fide error defense; and, third, even if it were, Defendants have failed to demonstrate maintenance of procedures to prevent such a violation.

    1.    <u>Mr. McNellie's inserting of "in writing" requirement in the form § 1692g(a)(3) notice was not unintentional; and Ms. Foster's violation was intentional.</u>

In order to meet their burden of proof on this issue, Defendant law firm and Ms. Foster each must show that the violation was unintentional, not that the [act] itself was unintentional." *Lewis v. ABC Business Services, Inc.,* 135 F.2d 389, 402 (6th Cir. 1998) ("*Lewis*"); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) ("*Kort*"). Neither can meet their burden of proof for the following reasons.  Defendant law firm is bound by the testimony of Mr. McNellie, the "point person" for FDCPA compliance.  (McNellie Depo. Exhibit A, at 10-13, 17; Depo. Exhibit 2 at 1, ¶¶ 4-5, Exhibit G at 1, ¶¶ 4-5).  He admitted that he intentionally adopted the "in writing" requirement because he affirmatively believed it was the "approved practice in this Judicial District" based upon his "interpretation of the law." (McNellie Depo. Exhibit A, at 26, 79-80, 82-86).[3]  He further admitted that the Defendants' "Federal Fair Debt Collection Practices Act Procures Manual" (" FDCPA manual") (Depo. Exhibit 3 at 10-18;

---

[2] Defendants stipulate that their  § 1692k(c) defense is based upon a mistake of law. (McNellie Depo. Exhibit A, at 82).

[3] At his deposition, Mr. McNellie defined "Judicial District" to be the Sixth Circuit, but relies upon the Third Circuit's opinion in *Granziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991) ("*Ganziano*") and an unreported district court decision from Michigan, *Diamond v. Corcoran*, 1992 U.S. Dist. LEXIS (W.D. Mich. 1992), neither of which are controlling in the Sixth Circuit. (McNellie Depo. Exhibit A, at 56-57, 75; Depo. Exhibit 2 at 2,¶ 9, Exhibit G at 2 ¶9).  As explained *infra* at 18-21, Mr. McNellie intentionally chose to ignore the plain language of § 1692g(a)(3), which contains no writing requirement for a dispute of the debt.

Exhibit D at 10-15)[4] does not prevent the specific violation in this case.  (McNellie Depo.

Exhibit A at 92;  Depo. Exhibit 3, at 5, Exhibit D at 5 (production response 9).  It is the only

document provided to employees relating to the maintenance of procedures to ensure compliance

with and avoid violations of the FDCPA and/or to create a bona fide error defense.  (McNellie

Depo. Exhibit A, at 44-45; Depo. Exhibit 3, at 5-6, Exhibit D at 5-6 (production response 8, 9,

12).  Thus, his actions were intentional.

     Ms. Foster never read any of the relevant cases or did any research on the issue.  Instead,

she relied upon Mr. McNellie, because "Dick [who prepared the form] is a very competent man"

and she "didn't see a reason why it would have to be changed" and "didn't even question

whether it should be changed." (Foster Depo., Exhibit B, at 22-23, 35-36).  Therefore, she

intentionally violated § 1692g.   Accordingly, neither Defendant law firm nor Ms. Foster can

meet its/her burden of proof on this element.

---

     [4] Pages 13 through 16 are a "Summary of Provisions" and pages 17 through18 are the "Summary of Procedures Which Must be Followed."  If the complaint has not been filed and served upon a consumer who calls Defendants, a  form: "Notice under the Fair Debt Collection Practices Act" is sent out within five days of the telephone call.  Otherwise, Defendants rely upon the form: "Notice under the Fair Debt Collection Practices Act" that is attached to the complaint to comply with § 1692g's notice requirements. (McNellie Depo. Exhibit A at 25, 32, 36; Foster Depo., Exhibit B, at 15-16; Depo. Exhibit 3 at 18; Exhibit D at 18).  References to these notices are contained in the "Summary of Provisions" where it is state: "We currently use a form which complies with this provision." (Depo. Exhibit 3 at 15; Exhibit D at 15).  The current "Notice under the Fair Debt Collection Practices Act" to be sent to a consumer prior to the filing of and service of a complaint (and the one to be attached to complaints) deletes the "in writing" requirement. Exhibit C at 17).  However, there is no reference in Defendants'  FDCPA manual for the staff to deal with oral disputes of debts after service of the summons and complaint, and there is no procedure in the manual to avoid making legal mistakes as to the applicability of the FDCPA.

