IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KAREN L. JERMAN, | ) CASE NO. 1:06-CV-01397 |
| Plaintiff, | ) JUDGE PATRICIA A. GAUGHAN |
| v. | ) |
| CARLISLE, McNELLIE, RINI, KRAMER & ULRICH, *et al.* | ) **REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) |

Defendants Adrienne S. Foster, Esq. and the law firm of Carlisle, McNellie, Rini, Kramer & Ulrich submit the following Reply Brief to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment.

**A. A COMPLAINT IS NOT AN INITIAL COMMUNICATION UNDER THE FDCPA.**

Plaintiff argues that the foreclosure complaint filed by Defendants should be considered an initial communication. In support of this position, Plaintiff relies on the reasoning of the Seventh Circuit Court of Appeals' decision in *Thomas v. Law Firm of Simpson & Cybak*, 392 F.3d 914 (7th Cir. 2004). Plaintiff's reliance on *Thomas* is misplaced.

As Plaintiff indicates in her Memorandum, the "fundamental reason" for which the split panel in *Thomas* rendered its decision was that to exclude pleadings from initial communications would result in an erosion of the requirement that debtors be informed of their validation rights. In other words, "...debt collectors could avoid their obligation to advise debtors of their validation rights altogether by initiating litigation." *Id*. at 918. Nevertheless, since the *Thomas* decision, the "fundamental reason" cited by the court has been specifically rejected by Congress with the enactment of §1692g(d), which expressly states that "formal pleadings in a civil action shall not be treated as an initial communication for purposes of [the FDCPA]." Indeed, Congress's exclusion of pleadings from initial communications only makes sense in light of the sound reasoning of Judge Evans, who in his dissenting opinion in *Thomas* aptly observed that the primary purpose of the

FDCPA is to prevent abusive debt collection practices, and "[t]here is no indication whatsoever that Congress considered state law legal remedies to be 'abusive,' nor does it appear necessary to alter the procedures for filing state lawsuits to level the playing field." *Id.* at 921.

Moreover, prior to the enactment of §1692g(d), there was no binding case law authority on this issue in the Sixth Circuit.  At best, there was only a clear split in authority in the few Circuit Courts that had considered the issue.  Consequently, there is no tenable argument for holding that a civil pleading, whether filed before or after the enactment of §1692g(d), should be considered an initial communication triggering rights under the FDCPA.

Plaintiff also contends that because Defendants treated the filing of their foreclosure complaint as an initial communication by sending a validation notice, they should be estopped from arguing otherwise.  This argument ignores reality.  Defendants, faced with no guidance from the Sixth Circuit on the issue, and a clear split in authority between the other Circuits, took the precaution of sending a validation notice even though it may not have been required.  Simply, the fact that Defendants sent a validation notice does not preclude them from asserting the logical and reasonable position that a pleading do not constitute an "initial communication."

Accordingly, Defendants' foreclosure complaint sent to Plaintiff did not constitute an initial communication triggering rights under §1692g(d) and, on this basis alone, Plaintiff's Amended Complaint fails as a matter of law.

**B. THE UNDISPUTED EVIDENCE DEMONSTRATES THAT ANY VIOLATION OF THE FDCPA BY DEFENDANTS RESULTED FROM A BONA FIDE ERROR.**

  **1. Any violation of the FDCPA by Defendants was unintentional.**

Plaintiff attempts to confuse the issue of whether Defendants' violation of the FDCPA was intentional, with the issue of whether the communication itself was intentional.  There is no dispute that the communication was intentionally sent.  Nevertheless, as already discussed at length, at the time Defendants sent the validation notice to Plaintiff, the only case law in existence within the Sixth Circuit held that the use of the words "in writing" did not violate the FDCPA.  Thus, notwithstanding

2

the alleged plain language of the statute, or any decisions rendered in other Circuits, Defendants were in a position where the very best they could do was guess as to whether their validation notice was compliant with the FDCPA.  Indeed, to hold that Defendants intentionally violated the FDCPA would be to disregard the case law that existed within the Sixth Circuit and find that there was no reasonable legal basis upon which Defendants could use the words "in writing."

Further, Plaintiff claims that Ms. Foster intentionally violated the FDCPA because she did no independent research on the "in writing" issue, but rather relied on Mr. McNellie.  The flaws in Plaintiff's argument are obvious.  First, it was Mr. McNellie, as the senior principal of the law firm, who was the person designated as responsible for compliance with the FDCPA -- not Ms. Foster. Mr. McNellie made the decision to include the words "in writing" in the firm's validation notice, and did so after taking reasonable steps to familiarize himself with the legal issues and case law. Consequently, Ms. Foster's reliance on Mr. McNellie's decision was both reasonable and justified. Second, Plaintiff's argument assumes that independent research would have lead Ms. Foster to a different conclusion than Mr. McNellie.  Nevertheless, as already discussed at length, given the case law in the Sixth Circuit, along with the conflicting case law from the other Circuits, Ms. Foster would have been in the same exact position as Mr. McNellie, which would have been to guess at the right course of action.  Given the unresolved state of the law at the time, neither Ms. Foster nor the law firm intentionally violated the FDCPA.

