**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Karen L. Jerman,** | ) | **CASE NO. 1:06 CV 1397** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Carlisle, McNellie, Rini, Kramer** | ) | **Memorandum and Opinion and Order** |
| **& Ulrich, et al.** | ) | |
| Defendants. | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 23). For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff, Karen L. Jerman, filed this Class Action Complaint against defendants, Carlisle, McNellie, Rini, Kramer & Ulrich and Adrienne S. Foster. The Complaint alleges that on April 17, 2006, defendants filed a foreclosure action against plaintiff on behalf of Countrywide Home Loans, Inc. in the Ashtabula County Court of Common Pleas. Attached to the state court complaint was a form Notice Under the Fair Debt Collection Practices Act

1

(hereafter, the form validation notice), which provided, among other things, "the debt described herein will be assumed to be valid by the Creditor's law firm, unless the debtor(s), or either one of them, within thirty (30) days after receipt of this notice, dispute, in writing, the validity of the debt or some portion thereof."

The Complaint sets forth two claims.  Count One alleges a violation of the federal Fair Debt Collection Practices Act (FDCPA).  Count Two alleges a violation under the Ohio Consumer Sales Practices Act (OCSPA).  Both claims are premised on the allegation that the form validation notice is defective in two ways.  First, representing to consumers that the debt will be assumed valid unless *written* dispute has been made violates 15 U.S.C. § 1692g which provides:

> **§ 1692g. Validation of debts**
>
> (**a) Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

15 U.S.C. § 1692g(a)(3).  Second, failing to make clear that the 30 days given to dispute the debt does not alter the 28 day deadline to answer the complaint constitutes language that "overshadows or contradicts other language informing a consumer of her rights" and, thus, violates the FDCPA.

Upon agreement of the parties, defendants filed a motion to dismiss to resolve solely whether representing to consumers that debts will be assumed valid unless a written dispute is

made is a violation of 15 U.S.C. § 1692g and/or Ohio Consumer Sales Practices Act, R.C. § 1345.01 *et seq.* Thereafter, this Court issued its Memorandum of Opinion and Order concluding that defendants' form validation notice violates the FDCPA in so far as it states that disputes must be made in writing.

Subsequently, plaintiff filed her Amended Class Action Complaint: Unfair Debt Collection Practices which sets forth one claim for relief, namely that defendants violated § 1692g(a)(3) of the FDCPA by representing to consumers that the debt will be assumed valid unless a written dispute has been made and defendants violated § 1692e(10) by using false, deceptive, and/or misleading means and/or representations in connection with the collection of any debt.

This matter is now before the Court upon defendants' Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242,

3

248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Defendants argue that they are entitled to summary judgment on three bases: (1) the foreclosure complaint was not an "initial communication" such as would trigger any rights under the FDCPA, (2) defendants' alleged mistake was unintentional and resulted from a bona fide error and (3) defendants are absolutely immune from liability because their actions were nothing more than an integral part of the judicial process.

**(1) whether the foreclosure complaint was an "initial communication"**

Defendants submit the affidavit of defendant Adrienne S. Foster who avers the following. Ms. Foster is an associate with the law firm of Carlisle, McNellie, Rini, Kramer & Ulrich Co. L.P.A. She was assigned plaintiff's foreclosure matter at issue here. On April 20, 2006, plaintiff was served by certified mail with the foreclosure complaint which included the FDCPA validation notice. Foster had no other communication with plaintiff. On April 25, 2006, Foster received a correspondence from Attorney Edward A. Icove indicating that plaintiff disputed the debt alleged in the foreclosure complaint. On April 26, 2006, Foster contacted her client, Countrywide Home Loans, Inc., to obtain a verification of the debt. On May 4, 2006, Countrywide notified Foster that the loan had been paid in full. On May 5, 2006, Foster sent a judgment entry dismissing the foreclosure action to the Court for filing with a copy to Attorney Icove via facsimile. The judgment entry dismissing the foreclosure was filed with the Ashtabula County Court of Common Pleas on May 11, 2006. (Foster aff.)

