**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Karen L. Jerman,** | ) | **CASE NO. 1:06 CV 1397** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Carlisle, McNellie, Rini, Kramer** | ) | **Memorandum of Opinion and Order** |
| **& Ulrich, et al.** | ) | |
| **Defendants.** | ) | |

### Introduction

This matter is before the Court upon plaintiff's Motion for Class Certification (Doc. 45). For the following reasons, the motion is GRANTED.

### Facts

Plaintiff, Karen L. Jerman, filed this Class Action Complaint against defendants, Carlisle, McNellie, Rini, Kramer & Ulrich and Adrienne S. Foster. The United States Supreme Court has set forth the underlying facts and statement of the case:

> Respondents in this case are a law firm, Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A., and one of its attorneys, Adrienne S. Foster (collectively Carlisle). In April 2006, Carlisle filed a complaint in Ohio state court on behalf of a client, Countrywide Home Loans, Inc. Carlisle sought foreclosure of a mortgage held by Countrywide in

1

real property owned by petitioner Karen L. Jerman. The complaint included a "Notice," later served on Jerman, stating that the mortgage debt would be assumed to be valid unless Jerman disputed it in writing. Jerman's lawyer sent a letter disputing the debt, and Carlisle sought verification from Countrywide. When Countrywide acknowledged that Jerman had, in fact, already paid the debt in full, Carlisle withdrew the foreclosure lawsuit.

Jerman then filed her own lawsuit seeking class certification and damages under the FDCPA [the federal Fair Debt Collection Practices Act], contending that Carlisle violated § 1692g [of the FDCPA] by stating that her debt would be assumed valid unless she disputed it in writing.  While acknowledging a division of authority on the question, the District Court held that Carlisle had violated § 1692g by requiring Jerman to dispute the debt in writing[1].

The court ultimately granted summary judgment to Carlisle, however, concluding that § 1692k(c) [of the FDCPA] shielded it from liability because the violation was not intentional, resulted from a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. The Court of Appeals for the Sixth Circuit affirmed. Acknowledging that the Courts of Appeals are divided regarding the scope of the bona fide error defense, and that the "majority view is that the defense is available for clerical and factual errors only," the Sixth Circuit nonetheless held that § 1692k(c) extends to "mistakes of law." The Court of Appeals found "nothing unusual" about attorney debt collectors maintaining "procedures" within the meaning of § 1692k(c) to avoid mistakes of law. Noting that a parallel bona fide error defense in the Truth in Lending Act (TILA), 15 U.S.C. § 1640(c), expressly excludes legal errors, the court observed that Congress has amended the FDCPA several times since 1977 without excluding mistakes of law from § 1692k(c).

[The United States Supreme Court] granted certiorari to resolve the conflict of authority as to the scope of the FDCPA's bona fide error defense[.]

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605 (2010).  The Supreme Court reversed the judgment of the Sixth Circuit and held that the bona fide error defense in the FDCPA does not apply to a violation of the Act resulting from a debt collector's incorrect interpretation of the legal requirements of the FDCPA.  *Id.*

---

[1]     This issue was not disputed on appeal.

This matter is now before the Court upon plaintiff's Motion for Class Certification.

**Discussion**

Although plaintiff presents argument that all requirements of Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied, the Court previously approved the parties' stipulations that Rule 23(a) has been satisfied as well as the composition of the potential class:

> Plaintiff's Amended Complaint meets the prerequisites for a class action under Fed. R. Civ. P. 23(a). Whether Plaintiff's Amended Complaint meets the requirements for a class action under Fed.R.Civ.P. 23(b), and whether class certification is appropriate in this case, will be submitted to, and determined by, the Court.
>
> The potential class is comprised of 4,211 Ohio consumers who were sent from Defendant Carlisle, McNellie, Rini, Kramer & Ulrich (the "Law Firm") a form "Notice under the Fair Debt Collection Practices Act," during the period of June 7, 2005 to June 7, 2006, that contained the following sentence: "The debt described herein will be assumed to be valid by the Creditor's law firm, unless the debtor(s), or either one of them, within thirty (30) days after receipt of this notice, dispute, in writing, the validity of the debt or some portion thereof."