### 2.   The mistakes were not bona fide errors.

Bona fide error means that "it was an error made in good faith; a genuine mistake, as opposed to a contrived mistake. *See* Black's Law Dictionary 168 (7th ed.1999) (defining "bona fide" as "1. Made in good faith; without fraud" and "2. Sincere; genuine")," *Kort*, 394 F.3d at 538, *citing Edwards v. McCormick*, 136 F.Supp.2d 795, 801 n. 8 (S.D. Ohio 2001) ("*Edwards*"). Neither Defendant law firm nor Ms. Foster can meet its/her burden of proof on this element.

Defendant law firm is bound by the testimony of Mr. McNellie, which demonstrates that his mistake was not in good faith, genuine, or sincere for four reasons.  First, Mr. McNellie admitted that he neither read nor heard of *Camacho* until this action was filed.  (McNellie Depo. Exhibit A, at 71).[5]  Second, Mr. McNellie's position in his affidavit is contrary to their position in Defendants' motion to dismiss (Doc. #9).  The motion argues, *inter alia*:

> a. "Plaintiff's  FDCPA Claim Fails Because The 6th Circuit Court of Appeals Has Held that A Validation Notice Requiring That A Dispute Of A Debt Be In Writing Does Not Violate The FDCPA." (Doc. #9 at 3).

> b.  "Nevertheless, even if the Court were to find the reasoning in the *Camacho* decision persuasive, Attorney Foster cannot be held to have violated the FDCPA as a matter of law because the 6th Circuit's decision in *Savage* is binding precedent in the U.S. District Court for the Northern District of Ohio."(Doc. #9 at 5).

> c.  "Thus, even if this Court were to agree with the reasoning in *Camacho*, Attorney Foster's alleged violation cannot, as a matter of law, be found to have been in violation of the FDCPA. (Doc. #9 at 5).[6]

However, Mr. McNellie left *Savage* out of his affidavit, which states that he relied upon *Granziano*  and *Diamond*.  At his deposition, he explains that *Savage* was left out of his research

---

[5] *Camacho* was cited in the complaint. (Doc. #1 at 5).

[6] These statements constitute judicial admissions.  *See, e.g.*, 10 Wright & Miller, Federal Practice and Procedure: Civil § 2723 (1973), and F.Civ.R.P. 56(c).

on the issue, that *Savage* supports his position, and if he had read it he "would have had a stronger belief that language should have stayed in our – notice." (McNellie Depo., Exhibit A at 59-60).

Third, Mr. McNellie still believes that this Court's decision is wrong and  "a subject of dispute," and open to "further judicial review" (McNellie Depo., Exhibit A, at 39, 78-79).   He dropped the "in writing" requirement because he didn't want the "hassles." (McNellie Depo., Exhibit A, at 39).  His lack of good faith is demonstrated by the fact that there is no reference in Defendants'  FDCPA manual for the staff to deal with oral disputes of debts after service of the summons and complaint, and there is no procedure in the manual to avoid making legal mistakes as to the applicability of the  FDCPA.

Last, Mr. McNellie's rationale for rejecting  the oral dispute mechanism of § 1692g(a)(3) is defective, and demonstrates bad faith.  Mr. McNellie has no problem with consumers calling his firm for "other information." (McNellie Depo., Exhibit A, at 126-127).  However, he believes that oral disputes of the amount owed his clients should not be the subject of telephone calls because  his firm "does not report defaults or credit information of any kind to third parties only accepts full reinstatements and full payoffs  directed to a particular loan account" and allegedly misleads the least sophisticated consumer.[7]  (Depo. Exhibit 2 at 2-3 at ¶ 10, Exhibit G at 2-3 at ¶ 10).  He is not aware of any statute or case that exempts Defendants from reporting the dispute to the original creditor.  (McNellie Depo., Exhibit A, at 104-105).