   **2. <u>Any violation of the FDCPA by Defendants was made in good faith.</u>**

Plaintiff makes several arguments that Defendants' did not act in good faith.  First, Plaintiff asserts that because Defendants admit they were not aware of the *Camacho* decision at the time they sent the validation notice, they did not act in good faith.  Plaintiff's argument, however, assumes that if Defendants were aware of *Camacho* they would have changed their validation notice.  This is simply not the case as the *Camacho* decision is not binding authority and was in conflict with the case law in the Sixth Circuit.  For Defendants to have changed their validation notice based on *Camacho* would have required Defendants to guess as to which court was right.

Second, Plaintiff argues that Defendants did not act in good faith because their Motion to Dismiss cited to *Savage* in support of their position that use of the words "in writing" did not violate the FDCPA, after admitting that *Savage* was not considered at the time the validation notice was sent. Plaintiff's argument, however, is misplaced. In Defendants' Motion to Dismiss, Defendants did not allege that they relied on *Savage*, rather, *Savage* was simply cited by defense counsel as legal authority supporting Defendants' position. Indeed, Defendants have consistently stated in their affidavits and depositions that they believed the use of the words "in writing" were sanctioned pursuant to *Graziano* and *Diamond*.

Third, Plaintiff maintains that because Mr. McNellie still believes that the use of the words "in writing" is proper, notwithstanding this Court's decision on Defendants' Motion to Dismiss, Defendants somehow acted in bad faith when they sent the validation notice. With all due respect to this Court's decision, there still exists divergent case law throughout the Circuits on the subject issue. Moreover, the issue is still open to judicial review in the Sixth Circuit. Further, Mr. McNellie's current beliefs as to whether the words "in writing" are proper has absolutely no bearing on the issue of whether Defendants acted in good faith in relying on *Graziano* and *Diamond* at the time the validation notice was sent to Plaintiff.

Fourth, Plaintiff asserts that Defendants did not act in good faith because of the rationale cited by Mr. McNellie at deposition for not agreeing with the oral dispute mechanism of §1692g(a)(3). Nevertheless, Mr. McNellie's rationale does not constitute a lack of good faith because his decision to include the words "in writing," regardless of the rationale, was supported by existing case law within the Sixth Circuit. Moreover, Mr. McNellie's rationale itself, for how §1692g(a)(3) should be applied to Defendants' particular area of practice, does not constitute a lack of good faith. The fact remains that Defendants are not typical debt collectors, but rather handle residential foreclosures as the majority of their business. (Ex. A, ¶¶ 2-5).

In foreclosure actions, as opposed to collections involving unsecured debt, Defendants do not report defaults or credit information to any third parties. (*Id*. at ¶ 6). Rather, on behalf of their

4

clients, Defendants only accept full reinstatements and full payoffs directed to particular loan accounts. (*Id.* at ¶ 7). Thus, in foreclosure cases, as opposed to a typical debt collection, if a debtor notifies Defendants that she disputed a debt in any manner other than in writing, Defendants are not obligated to take any action whatsoever, and a debtor would derived absolutely no benefit from such a verbal dispute. (*Id.*). Indeed, in foreclosure cases the only possible benefit that could ever be derived by a debtor in disputing a debt is to have the debt verified. (*Id.*). As a practical matter then, without the words "in writing" in a validation notice, a debtor would likely be mislead into believing that she was entitled to some sort of a response under the FDCPA, even though §1692g(b) only requires a response if the debt is disputed "in writing." (*Id.* at ¶ 8). Consequently, whether Mr. McNellie's rationale is right or not, Mr. McNellie's concern for not misleading debtors in foreclosure actions can hardly be seen as a lack of good faith.

Lastly, Plaintiff claims that had Defendants wanted to insulate themselves from liability under the FDCPA, they could have requested an advisory opinion from the Federal Trade Commission. The problem with Plaintiff's argument is that the issue in this case is not whether Defendants should have insulated themselves from liability. Rather, the issue is whether they acted in good faith. Even with an advisory opinion from the FTC, Defendants would have still been required to guess at the right course of action given the conflicting case law on the issue.