Defendants argue that the foreclosure complaint did not constitute an initial communication under the FDCPA, thus triggering the validation rights under the Act.

Section 1692g(a) provides in relevant part:

**(a) Notice of debt; contents**

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

As such, before validation rights under § 1692g(a) can be triggered, there must be an "initial communication" on the part of the debt collector. Other than a contact with plaintiff on April 13, 2006 by a representative of defendants to verify plaintiff's address and telephone number, the first (and only) communication between defendants and plaintiff was the foreclosure complaint served on plaintiff on April 20, 2006. (Doc. 28 Ex. C)  Defendants assert that this was not an "initial communication" as the term is defined by the FDCPA.

At the time plaintiff was served, there was no binding case law authority in the Sixth Circuit on the issue of whether a complaint and summons is an initial communication to collect a debt, but three Circuits had addressed the question without agreement.  *See Goldman v. Cohen,* 445 F.3d 152 (2d Cir. 2006), *Thomas v. Law Firm of Simpson & Cybak,* 392 F.3d 914 (7th Cir. 2004) (6-4 decision) (Evans, J., dissenting) and *Vega v. McKay*, 351 F.3d 1334

(11th Cir. 2003).  *Goldman* and *Thomas* held that a consumer debt collector's initiation of a lawsuit in state court seeking recovery of unpaid consumer debts is an "initial communication" within the meaning of the FDCPA and *Vega* held that a complaint does not constitute an initial communication.

Additionally, one district court in this Circuit noted in a footnote that a lawsuit initiated to collect a debt is an initial communication.  *Sprouse v. City Credits,* 126 F.Supp.2d 1083, n. 8 (S.D. Ohio 2000)

Effective October 13, 2006, § 1692g of the FDCPA was amended to state:

**(d) Legal pleadings**

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section.

This amendment was added after plaintiff was served with the foreclosure complaint herein. Nevertheless, defendants argue that it expresses the intent of Congress that a civil pleading is not to be considered an initial communication.  Plaintiff contends that the amendment only affects a "formal pleading in a civil action" after its enactment (October 13, 2006), and confirms that pleadings were included in the definition of "communication."

For the following reasons, this Court disagrees with defendants that the foreclosure complaint was not an initial communication.

In *Goldman*, the most recently decided case, the Second Circuit determined that a consumer debt collector's initiation of a lawsuit in state court seeking recovery of unpaid consumer debts is an "initial communication" within the meaning of the FDCPA based on several considerations, including the following which this Court finds persuasive.

First, the plain language of the FDCPA broadly defines the term "communication" as

7

"the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).  Recognizing the general rule that the plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute would produce a result demonstrably at odds with the intentions of its drafters, the court concluded that the plain meaning of the FDCPA is "entirely consistent with Congress's goal of preventing what it characterized as 'serious and widespread' debt collection abuses." In that regard, the court surmised that "any construction of the FDCPA that exempted state legal proceedings from the definition of 'initial communication' would permit debt collectors to avoid the validation notice requirements of the statute simply by collecting debts through the medium of litigation."

Second, the court pointed out that the Supreme Court held in *Heintz v. Jenkins*, 514 U.S. 291(1995), that the FDCPA's term "debt collector" includes lawyers who regularly try to collect payment of consumer debts through legal proceedings and concluded that "the [FDCPA] applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Additionally, the court noted that Congress has since amended another section of the FDCPA to clarify that certain disclosure requirements (other than those specified in § 1692g(a)) do not apply to a formal legal pleading made in connection with a legal action. The court concluded that that section's express exclusion of a legal pleading from the scope of the term communication implies the drafters' understanding that the term 'communication' would otherwise include legal pleadings.