(Doc. 43)

Plaintiff maintains that the Amended Complaint satisfies Rule 23(b)(3). Defendants disagree.

In addition to the prerequisites of Rule 23(a) which consist of numerosity, commonality, typicality, and fair representation, and which the parties agree are met here, Rule 23(b) requires that (1) questions of law or fact common to the class predominate over questions affecting only individual members, and (2) class resolution is superior to alternative methods for adjudicating the controversy. "Put differently, the proposed class must be 'sufficiently cohesive to warrant adjudication by representation.' " *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517 (6th Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

623 (1997) ).

Defendants do not dispute that common questions of law or fact predominate, but dispute whether a class action is the superior method for prosecuting this case.  In this regard, Rule 23(b)(3) further states,

> The matters pertinent to the findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Defendants argue that a class action is not the superior method for prosecuting this case because, under Rule 23(b)(3)(A), the class members' interest in individually controlling the prosecution of his individual action exceeds that of a proposed class action.  Specifically, as explained below, defendants maintain that if each proposed class member pursued an individual claim, each individual's potential recovery would be up to $1,000.  On the other hand, the maximum each class member could recover would be $3.10.  Further, each class member's limited potential recovery would be substantially reduced, or even negated, by the costs of providing the requisite class notice.

Under 15 U.S.C. § 1692k(a)(2)(A), absent actual damages, in an action by an individual, a consumer may be awarded up to (but not exceeding) $1,000 in statutory or "additional damages."  A consumer is not automatically entitled to such additional damages, but damages are awarded at the court's discretion based on factors provided in § 1692k(b)(1), which states:

> In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—

4

> (1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional, ….

On this basis, a court could award no additional damages or an amount up to $1,000.

Under 15 U.S.C. § 1692k(a)(2)(B), in the case of a class action, the representative (named plaintiff) of the class may be awarded additional damages up to $1,000 as provided in § 1692k(a)(2)(A). § 1692k(a)(2)(B)(i). Class members, however, may be awarded "such amount as the court may allow ... without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." §1692k(a)(2)(B)(ii). Again, such additional damages are discretionary based on factors provided in § 1692k(b)(2), which states:

> In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—
>
> * * *
>
> (2) in any class action under subsection (a)(2)(B) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

The parties have stipulated herein that the net worth of the debt collector (i.e., the Law Firm) is $1,305,225.17. (Doc. 44) Because one percent of the net worth ($13,052.25) is less than $500,000, the maximum class recovery should the Court determine that additional damages are warranted, is $13,052.25. Based upon the stipulated potential class of 4,211 consumers (Doc. 44), the maximum each class member could recover is $3.10 (i.e., $13,052.25 / 4,211 = $3.10) if the Court certifies the class and if the class is successful in the

prosecution of its claims.

Defendants contend that because a class certification would create such a large discrepancy in potential recovery (i.e., each proposed class member pursuing an individual claim could potentially recover up to $1,000, while each member of the class would recover only $3.10), a class action is not the superior method for handling this case and, in fact, would be detrimental to the proposed class members.

Defendants rely on *Sonomore v. Checkrite Recovery Servs., Inc.,* 206 F.R.D. 257 (D.Minn. 2001), a FDCPA case involving debt collection letters, and several other district court cases.  The *Sonomore* court concluded that class action was not the superior method of adjudication where class treatment would substantially limit recovery to a maximum of $25.00, while plaintiffs pursuing an action individually could potentially recover a maximum of $1,000:

> The FDCPA's cap on class action damages, combined with the large number of putative class members, causes an unacceptably large discrepancy in the amount of available damages... By certifying the class, the court would ensure a de minimis monetary recovery for class members, which constitutes a substantial reduction in what class members may otherwise be entitled by pursuing their claims individually. Because plaintiffs pursing an action individually are eligible to recover a maximum of $1,000, while absent class members in this case are eligible for a maximum of merely twenty-five dollars, the Court finds that the interest of class members in individually controlling the prosecution of their claims prevails over any efficiency objectives that may be achieved through management of the litigation as a class action. Thus, Plaintiffs have failed to establish that a class action is a superior method for adjudicating claims regarding Defendants[']s conduct and form letter.