---

[7] The least sophisticated consumer is entitled to all of the rights under the FDCPA including the right to orally dispute a debt.  Although Mr. McNellie believes otherwise, the least sophisticated consumer would clearly be more inclined to pick up the phone and call his firm rather than write a letter.  This act set in motion the consumer's right under the FCRA to have the dispute noted on his/her credit report.

Although Defendant law firm does report disputes to the original creditor, Mr. McNellie did not know whether this information would be reported to credit reporting agencies by the original creditor as required by the Fair Credit Reporting Act, 15 U.S.C. § 1681s2(a)(2) ("FCRA").  (McNellie, Exhibit A, at 105-110).  The ability to dispute debts is an important right under the FDCPA, because it gives rise to the right to have a disputed debt noted on a person's credit report, which affects an individual's credit score, and creditworthiness.  Mr. McNellie's rationale is defective, contrary to the plain meaning of the FDCPA and FCRA, and demonstrates bad faith.

Furthermore, Ms. Foster did not act in good faith.  Ms. Foster, an attorney, has some familiarity with the FDCPA.  (Foster Depo., Exhibit B, at 10).   Any attorney that reviews § 1692g(a)(3) with the validation notice would realize that the "in writing" requirement was added to the statutory form notice.   Ms. Foster admits that she did not conduct such an investigation on the issue.  She blindly utilized Mr. McNellie's form notice.  (Foster Depo., Exhibit B, at 22-23. 35-36).

Additionally, in the motion to dismiss, Ms. Foster argues that *Savage* is controlling, and that she relied upon it.  However, at her deposition, she admitted that she never read the case.  (Foster Depo., Exhibit B, at 21-22).  Therefore, Foster did not act in good faith.   Defendants' errors were not good faith, genuine, bona fide errors. Accordingly, Defendants have failed to satisfy § 1692k(c)'s second element.

Had Defendants wanted to insulate themselves from liability on the basis that they acted in good faith, they could have sought guidance from the Federal Trade Commission ("FTC").  The FTC will issue a formal advisory opinion when "[t]he matter involves a substantial or novel

14

question of fact or law and there is no clear Commission or court precedent" or in a case where

"the subject matter . . . is of significant public interest." 16 C.F.R. § 1.1(a).  If Defendants had

taken this step, they would have no liability for "any act done or omitted in good faith

conformity with any advisory opinion of the [FTC]."  15 U.S.C. § 1692k(e).

> In that event, the collector will be protected if a court subsequently
> disagrees with the FTC's position on any issue.  The collector will enjoy
> the protection as long as it acts in good faith in conformity with the FTC's
> advisory opinion.  This safe harbor provision is related  more to questions of law,
> and does not detract from the bona fide error defense for clerical errors that is
> otherwise available under the statute.

Griffith, *Identifying Some Trouble Spots in the Fair Debt Collection Practices Act: A*

*Framework for Improvement*, 83 Neb. L. Rev. 762, 821 (2005).

3.    A mistake of law cannot form a bona fide error defense to a violation of
       the FDCPA.

The weight of authority supports a determination that a mistake of law cannot form a

bona fide error defense to a violation of the FDCPA.[8]  *Baker v. G.C. Services Corp.*, 677 F.2d

775, 779 (9th Cir. 1982) ("*Baker*") (mistake about § 1692g(a) notice requirement that debtor was

to receive written notice of right to dispute debt).  *See Smith v. Transworld Systems, Inc.*, 953

F.2d 1025, 1034 (6th Cir. 1992) ("*Smith*") ("the bona fide error defense applies only to clerical

errors") (J. Krupansky, concurring in part and dissenting in part); *Lewis, supra,* 135 F.2d at 401-

02 (debt collector's procedure manual and computer system were adequate to establish a *bona*

*fide* error defense because the alleged violation arose from a clerical error by the creditor-client,

not the defendant debt collector); *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451-52 (8th Cir.