### 3. **A mistake of law can form the basis for a bona fide error.**

In arguing that a mistake of law cannot form the basis for a bona fide error, Plaintiff cites to *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992) and its progeny. Notably, however, Plaintiff fails to discuss the fact that the majority opinion in *Smith* never held that the bona fide error defense does not apply to legal errors, or that subsequent District Court decisions have misinterpreted the *Smith* decision based on the dissenting opinion of Judge Krupansky. Further, Plaintiff fails to address the fact that limiting the application of 1692k(c) to clerical errors would require inserting language into the statute that is simply not there.

5

### 4. **Defendants made good faith efforts to comply the FDCPA.**

Plaintiff argues that Defendants did not adopt "reasonable" measure to avoid violation of the FDCPA, notwithstanding the fact that Mr. McNellie, among other things, regularly attended seminars dealing with FDCPA issues, reviewed and distributed relevant case law, conducted regular meetings, and encouraged open discussion of FDCPA issues.  According to Plaintiff, "reasonable" measures would include preparing formal memoranda on each and every issue related to the FDCPA.  Apparently, the preparation of a formal memorandum would have permitted Defendants to catch their mistake in using the words "in writing," notwithstanding the inconsistent and ever-changing case law surrounding the issue.

Such an argument is simply disingenuous and must be seen for what it really is -- nothing more than an attempt to overcome summary judgment by attempting to impose "unreasonable" and "overly burdensome" procedures on the Defendants.  Given the divergent case law that existed on the "in writing" issue, no procedure, no matter how stringent, could have lead Defendants to know that this Court would find an FDCPA violation in the validation notice sent to Plaintiff.

### 5. **The alleged plain language of the statute does not obviate the bona fide error defense.**

Plaintiff contends that even if a mistake of law can constitute a bona fide error, Defendants violation cannot be the result of a mistake because the plain language of the statute makes it clear that the words "in writing" are not to be included in a validation notice.  The fatal flaw in Plaintiff's argument, however, is that if the language was as plain as Plaintiff suggests, then there would not be conflicting case law on the issue throughout the Circuit and District courts.  Notwithstanding the alleged plain language of the statute, at the time Defendants sent the validation notice to Plaintiff, the only case law within the Sixth Circuit held that the use of the words "in writing" was proper.  Defendants relied on this case law, which according to this Court's decision on Defendants' Motion to Dismiss, turned out to be a mistake.

**C. DEFENDANTS ARE ENTITLED TO IMMUNITY.**

Again, Plaintiff has missed the point. In her Memorandum, Plaintiff cites to cases where courts have held that immunity does not apply in situations where the nature of the function performed is as a witness. As discussed in Defendants' Motion for Summary, Defendants do not seek immunity as witnesses, but rather, as advocates. *See Kalina v. Fletcher*, 522 U.S. 118 (1997).

In *Kalina*, the Court found that a prosecutor was protected by absolute immunity with regard to the filing of an unsworn document because he was functioning as an "advocate of the state in a judicial process." On the other hand, the court found that there was no absolute immunity as it applied to the prosecutor's filing of a sworn document because he was functioning then as a "complaining witness," and not an advocate.

In this case, Defendants were serving in their function as advocates in the judicial process and not witnesses when they filed the foreclosure complaint and, thus, they were an integral part of the judicial process. Accordingly, Defendants are immune from liability arising out of the filing of the foreclosure complaint.

**D. CONCLUSION**

The purpose of the FDCPA is to eliminate abusive debt collection practices -- not to punish debt collectors who must make difficult judgments on issues where the law is unresolved. When considered in this light, to find that the "in writing" violation contained in Defendants' validation notice was intentional would be contrary to the undisputed facts of this case, as well as to the intent and spirit of the FDCPA.

Thus, Defendants respectfully request summary judgment on Plaintiff's Amended Complaint because: (1) the foreclosure complaint was not an "initial communication" under the FDCPA; (2) Defendants are entitled to the bona fide error defense available under § 1692k(c) because they relied on existing case law within the Sixth Circuit when drafting the Validation Notice at issue; and (3) Defendants are immune from liability from Plaintiff for the act of filing a foreclosure complaint with an attached Validation Notice.

Respectfully submitted,

*/s/ George S. Coakley*
GEORGE S. COAKLEY (0020419)
JAMES O'CONNOR (0063428)
Reminger & Reminger, Co., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
216/430-2160; 216/430-2291 (fax)
gcoakley@reminger.com
joconnor@reminger.com

*Attorneys for Defendants Carlisle, McNellie, Rini, Kramer & Ulrich and Adrienne S. Foster*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June 2007, a copy of the foregoing *Reply Brief In Support Of Motion For Summary Judgment* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ George S. Coakley*
GEORGE S. COAKLEY (0020419)
JAMES O'CONNOR (0063428)