Finally, the court stated that the Eleventh Circuit's decision of *Vega, supra,* reaching the opposite conclusion, relied upon a Staff Commentary of the Federal Trade Commission

8

which had been superseded. The *Goldman* court stated, "A Commission advisory opinion issued in March 2000 explicitly repudiated that Staff Commentary in light of the Supreme Court's decision in *Heintz*, and held that a formal legal pleading which conveyed information about a debt would indeed constitute a communication within the scope of the FDCPA."

Likewise, *Thomas, supra,* held that a law firm's service of a summons and complaint, filed in the state court against a debtor, was an initial communication within the meaning of the FDCPA and, therefore, triggered an obligation, under 15 U.S.C. § 1692g(a), to timely notify the debtor of his validation rights.  The court, like *Goldman,* looked to the FDCPA's broad definition of a "communication," concluding that it encompasses the service of a summons and complaint.  The court stated that its interpretation of the statute supports its intention to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices" by  helping to ensure that debtors will be informed about their validation rights and that debt collectors, knowing that they are obliged to advise debtors of these rights, will investigate claims before initiating litigation to collect debts.  Moreover, the court reasoned that not including service of pleadings in the definition of "communication" would "erode the § 1692g requirement to inform debtors of their validation rights; debt collectors could avoid their obligation to advise debtors of their validation rights altogether by initiating litigation." Additionally, the court recognized that while Congress excepted pleadings from the definition of "communication" in § 1692e(11), no such pleadings exception exists in § 1692g.  Finally, the *Thomas* court also pointed out that *Vega*, which reached the contrary result, relied on a FTC commentary which had been replaced by an opinion stating that an attorney debt collector's service of a court document conveying information about a debt is a FDCPA

9

communication. A dissent was filed in *Thomas* which concluded that including the filing of a summons and complaint in the definition of communication runs counter to the intent of the statute.

Based on the weight of the authority at the time plaintiff herein was served with the summons and complaint, the foreclosure complaint was an initial communication triggering rights under the FDCPA.

**(2) whether defendants are entitled to the bona fide error defense**

Next, defendants argue they are nevertheless entitled to judgment as a matter of law based on the FDCPA's bona fide error defense which provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

A "debt collector must only show that the violation was unintentional, not that the communication itself was unintentional." *Lewis v. ACB Business*, *Services, Inc*., 135 F.3d 389, 402 (6th Cir. 1998).

Defendants assert that the bona fide error defense applies to mistakes of law, as occurred here[1], as well as clerical errors. Plaintiff disagrees and asserts that a mistake of law is not a bona fide error. For the following reasons, this Court finds that a mistake of law can form a bona fide error defense.

As one court has recognized,

---

[1] It is not disputed that this matter rests on a mistake of law.

> There is a split of authority among the circuits as to whether the bona fide error defense applies to mistakes of law. The majority view is that the defense is only available for clerical and factual errors. *See, e.g., Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451-52 (8th Cir.2001); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2nd Cir.1989); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir.1982).

*Nielsen v. Dickerson,* 307 F.3d 623 (7th Cir. 2002). That court also pointed out, however, that "a growing minority of courts... have concluded that mistakes of law can be considered bona fide errors under § 1692k(c)." *Id.* In particular, *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002), held that the bona fide error defense is applicable to mistakes of law and collected the cases finding the same.