As plaintiff demonstrates, however, the majority of courts addressing class certification in FDCPA cases have determined otherwise, including the Sixth Circuit.

In *Carroll v. United Compucred Collections, Inc.,* 399 F.3d 620 (6th Cir. 2005), the

6

Sixth Circuit rejected defendant's assertion in a FDCPA case that class action treatment was not a superior method of adjudicating the claims given that the estimated 164 members of the putative class would only recover about $60.00.[2]  The court quoted the Supreme Court,

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

(citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  Other courts have recognized that a small recovery does not justify denial of class certification.

In *Hernandez v. Midland Credit Management, Inc.,* 236 F.R.D. 406 (N.D.Ill. 2006), defendants argued that the approximate $8.00 per plaintiff recovery for the class versus the $1,000 statutory maximum for an individual plaintiff's action showed that class action was inferior to individual litigation.  The court rejected the argument concluding that "the *de minimus* nature of a class recovery is not a bar to certification where the other requirements of

---

[2]  As plaintiff notes, given the length of time that has elapsed since defendants sent the last identical letter (4 1/2 years, and 5 1/2 years since defendants sent the first letter), it is unlikely that plaintiff's class counsel will be able to locate, verify an address for, and receive a claim from all 4,211 class members.  Plaintiff posits that closer to 5 % of eligible members will share the class recovery.  This would result in about a $60.00 recovery to each (5 % of 4,211 amounts to about 210 members; $13,052.25 / 210 = $62.00).

Plaintiff further points out that the $1,000 statutory damages are a maximum amount and that, as demonstrated above, requires that an individual plaintiff show "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  This proof, plaintiff contends, would obviously involve significant discovery and litigation expenses for what amounts to a small return.  Such diminishes the argument in favor of the superiority of individual actions.

Rule 23 have been met." The court also noted prior case law finding *Sonomore, supra,* and *Jones v. CBE Group, Inc.* 215 F.R.D. 558 (D.Minn. 2003), also relied upon by defendants herein, to be unpersuasive and not controlling.

In *Kalish v. Karp & Kalamotousakis, LLP,* 246 F.R.D. 461 (S.D.N.Y. 2007), the court similarly rejected defendant's argument that it was in each class member's best interest to seek the full measure of FDCPA damages as an individual rather than in a class:

> Defendant's "*de minimus* recovery" argument ... is unpersuasive for reasons explored by other district courts in this Circuit...(citations omitted) Those Courts observed that, notwithstanding the possibility of higher individual recoveries, litigating as a class retains substantial value because it encourages the prosecution of claims en masse that would not be prosecuted individually. In the FDCPA context, while the potential for higher individual recoveries exists, realizing that potential requires assuming that each putative class member is aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. (quotation marks and citation omitted) Those transaction costs are not insubstantial and have prompted other courts in this Circuit to conclude that litigating as a class is superior to litigating individual FDCPA claims...

The court specifically rejected those district court decisions employing the "*de minimus* recovery" argument to deny class certification which defendants herein also rely on, *Sonomore, Jones*, and *Lyles v. Rosenfeld Atty. Network,* 2000 WL 798824 (N.D.Miss. 2000).

In *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541 (N.D.Cal. 2005), the Court rejected defendant's argument based on the fact that class plaintiffs would receive only $0.25:

> ... [W]hile the FDCPA does allow for individual recoveries of up to $1000, this assume[s] that a potential plaintiff will be aware of his rights, wil[l]ing to subject himself to all the burdens of suing, and able to find an attorney willing to take his case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives. Therefore, in evaluating the overall objective of the class action remedy, this Court finds that *de minimis* recovery is not a ground for refusing certification.