---

[8] Mr. McNellie admitted that the mistake in this case was not clerical; and his counsel
stipulated that it was a mistake of law.  (McNellie Depo. Exhibit A at 81-82).

15

2001) ("reliance on counsel or a mistake of law about the law are not protected"); *Hulshizer v. Global Credit Services, Inc.,* 728 F.2d 1037, 1038 (8th Cir. 1984) (defense not available to collector who intentionally disregarded plain language of the FDCPA, and relied on the mistaken legal advice of an FTC staff attorney and the American Collector's Association); *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 26-27 (2nd Cir. 1989) (mistake as to whether conduct violates the FDCPA is not a bona fide error); *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 591 (D. Md. 1999); *Irwin v. Mascott,* 112 F. Supp. 2d 937, 959 (N.D. Cal. 2000). Some courts have also held that the bona fide error defense is limited to clerical errors. *Baker, supra,* 677 F.2d at 779; *Smith, supra,* 953 F.2d at 1034; *Irwin,* 112 F. Supp. 2d at 959; and *United States of America v. First Federal Credit Control Inc.,* Case No. 79-2274 (N.D. Ohio 1983) (J. White) (defense does not excuse violations that result from mistaken legal conclusions, and is only available for clerical errors which occur despite a system for correcting them) (Exhibit H).  *See also: McGowan v. King,* 569 F.2d 845, 849-50 (5th Cir. 1978) (defense, as interpreted under the similar Truth in Lending Act, available only for clerical errors).

      "Were a mistake an error in legal judgment, it could not be erased by § 1692k(c), because the Sixth Circuit treats the FDCPA as a strict liability statute.  *See Frye v. Gangwish II*, 970 F.2d 1516, 1518-1519 (6th Cir. 1992) (finding liability for technical violation of § 1692g(a) where debt collector, who had prior communications with debtor's attorney, failed to send out validation notice after first communication directly with debtor)." *Edwards*, *supra*, 136 F.Supp.2d at 800.  Therefore, a mistake of law cannot form a bona fide error defense for Defendants' violation of the  plain meaning of the FDCPA.

4.  <u>Defendants have not produced or described any  procedures reasonably adapted to avoid their violation of the FDCPA.</u>

Furthermore, neither Defendant law firm nor Ms. Foster have produced or described any procedures reasonably adapted to avoid their violation of the FDCPA.  The only written procedures are contained in the FDCPA manual.  (McNellie Depo. Exhibit A at 86-87, Depo. Exhibit 2 at 10-18).[9]  Mr. McNellie admits that Defendants' FDCPA manual does not prevent the specific violation in this case.  (McNellie Depo. Exhibit A at 92).  Additionally, Mr. McNellie did not articulate any reasonable procedure to review his legal interpretation of § 1692g. (McNellie Depo. Exhibit A  at 16-17, 61-62, 93 (discussion at firm meetings).  No document was prepared to support his interpretation.   No memorandum or other legal authority specifically addresses the issue. (McNellie Depo., Exhibit A at 45, 92;  Foster Depo., Exhibit B at 24; Depo. Exhibit 3, at 5, Exhibit D at 5 (production response 9).

Additionally, since the filing of this action, McNellie dropped the "in writing" requirement but did not make any changes in Defendants' FDCPA manual to avoid making legal mistakes as to the applicability of the FDCPA.  (McNellie Depo. Exhibit A, at 62; Depo. Exhibit 2 at 17-18, Exhibit D at 17-18). The only change made was to check to make sure that the "in writing" words were not in the notice.[10]  Defendants have no written procedure to catch future

---

[9] From 1995 [when *Heintz v. Jenkins*, 514 U.S. 291 (1995), was decided] until he was served with process in this case, Defendant law firm added "in writing" to the 15 U.S.C. § 1692g(a)(3) requirement  for consumer disputes.  After this case was filed, it was deleted from the Defendants' manual because he didn't want any "hassles." (McNellie Depo. Exhibit A at 18, 30, 36-37, 39, 53-54, 57-58, 80; Depo. Exhibit 3 at 15, Exhibit D at 15).