As for the Sixth Circuit, plaintiff relies on the decision of *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025 (6th Cir. 1992), which recognized that the bona fide error defense protects a debt collector from liability due to a clerical error. The case undoubtedly involved a clerical error. The majority of the court in that decision did not address whether the bona fide error defense applied to mistakes of law as well as clerical errors. Rather, plaintiff cites to the statement of Judge Krupansky, who concurred in part and dissented in part, that "the bona fide error defense applies only to clerical errors." Judge Krupansky did not analyze the issue but merely cited to *Baker v. G.C. Servs. Corp.*, *supra*. Nonetheless, as *Nielson, supra,* recognized:

> The Ninth Circuit's opinion in *Baker*, the first appellate precedent on this point, looked principally to the cases that had uniformly construed the Truth-in-Lending Act's ("TILA") bona fide error provision ...not to immunize legal errors. The TILA provision, however, expressly states that 'an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.' It also includes an illustrative list of errors that would constitute bona fide errors, including 'clerical, calculation, computer malfunction and programming, and printing errors.' By contrast, the FDCPA's provision does not expressly remove legal mistakes from the realm of errors that can be considered bona fide, nor does it in any other way illustrate what types of mistakes can or cannot be deemed bona fide.

The "growing majority of courts" finding that mistakes of law can be considered bona fide errors note this distinction between the two statutory provisions. *See*, for example, *Johnson v. Riddle, supra*:

> Of the cases which hold that the defense does not apply to mistakes of law, almost all dispense with the issue by citing earlier cases back to the Ninth Circuit's decision in *Baker v. G.C. Servs. Corp*., [*supra*] *Baker* rested its holding entirely upon the similarity of the FDCPA bona fide error defense to the 'nearly identical' bona fide error defense provided in the [TILA], a provision uniformly interpreted to apply only to clerical errors and not to legal errors. However, the TILA analogy is faulty, as the Seventh Circuit has explained:
>
>> [The plaintiff] also analogizes the provision to a similar section in [TILA] which is limited to clerical mistakes and which does not include errors of judgment or law. But ... the TILA bona fide error provision expressly defined bona fide errors as [including, but not limited to,] 'clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.' The FDCPA provision does no such thing. This, along with the statutes' different purposes, distinguishes the two.
>
> *Jenkins v. Heintz*, 124 F.3d 824, 832 n. 7 (7th Cir.1997). Unlike TILA, the plain language of the FDCPA suggests no intent to limit the bona fide error defense to clerical errors. To the contrary, § 1692k(c) refers by its terms to any 'error' that is 'bona fide.' We find no indication in the legislative history that Congress intended this broad language to mean anything other than what it says.

*Id.* at 1122-1123.

This Court agrees with this reasoning and, accordingly, finds that the bona fide error defense applies to mistakes of law.[2]

---

[2] Plaintiff further argues that even if a mistake of law could qualify as a bona fide error defense, defendants chose to ignore the plain language of § 1692g(a)(3) which contains no writing requirement for a dispute of a debt and the numerous case decisions outside this Circuit which hold that a dispute need not be in writing. However, the language is not so plain as evidenced by the law generated regarding its interpretation. Moreover, the case law in this Circuit had not concluded that the "in writing" requirement violated the statute.

To qualify for the bona fide error defense, defendants must make three showings under § 1692k(c): (1) that the presumed FDCPA violation was not intentional; (2) that the presumed FDCPA violation resulted from a bona fide error; and (3) that it maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Services, Inc.,* 394 F.3d 530, 537 (7th Cir. 2005) (citation omitted).

**(a) whether the presumed FDCPA violation was not intentional**

Defendants assert that the violation was unintentional, and made in good faith, because at the time the form validation notice was sent to plaintiff the only Sixth Circuit case law on this issue held that the use of the words "in writing" does not violate section 1692g(a)(3). Defendants point to *Diamond v. Corcoran*, No. 5:92-CV-36, 1992 U.S. Dist. LEXIS 22793, 5-6 (W.D. Mich. 1992) and *Savage v. Hatcher*, 109 Fed.Appx. 759, 762 (6th Cir. 2004), affirming *Savage v. Hatcher*, No. C-2-01-0089, 2002 WL 484986 (S.D. Ohio 2002). Richard McNellie, the senior principal of Carlisle, McNellie, Rini, Kramer & Ulrich, avers that it was his understanding that the use of the words " 'in writing' was sanctioned in this Judicial District pursuant to the ruling in *Graziano v. Harrison,* 950 F.2d 107 (3rd Cir. 1991), which was cited with approval in *Diamond v.Corcoran*." (McNellie aff. ¶ 9).