> The defendant in *Nichols v. Northland Groups, Inc.,* 2006 WL 897867 (N.D.Ill. 2006),

8

also asserted that there would be a *de minimus* recovery for each class member, rendering the class action device inferior to individual lawsuits. The court disagreed and stated, "The court is not persuaded that the possibility of a *de minimus* recovery justifies denying certification where, as here, the other Rule 23 prerequisites are satisfied." As in the other cases, the court rejected those cases holding otherwise.

*Macarz v. Transworld Systems, Inc.,* 193 F.R.D. 46 (D.Conn. 2000), also agreed with the majority of courts and noted

> members of class actions maintained under 23(b)(3) who determine that their interests are better served by an individual action, and provide timely notice of this election to the Court, will be excluded from the class. Fed.R.Civ.P. 23(c)(2)(A). This "opt out" provision is designed to ensure that even in a class action that meets all the prerequisites of Rule 23, "the individual interest is respected." Advisory Committee Notes to the 1966 Amendments.
>
> Further, the notion that individual plaintiffs may recover higher damages if they were to pursue their own claims is implicit in the very idea of a class action, and is part of the balance that is struck in Rule 23 of providing a vehicle for the aggregation of small claims while still seeking to protect those individual claimants. The possibility that putative class members would be entitled to greater recovery should they pursue claims on their own arises in every class action, but it not grounds for denying class certification, if the other criteria are met.

The court in *Weber v. Goodman,* 9 F.Supp.2d 163 (E.D.N.Y. 1998), recognized that the class action is the superior method in the FDCPA case even though class members' recovery would be small while individual suits could recover substantially more given that "it is unlikely that any proposed class member will bring an individual action against defendants for their alleged violations of the FDCPA. The class action form is the only way to ensure defendants' compliance with the FDCPA on this point. Each class member has a stake in vindicating his rights, and the public has an interest in seeing that the FDCPA is obeyed."

On the basis of *Carroll* and the reasoning of the courts which have rejected the

9

argument made by defendants, the argument that a class action suit is not the superior means to resolve this FDCPA claim is without merit. Accordingly, the Court finds the class action to be a superior method.

Defendants do not address or dispute the other factors presented by Rule 23(b)(3) which the Court finds have been satisfied by plaintiff as discussed in its Reply brief.

Finally, while defendants contend that class members' limited potential recovery would be substantially reduced, if not negated, by the costs of providing the requisite notice, courts have held that this expense is a cost that may be recovered from defendant if plaintiff's claim is successful. *See Lynch Corp. v. MII Liquidating Co.,* 82 F.R.D. 478 (D.C.S.D. 1979). Similarly, courts have found that the availability of attorney's fees in a FDCPA case does not prevent the superiority of resolving the matter as a class action because potential class members may not know their rights are being violated or may be unable to find competent legal representation. *See Kelly v. Montgomery Lynch Assoc.*, 2007 WL 4562913 (N.D. Ohio 2007) ("A class action lawsuit, therefore, is the most appropriate mechanism in this situation to advance the interests of the potential parties and to conserve the time and resources of this Court.") and *Sledge v. Sands,* 182 F.R.D. 255 (N.D. Ill. 1998) ("Additionally, a class action is the superior form of adjudication for this case. Many plaintiffs may not know their rights are being violated, may not have a monetary incentive to individually litigate their rights, and may be unable to hire competent counsel to protect their rights. A class action is judicially efficient in lieu of clogging the courts with thousands of individual suits. The FDCPA itself recognizes the propriety of class actions by providing special damages sections for class action cases.")

As a concluding matter, relying on Truth in Lending Act cases, defendants contend that because the proposed class did not suffer any actual damages for defendants' technical violation, the class action is not superior.  Plaintiff points out that the FDCPA is a strict liability statute.  *Allen v. Checkredi of Kentucky, LLC,* 2010 WL 4791947 (E.D. Ky. 2010) (citations omitted) ("Because the Sixth Circuit treats the FDCPA as a strict liability statute, a single or technical violation by Defendant is sufficient to incur liability.") Accordingly, this does not constitute a basis to deny class certification.

### **Conclusion**

For the foregoing reasons, plaintiff's Motion for Class Certification is granted.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/14/10