[10] As McNellie explained: the "girls" and "[e]veryone in firm" except "maybe copy people" knows that Defendants' validation notice should not state that disputes must be in

legal errors that arise out of violations of the provisions of the FDCPA.     As explained above,

Ms. Foster blindly followed McNellie's form and, therefore, had no procedure to catch her error.

Since the *Jerman* decision, she is checking to make sure the § 1692g(a)(3) portion of the form

does not include "in writing." (Foster Depo., Exhibit B at 24).

Therefore, the procedure in place to catch the legal error was not reasonable, and there

were no procedures reasonably adapted to avoid the specific errors in this case.  Accordingly,

Defendants have failed to satisfy § 1692k(c)'s third element.

5.      <u>Even if a mistake of law could qualify as a bona fide error defense to a
violation of the FDCPA, Defendants chose to ignore the plain language of
15 U.S.C. § 1692g(a)(3) which contains no writing requirement for a
dispute of the debt.</u>

Even if a mistake of law could qualify as a bona fide error defense to a violation of the

FDCPA, Defendants chose to ignore the plain language of 15 U.S.C. § 1692g(a)(3) which

contains no writing requirement for a dispute of the debt.

(a) Within five days after the initial communication with a consumer in
connection with the collection of any debt, a debt collector shall, unless the
following information is contained in the initial communication or the consumer
has paid the debt, send the consumer a written notice containing--

\* \* \* \* \* \* \*

(3)      a statement that unless the consumer, within thirty days after
receipt of the notice, disputes the validity of the debt, or any
portion thereof, the debt will be assumed to be valid by the debt
collector;

---

writing, and attorneys are supposed to check on the forms.  (McNellie Depo. Exhibit A, at 88-
90).  This procedure is not contained in the FDCPA manual.

15 U.S.C. §1692g.[11]  Instead, Defendants chose to graft "in writing" to the language required by 15 U.S.C. §1692g(a)(3).

Furthermore, Defendants ignored decisions, including decisions from the First and Ninth Circuits,  directly on point.  At the time Ms. Jerman was served (on April 20, 2006) with Defendants' validation notice, the vast weight of authority had held that a dispute of a debt need not be in writing:

- *Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998)

- *Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078 (9th Cir. 2005)

- *Rosado v. Taylor*, 324 F.Supp.2d 917, 929 (N.D.Ind. 2004)

- *In Re Risk Management Alternatives, Inc., Fair Debt Collection Practices Act Litigation*, 208 F.R.D. 493, 502 (S.D.N.Y. 2002)

- *Spearman v. Tom Wood Pontiac-GMC*, 2002 U.S. Dist. LEXIS 24389 at *25 (S.D.Ind. Nov. 4, 2002)

- *Sambor v. Omnia Credit Services, Inc.*, 183 F.Supp.2d 1234, 1240 n. 4 (D.Haw. 2002)

- *King v. Int'l Data Servs.*, 2002 U.S. Dist. LEXIS 26427 at *9 (D.Haw. 2002)

- *Sanchez v. Weiss (In re Sanchez)*, 173 F.Supp.2d 1029, 1033 (N.D.Cal. 2001),

- *Ong v. American Enterprise, Inc.*, 1999 WL 51816 at *3, 1999 U.S. Dist. LEXIS 409 at *8 (E.D.N.Y., Jan. 15, 1999)

- *Reed v. Smith, Smith & Smith*, 1995 WL 907764 at *2, 1995 U.S. Dist. LEXIS 22013 at * 6 (M.D.La., Feb. 7, 1995)

---

[11] "The statute is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor."  *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

- *Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638 at *6 (D.Haw. 1990)

- *Harvey v. United Adjusters*, 509 F.Supp. 1218, 1221 (D.Ore. 1981).