Defendants assert that *Diamond* and *Savage* were the only decisions in the Sixth Circuit to provide guidance on the issue. Moreover, defendants contend, because there was a split of authority among the other Circuit courts, defendants could only speculate as to what would constitute a proper validation notice.

Defendants further assert that they have also made a good faith effort to comply with

13

the FDCPA and its "ever-changing" body of law as evidenced by McNellie's averments:
Defendant law firm has designated its senior principal, Richard McNellie, as the individual responsible for compliance with the FDCPA; McNellie regularly attends conferences and seminars that focus on FDCPA issues; the firm subscribes to "Fair Debt Collection," a part of "The Consumer Credit and Legal Practice Series,"together with the supplements thereto; McNellie routinely distributes copies of cases relevant to the firm's practices and procedures to all attorneys at the firm; all new employees, attorneys and nonattorneys, are advised of the firm's obligations under the FDCPA and provided with the firm's FDCPA Procedures Manual, and encouraged to seek McNellie's advice with questions regarding the FDCPA; McNellie conducts a mandatory meeting at least twice a year for all available employees wherein FDCPA issues and developments are discussed; the Validation Notice at issue contained the words "in writing" because it was McNellie's understanding that such language was sanctioned in this Judicial District pursuant to *Diamond* and *Graziano, supra.* and other applicable case law. (McNellie aff.)

Plaintiff asserts McNellie's averments that he adopted the "in writing" requirement based on his belief of the status of the law show that his actions were intentional. Plaintiff also points to Ms. Foster's deposition testimony that she relied on McNellie and, therefore, acted intentionally. This Court agrees with defendants, however, that while the communication may have been intentional, there is no issue of fact, based on McNellie's averments, as to whether defendants intentionally violated the FDCPA. As discussed below, the law was unsettled on this issue and little guidance was provided by the Sixth Circuit.

As this Court recognized in its previous Opinion, at the time this communication was

sent, the majority of district courts disagreed with the Third Circuit's decision in *Graziano* which held that a consumer's dispute of a debt must be in writing to be effective. Notwithstanding, the Sixth Circuit's only (unreported) decision on the issue affirmed the district court's finding that a form validation notice did not violate § 1692g despite its requirement that a dispute of the debt must be in writing, although the court did not specifically mention the "in writing" controversy or refer to *Graziano*. *See Savage v. Hatcher*, 109 Fed.Appx. 759 (6th Cir. 2004). In December 2005, the Ninth Circuit decided *Camacho v. Bridgeport Financial, Inc.,* 430 F.3d 1078 (9th Cir. 2005), which held that a debt collector's notice violates the FDCPA in so far as it states that disputes of validity of debts must be in writing. *Camacho* expressly disagreed with *Graziano*. *Camacho,* however, was not binding precedent in this Circuit and appeared to conflict with case law in this Circuit. While this Court also noted two district court opinions which agreed with *Camacho* (*Baez v. Wagner & Hunt, P.A.,* 442 F.Supp.2d 1273 (S.D. Fla. 2006) and *Turner v. Shenandoah Legal Group, P.C.,* 2006 WL 1685698 (E.D. Va. June 12, 2006) ), neither decision was issued prior to the sending of the communication herein.

Accordingly, because the statute was not unambiguous and the law was not settled (and appeared to even favor defendants in this Circuit), defendants' violation was not intentional.

**(b) whether the presumed FDCPA violation resulted from a bona fide error**

Plaintiff argues that defendants' mistake was not made in good faith. The Court disagrees.

Plaintiff points to McNellie's deposition testimony that he had not been aware of the

15

*Camacho* decision until the present action was filed. Nonetheless, the Ninth Circuit's decision would not have compelled defendants to have changed their form validation notice.