In fact, Mr. McNellie admitted that he neither read nor hear of *Camacho* until this action was filed  (McNellie Depo. Exhibit A, at 71).[12]  Also, Mr. McNellie did not recall reading any of the above authority, or distributing it to his staff.   (McNellie Depo. Exhibit A, at 71-74). Likewise, Ms. Foster never read any of these cases or do any research on the issue; instead she relied upon Mr. McNellie, because "Dick (who prepared the form) is a very competent man"and she "didn't see a reason why it would have to be changed" and "didn't even question whether it should be changed." (Foster Depo., Exhibit B, at 22-23, 35-36).

Thus, Defendants cannot establish a bona fide error defense because they deliberately ignored the plain language of § 1692g(a)(3) and the numerous case decisions holding that a dispute of the debt need not be in writing.  Instead, Defendants chose to add the "in writing" language to the disclosure required by 15 U.S.C. § 1692g(a)(3).

The only Ohio authority Defendants cite in support of their burden of proving entitlement to the bona fide error defense is *Taylor v. Luper, Sheriff & Niedenthal Co., L.P.A.,* 74 F.Supp.2d 761 (S.D. Ohio 1999). The approach to "legal errors" taken by the court in that case is not consistent with the manner in which the courts have traditionally viewed such errors under the FDCPA or related portions of the Consumer Credit Protection Act.  Moreover, in *Taylor*, the mistake relied upon to invoke the bona fide error defense was not based upon a "mistake about

---

[12]  After he read *Camacho*, he did not distribute it, because he changed the forms to delete the "in writing" requirement. (McNellie Depo. Exhibit A, at 74).

the applicability of the FDCPA itself." *Taylor*, 74 F.Supp.2d at 765.   It was a close legal question

about "whether the collection of a certain fee, charge or expense incidental to the principal

obligation, attorney's fees, was permitted under the law of the state of Ohio." *Id.*

Thus, even the *Taylor* court would reject Defendants' argument, because it is clear that the

plain language of § 1692g is contrary to their position, and the result of "the statute's plain

meaning is not absurd" *Camacho*, 430 F.3d at 1082;  "nor contrary to legislative intent." *Jerman*,

*supra*, 464 F.Supp.2d at 725.  This conclusion  is supported by a commentator who accepts that

some legal errors can be bona fide errors.  *See*: Flaccus, *Fair Debt Collection Practices Act:*

*Lawyers and the Bona Fide Error Defense*, 2001 Ark.L.Notes 95 (2001) (acknowledging that

attorney violating clear law cannot benefit from the defense, reviewing *Smith*, *Edward*, and

*Taylor*).

Accordingly, Defendants have failed to meet their burden of proving each of the elements

of the bona fide error defense as to the violation of the FDCPA.

##### D.     ABSOLUTE IMMUNITY IS NOT AVAILABLE TO DEFENDANTS.

In their final argument, Defendants claimed to be shielded from liability for their violation

of the FDCPA by absolute immunity.  Defendants' Motion at 14-15.  Defendants are wrong.  The

Sixth Circuit has rejected a similar request for absolute immunity in an FDCPA case arising from

an affidavit filed in a garnishment proceeding.  *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*,

434 F.3d 432 (6th Cir. 2006), *cert denied*, __U.S. __, 75 USLW 3061 (October 2, 2006) (No. 06-

123).  *See also:  Kelly v. Great Seneca Fin. Corp*., 447 F.3d 944 (6th Cir. 2006); and *Sayyed v.*

*Wolpoff & Abramson*, ___F.3d ___, 2007 WL 1345811 (4th Cir. May 9, 2007).

Additionally, Ohio District Courts  have unanimously rejected the request.  In *Barany-*

*Snyder v. Weiner*, 2007 WL 210411 at *9 (N.D. Ohio, January 24, 2007), this Court rejected debt

collectors' claims of immunity in an FDCPA case stating: "The Court agrees with Plaintiff and

other courts to address the issue that any litigation immunity doctrine is trumped by the Court's

holding in *Heintz*." *Id.* (citations omitted).