Plaintiff also argues that while defendants relied on *Savage* in their Motion to Dismiss, McNellie's deposition testimony shows that he did not consider *Savage* in creating the form validation notice and his affidavit states that he relied only upon *Graziano* and *Diamond.* Defendants cited *Savage* in their Motion to Dismiss, however, merely to support their argument that their form validation notice did not violate the FDCPA.

Plaintiff points to McNellie's deposition testimony that this Court's previous Opinion is still open to further judicial review. This does not show that defendants acted in bad faith when they sent the form validation notice. In fact, the Sixth Circuit has still not decided the issue.

Plaintiff additionally points to McNellie's deposition testimony regarding his rationale for rejecting an oral dispute mechanism, which plaintiff asserts demonstrates bad faith. Nonetheless, as defendants argue, McNellie's decision to include the words "in writing," regardless of the rationale, was not contrary to existing Sixth Circuit law.

Plaintiff contends that attorney Foster did not act in good faith because she relied on McNellie and did not conduct any independent investigation on the issue. Nonetheless, at the time, the law in this Circuit on the issue was not clear.

Finally, plaintiff claims that defendants could have requested an advisory opinion from the Federal Trade Commission, thereby ensuring that they acted in good faith. However, defendants were not obligated to do so and the issue herein is not whether defendants should

16

have insulated themselves from liability but whether they acted in good faith.

For these reasons, the Court finds the presumed FDCPA violation resulted from a bona fide error.

### (c) whether defendants maintained procedures reasonably adapted to avoid any such error

Plaintiff argues that defendants have not produced or described any procedures reasonably adapted to avoid their violation of the FDCPA.  Although their written procedures are contained in the FDCPA manual, McNellie admitted at deposition that the manual does not prevent the specific violation in this case.  Nor, plaintiff asserts, did McNellie articulate any reasonable procedure to review his legal interpretation of § 1692g, or show that any document was prepared to support his interpretation.  Plaintiff also points out that since this case was filed, the "in writing" requirement has been omitted from defendants' form validation notice.

Defendants point to McNellie's averments that he regularly attended seminars dealing with FDCPA issues, reviewed and distributed relevant case law, conducted regular meetings and encouraged open discussion of FDCPA issues. Defendants assert that plaintiff's argument that  formal memorandum should have been prepared imposes an "unreasonable" and "overly burdensome" procedure on defendants.  This Court agrees that given the unsettled law that existed on this issue, no procedure could have lead defendants to know that this Court would find an FDCPA violation in the validation notice sent to plaintiff.

For these reasons, the Court finds that defendants qualify for the bona fide error defense.

### (3) whether defendants are absolutely immune from liability because their

17

**actions were an integral part of the judicial process**

Defendants argue that attorney Foster's action in serving the foreclosure complaint was acting in her function as an advocate and is, thus, an integral part of the judicial process entitled to absolute immunity. This Court disagrees.

Courts have found that law firms acting as debt collectors are subject to the FDCPA and may not avoid liability by asserting common law litigation immunity. Recently, for example, the Fourth Circuit rejected such a defense stating, "The statutory text makes clear that there is no blanket common law litigation immunity from the requirements of the FDCPA." *Sayyed v. Wolpoff & Abramson,* - F.3d- (4th Cir. May 9, 2007). The court further noted that the FDCPA's bona fide error defense provision

> offers a kind of qualified immunity to debt collectors, protecting actions which otherwise are covered by the statute but arose from bona fide error and were not intentional violations. Such a provision supplies an additional argument against implying immunities as to which the statute is silent: Congress addressed the issue of immunity expressly and extended it only so far as [the bona fide error defense provision] provides.

*Id.* The Court agrees with this reasoning and finds that defendants are not entitled to absolute immunity.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan  
PATRICIA A. GAUGHAN  
United States District Judge

Dated: 6/20/07