In *Hartman v. Asset Acceptance Corp.*, 467 F.Supp.2d 769 (S.D. Ohio 2004), Judge

Beckwith also rejected the debt collector's claim of absolute witness immunity. "Given the broad

language of the statute, and the absence of any firmly rooted absolute immunity for a private

plaintiff initiating a civil lawsuit with an allegedly false affidavit, the Court cannot conclude that

Asset is absolutely immune from FDCPA liability based on the common-law witness immunity

doctrine." *Id.* at 776. Furthermore, the *Hartman* Court held: "The Court concludes that the state

law 'litigation privilege' does not bar plaintiff's FDCPA complaint arising out of an affidavit filed

in state court." *Id.*. at 778. *See also*: *Blevins v. Hudson & Keyes, Inc.,* 395 F.Supp.2d 655, 658-

660 (S.D. Ohio 2004).

Furthermore, Defendants disregard that absolute immunity serves no purpose with regard

to the facts of this case. "[A]bsolute immunity is the exception rather than the rule, and has

traditionally been reserved for those actors 'intimately associated with the judicial phase of the

criminal process.'" *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) ("*Imbler*"). The Supreme

Court generally presumes "that qualified rather than absolute immunity is sufficient to protect the

government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1976).

In *Imbler*, the Supreme Court extended absolute immunity, previously available at common law,

to protect prosecuting attorneys who are sued under 42 U.S.C. § 1983 for alleged deprivations of

a criminal defendants' constitutional rights committed while the prosecutors were acting within

the scope of their duties in initiating and pursuing criminal prosecutions. The Supreme Court rejected the application of qualified immunity, finding absolute immunity justified by the "concern that harassment by unfounded litigation [might] cause a deflection of the prosecutor's energies from his public duties, and the possibility that [the prosecutor] would shade his decisions instead of exercising the independence of judgment required by his public trust. *Imbler, supra,* 424 U.S. at 423.

Since the Court's decision in *Imbler*, courts have taken a functional approach to absolute immunity. *See, Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). Using this approach, courts have concluded that a prosecutor is protected "in connection with his duties in functioning as a prosecutor. Thus, a prosecutor is absolutely immune for knowingly using false testimony, *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003), and a police officer is absolutely immune for false testimony. *Briscoe v. Lahue*, 460 U.S. 325 (1983). Also, a county judge and her clerks are entitled to absolute sovereign immunity for damages. *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003).

This rule and rationale is not applicable here. Absolute immunity has been applied to enhance the truthfulness of testimony by protecting the witness from liability. *See: Briscoe v. Lahue*, 460 U.S. 325 (1983). Truthfulness will not be enhanced by applying absolute immunity to the Defendants herein. The issue before the Court is whether the Defendants provided the validation notice as required by 15 U.S.C. § 1692g(a). There is no question of complete and forthright testimony, but rather whether the proper validation notice was timely provided to the consumer.

Thus, absolute immunity serves no purpose with regard to the facts of this case.

Defendants' claim of absolute immunity must be rejected.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion must be denied, permitting class discovery to proceed for 30 days after this Court's ruling, at which time, Ms. Jerman will file her Motion for Class Certification.  (Doc. #16).  It is anticipated that this will give the Court enough time to rule on Defendants' Motion prior to the August 28, 2007 status/settlement conference.

Respectfully submitted,


/s/Edward A. Icove                         /s/O. Randolph Bragg
Edward A. Icove (0019646)                  O. Randolph Bragg
Icove Legal Group, Ltd.                    Horwitz, Horwitz &Associates, Ltd.
55 Public Square, Suite 627                25 E. Washington, Suite 900
Terminal Tower                             Chicago, Illinois 60602
Cleveland, OH 44113                        (312) 372-8822
(216) 802-0000; (216) 802-0002             (312) 372-1673 (Facsimile)
E-mail: ed@icovelegal.com                  E-mail: rand@horwitzlaw.com
Attorneys for Plaintiffs                   Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2007 this document was filed electronically.  Also, notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this through the Court's system.

/s/ Edward. A Icove
Attorney for Plaintiffs

24