UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN L. JERMAN, | : | Case No. 1:06cv1397 |
| Individually and on behalf of | | |
| others similarly situated, | : | JUDGE PATRICIA A. GAUGHAN |
| | | |
| Plaintiff, | | |
| | : | MEMORANDUM IN OPPOSITION |
| v. | | TO DEFENDANTS' MOTION FOR |
| | : | PARTIAL SUMMARY JUDG- |
| CARLISLE, McNELLIE, RINI, | | MENT ON DAMAGES (Doc. 54) |
| KRAMER & ULRICH, et al., | : | |
| | | |
| Defendants. | : | |

**INTRODUCTION**

Defendants Carlisle, McNellie, Rini, Kramer & Ulrich and Adrienne S. Foster ("Carlisle") do not dispute that they violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA").  The only issue Carlisle presents in this motion is "whether damages under § 1692k(a)(2)(A) and § 1692k(a)(2)(B) should be awarded to Ms. Jerman and her Class." (Doc. 54, Memo. at 2)

Carlisle's main argument is that it did nothing wrong and therefore should not be required to pay *any* damages whatsoever.  As Ms. Jerman demonstrates below, this position misconstrues the record and undermines the intent of Congress; the Court should therefore reject it.

Carlisle finds its primary support for this position in the non-exclusive damage factors of 15 U.S.C. 1692k(b).  (Doc. 54, Memo. at 3-10)  Ms. Jerman will respond specifically to these arguments in Part B below.  However, the problem with such discussions is that they do little to enlighten this Court regarding an actual dollar amount to

award as damages.[1]  Ms. Jerman will therefore turn first to what she considers the most

important "other relevant factor," as that term is used in 15 U.S.C. § 1692k(b)–

reasonableness in light of all the circumstances.

Counsel have found no authority discussing "other relevant factors."  However,

reasonableness must be seen as central in determining damages pursuant to the FDCPA's

statutory scheme.  First, all agree that the award is within the discretion of the district

court.[2]  See *Frey v. Gangwish*, 970 F.2d 1516, 1519 (6th Cir. 1992).  And the key factor in

appellate review of whether a district court has abused that discretion is reasonableness.

*In re Nowak*, 586 F.3d 450, 458 (6th Cir. 2009) (party "failed to demonstrate that the bank-

ruptcy court's decision to the contrary was so unreasonable as to constitute an abuse of

discretion"); *Ross v. Petro*, 515 F.3d 653, 664 (6th Cir. 2008) (the Ohio Court of Appeals'

conclusion that Judge Bond did not abuse her discretion when she failed to do so [revisit

an issue] was objectively unreasonable"); *Thomas M. Cooley Law School v. American Bar

Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006) (unreasonableness equated with abuse of

discretion).  Ms. Jerman therefore submits that Carlisle's motion (and her own motion for

summary judgment) present the following ultimate questions:  (1) is $13,052.25 a

reasonable amount of damages to award to 4,211 class members under § 1692k(a)(2)(A);

---

[1] In *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 2005 WL 1379107 (S.D. Ohio 2005), Judge Graham was faced with this same lack of enlightenment: "In this case, none of the motions from either party presented evidence regarding what an appropriate statutory penalty should be.  Therefore, plaintiff is awarded $500 in statutory damages for defendants' violation of the notice provision of the FDCPA."  As discussed below, Ms. Jerman urges the maximum award of statutory damages for herself and the Class.

[2] Justice Sotomayor, writing for the majority in *Jerman v. Carlisle*, noted that the FDCPA "vests courts with discretion to adjust such damages where a violation is based on a good-faith error."  *Id.*, 130 S.Ct. at 1620-21.  As discussed more fully in Part B(5) below, the parties plainly disagree on how much good faith Carlisle had when violated the FDCPA.

and (2) is $1,000 a reasonable amount of damages to award to Ms. Jerman under

§ 1692k(a)(2)(B).  Ms. Jerman will treat these issues first, then respond to Carlisle's

position on the statutory factors, and finally comment on two additional arguments by

Carlisle which appear to contend that a court may *never* award statutory damages against

an attorney:

- The awarding of statutory damages will result in "an irreconcilable conflict of interest . . . for lawyers." (*Id*. at 12)
- Statutory damages for the type of violation Carlisle committed in this case "creates serious First Amendment concern." (*Id*. at 13)

## ARGUMENT

A.  **MS. JERMAN'S REQUESTS FOR STATUTORY DAMAGES ARE REASONABLE IN THE CONTEXT OF THIS LITIGATION, AND IN FULL ACCORD WITH THE CONGRESSIONAL POLICY IN ENACTING THE FAIR DEBT COLLECTION PRACTICES ACT.**

1.  Congress Intended Statutory Damages Both As An Incentive To Private Enforcement and As a Deterrent to Aggressive Interpretation of the FDCPA.

Carlisle does not appear to dispute the fact that Congress, in enacting the FDCPA,

was attempting to eliminate certain debt collection practices through private enforcement.

As the Federal Trade Commission recently explained, "Congress made clear that the

FDCPA was intended to be a 'primarily self-enforcing' statute, with private individual and

class actions providing collectors with a powerful incentive to comply with the statute."

FEDERAL TRADE COMMISSION, COLLECTING CONSUMER DEBTS: THE CHALLENGE OF

CHANGE 66 (2009) (quoting S. Rep. 95-382 at 5, *as reprinted in* 1977

U.S.C.C.A.N. 1695, 1699).  Although the FDCPA gives enforcement authority to the

Government as well, "[b]ecause the Commission receives more than 70,000 third-

party debt collection complaints per year, it is not feasible for federal government law

enforcement to be the exclusive or primary means of deterring all possible law violations."
*Id.* at 67.  Accordingly, the Commission has concluded, private actions "are critical in
deterring those who would violate the FDCPA." *Id.* [3]

Carlisle also seems to agree that Congress intended to make statutory damages
available even in the absence of actual damages.[4]  See *Jerman v. Carlisle, McNellie, Rini,
Kramer & Ulrich*, --- U.S. ---, 130 S.Ct. 1605, 1620-21 (2010) ("*Jerman v. Carlisle*").  As
the case law below demonstrates, the purposes of such damages were: (1) to create a
deterrent to unlawful conduct by debt collectors; and (2) to provide an incentive for pri-
vate individuals to go to court to enforce compliance even where actual damage is non-
existent or hard to quantify.[5]  As Ms. Jerman will now show, these purposes cannot be
served when a debt collector violates the FDCPA yet escapes all financial consequences
of its violation.

---

[3] "[T]he FDCPA enlists the efforts of sophisticated consumers [like Ms. Jerman] as
`private attorneys general' to aid their less sophisticated counterparts, who are unlikely
themselves to bring suit under the Act, but who are assumed by the Act to benefit from
the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Financial
Services, Inc.*, 516 F.3d 85, 96 (2d Cir. 2008). "[T]he FDCPA permits and encourages
parties who have suffered no loss to bring civil actions for statutory violations." *Id.* at 96.
Congress intended that the FDCPA should be enforced by debtors acting as private
attorneys general.  *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991).  See also
*DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990).

[4] Actual damages include non-economic damages under the FDCPA.  See *Davis v.
Creditors Interchange Receivable Management, LLC*, 585 F.Supp.2d 968 (N.D. Ohio
2008) (Carr, J).

[5] Statutory damages are often awarded as a substitute for actual damages where the harm
incurred is difficult to trace and identify.  See *Doe v. Chao*, 540 U.S. 614, 621-22, 640-
41, 124 S.Ct. 1204 (2004) (collecting statutes).  The rationale is the common law
analogue of "presumed damages." *Id.* at 621 n.3 *citing* 3 RESTATEMENT OF TORTS, § 621,
comment a, (1938) and 3 RESTATEMENT (SECOND) OF TORTS, *§* 621 Comment a (1976).

As this case illustrates, there are substantial impediments to consumer enforce-ment of the FDCPA.  Although Congress believed the aggregate injury to the nation from unlawful debt collection practices to be high, including more personal bankruptcies, "marital instability," the "loss of jobs" and "invasions of individual privacy," see 15 U.S.C. § 1692(a), the harm to an individual consumer is still diffuse and difficult to quantify.  At the same time, litigation is time consuming and expensive.  Congress took steps to counteract these disincentives to enforcement by providing what Justice Sotomayor called "modest statutory damages," *Jerman v. Carlisle*, 130 S.Ct. at 1612, by allowing class actions, and by attorney fee shifting.  *See* 15 U.S.C. § 1692k(a).  It also set up an appropriate and cost-effective way for debt collectors to obtain expert advice from the Federal Trade Commission ("FTC") on the meaning of the FDCPA that would shield them from liability if they followed it.  15 U.S.C. § 1692k(e).

Congress was also well aware that the debt collection market–which generally compensates collectors by giving them a percentage of the money collected–establishes an economic incentive for aggressive, misleading, and even abusive practices.  *See* S. Rep. 95-382, at 2, *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1696.  Cutting down on statutory damages would undermine this incentive by removing the penalty for wrongly taking a restrictive view of the FDCPA's prohibitions when the law is uncertain, as Carlisle did here.  And in many cases, as here, there will be a very real financial benefit to taking such restrictive actions even if they are ultimately found to be illegal.  See calculations in Part A(2) below.  Put another way, failing to provide statutory damages affords a competitive advantage to collectors like Carlisle who take a more aggressive, but incorrect, view of the law.

5

For example, in this case Carlisle construed the FDCPA as allowing it to demand that all debt disputes be made in writing.  In this manner it avoided the expense and inconvenience of accepting disputes over the telephone while its law-abiding competitors had to bear those costs as a consequence of correctly construing the FDCPA.  That result is not only unfair to the law-abiding collectors, it creates a race to the bottom that will leave the field to collectors with the fewest scruples, exactly what Congress intended the FDCPA to prevent.[6]

Various courts have approved this view of debt-collector deterrence.  See, *e.g.*, *U.S. v. National Financial Services, Inc.*, 98 F.3d 131, 141 (4th Cir. 1996) ("Without a real sting, the defendants would be unlikely to be deterred from violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices."); *Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482, 484-85 (4th Cir. 1991) ("There are numerous and ingenious ways of circumventing § 1692g under a cover of a technical compliance.  Payco has devised one such way, and we think that to uphold it would strip the statute of its meaning."); *Strange v. Wexler*, 796 F. Supp. 1117, 1120 (N.D. Ill. 1992) ("One purpose of statutory damages is to create an incentive to obey the law.  It appears Wexler needs an incentive either to pay more attention to the complaints he files, or, taking another view, to dissuade him from taking advantage of debtors who do not know their rights."); *Withers v. Eveland*, 988 F. Supp. 942, 948 (E.D. Va. 1997) ("To

---

[6] Carlisle proclaims itself an "ethical" debt collector some 15 times in its memorandum.  As Ms. Jerman will point out in Part B below, nothing in the record marks Carlisle with any particular ethical standing, even in the murky world of debt collection. An ethical debt collector does not simply take the legal view, rejected by the vast majority of jurisdictions, which is cheapest for itself while providing the least rights for the consumer.

comply with the FDCPA, however, Eveland was required to do more than follow 'the spirit of the law.'  Because he failed to do so, Eveland is subject to a civil penalty in an amount that will deter him from engaging in future improper collection practices.  The Court will therefore award Withers statutory damages in the amount of $1,000. . . .").  Moreover, in addition to deterrence, if debt collectors do not fear financial liability for losing an FDCPA case they will have no incentive to use the advisory opinion process contained in 15 U.S.C. § 1692k(e) to clarify the law, as Congress intended and as the Supreme Court strongly approved in the context of the bona fide error issue.  See *Jerman v. Carlisle*, 130 S. Ct. at 1615.  Thus, the very ambiguities in the law which Carlisle complains of here will persist without clarification.

The second purpose of such damages, as noted above, is the incentive they provide for private enforcement.  Even if the attorney fee provision of the FDCPA is enough to induce attorneys to take FDCPA cases which do not involve actual damages, there is still no reason for a consumer to do so unless there is some practical benefit, as many courts have recognized.  See *Hicks v. Client Services, Inc*., 257 F.R.D. 699, 701 (S.D. Fla. 2009) ("the FDCPA provides for statutory damages and attorney's fees, so that there would be no lack of incentive for plaintiffs to pursue individual actions."); *Jones v. CBE Group, Inc*., 215 F.R.D. 558, 570 (D. Minn. 2003) (the statutory damages of $1,000 and the fee-shifting provision means "there is no lack of incentive for either plaintiffs or counsel to pursue individual FDCPA actions"); *Beattie v. D.M. Collections, Inc*., 764 F.Supp. 925, 927-28 (D. Del. 1991) ("Congress apparently concluded that the statutory damages available under subsection 1692k(a)(2)(A) would provide incentive for consumers who could prove only minimal damages to bring suit to enforce the Act.").

7

With this policy background in mind, Ms. Jerman turns to the two requested damage awards and submits that they are reasonable in light of the totality of circumstances in this litigation.

2.  The Statutory Damages Ms. Jerman Seeks for the Class Are Reasonable.

The one-percent cap limits class damages in this case to a little over $13,000.[7] Since there are 4,211 members of the class, this works out to a little over $3 per class member.[8]  Carlisle wants this cut to zero.  The result of acceding to this position is that other debt collectors will quickly apprehend that the risk of taking an aggressive view of the law is minimal while the benefits can be great.  In this case, for example, Carlisle saved money by not setting up a system to receive and process in-person or telephonic disputes of consumers' debts.  Its refusal to receive disputes not in writing lasted from 1995 until 2006, a total of 11 years.  (McNellie Depo., Exhibit A (attached hereto) at 17-22, 30, 36- 39, 53-54, 57-58, 80, 107-109; Carlisle's Discovery Responses, Exhibit B (attached hereto) at 17-18) ("Written Discovery"). An award of the *maximum* in requested class and individual damages in this case, $13,052.25 for the class and $1,000.00 for Ms. Jerman, amounts to a yearly expense to Carlisle over that period of a little over $1,200, surely far less than it would have cost to hire sufficient personnel to comply with the law.[9]  Thus, every letter Carlisle sent out was one more consumer whose call it would not

[7] In capping statutory damages at $1,000 in individual actions and at the lesser of $500,000 or one percent of the debt collector's net worth in class actions, Congress accorded considerably more protection to debt collectors than other federally regulated businesses enjoy.

[8] The Court discussed this calculation at some length in its Opinion and Order Granting Class Certification. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, --- F.R.D. ----, 2010 WL 5140850, *3 (N.D. Ohio 2010).

[9] As the Sixth Circuit pointed out in another FDCPA case, this cost would not disadvantage Carlisle vis-à-vis other collectors.  See *Todd v. Weltman, Weinberg & Reis*

have to pay someone to take.  And by refusing to fund such a system Carlisle forced Ms.

Jerman and her attorneys to compel compliance in an extremely costly and time-

consuming lawsuit.[10]

In view of the reasonableness of an award of $3 per class member, and in order to

maintain at least some semblance of deterrence to Carlisle and other debt collectors as

they look for cost-cutting interpretations of the FDCPA, the Court should approve the

$13,052.25 award to the class in its entirety.

3.     Ms. Jerman's Individual Request for Statutory Damages of $1,000 Is
       Also Reasonable.

Courts have routinely awarded the maximum statutory damages of $1,000 to

individual plaintiffs in FDCPA cases involving little or no actual damages.  See, *e.g.*,

*Shula v. Lawent*, 359 F.3d 489, 490 (7th Cir. 2004) (no actuals); *Horkey v. J.V.D.B. &*

*Assocs.*, 333 F.3d 769, 772 (7th Cir. 2003) ($350 actual); *Huff v. Dobbins, Fraker,*

*Tennant, Joy & Perlstein*, 243 F.3d 1086, 1090 (7th Cir. 2001) ($100 actuals); *Chauncey*

*v. JDR Recovery Corp.*, 118 F.3d 516, 517, n. 1 (7th Cir. 1997) (no actuals); *Tolentino v.*

*Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) (§ 1692e(11) notice; no actuals); *Clomon v.*

*Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993) (no actuals); *Edwards v. National Business*

*Factors, Inc.*, 897 F. Supp. 455, 458 (D. Nev. 1995) (no actuals; $1,000 for §1692g

violation); *Withers v. Eveland*, 988 F. Supp. 942, 948 (E.D. Va. 1997) (no actuals);

---

*Co., L.P.A.*, 434 F.3d 432, 442 (6th Cir. 2006) ("This cost can simply be passed on to the client; moreover, because all attorney debt collectors would have the same incentive to make this preliminary investigation, Defendant's competitive position would not be harmed.").  The same would be true for setting up a telephone system, but only if the collector–unlike Carlisle–is willing to comply with the law.

[10] Obviously, not every case goes to the United States Supreme Court.  However, the Sixth Circuit has decided dozens of FDCPA cases, and two-level litigation is still expensive for plaintiffs and their attorneys.

Ms. Jerman deserves the same award.  She prosecuted this matter for a total of four and

one-half years–from the filing of the complaint in June of 2006 to the present.  She lost in

two separate courts and agreed to continue as Plaintiff through the Supreme Court

decision and on remand.  She executed a declaration in support of class certification

(Doc. 45-2), and traveled to California to confer with attorneys and law students working

on the Supreme Court brief.  See Declaration of Edward A. Icove, Exhibit D (attached

hereto).  Her persistence led to only the second FDCPA case ever to reach the Supreme

Court, resulting in a truly landmark decision in favor of consumers, one that will prevent

aggressive debt collectors like Carlisle from benefiting financially from the excuse that

they are blameless because they are "ignorant of the law."[11]  A modest award of $1,000 is

eminently reasonable in these circumstances.[12]

**B.    CARLISLE'S STATUTORY ARGUMENTS ARE UNPERSUASIVE.**

     1.    Frequency and Persistence as a Factor Under 15 U.S.C.
          § 1692k(b)(2).

Carlisle argues that "the 'frequency' of noncompliance was once [and] the

'persistence' was zero." (Doc. 54, Memo. at 4)  Such a contention is preposterous.  Carlisle

sent 4,211 letters which violated 15 U.S.C. § 1692g(a)(3) to class members.  However,

---

[11] The Supreme Court flatly rejected Carlisle's claim of lack of intention based on not knowing its conduct violated a law. *Jerman v. Carlisle*, 130 S.Ct. at 1612.  As Ms. Jerman will discuss more fully below, the Supreme Court holding undercuts Carlisle's 'ethics' and 'innocence' themes, present throughout its memorandum.

[12] Carlisle's main authority for awarding less on the basis of the Supreme Court decision in this case is *Braunschweig v. Banco Services, Inc*., 792 N.W.2d 240 (Table) (Wis. App., 2010).  However, all that case says about *Jerman v. Carlisle* is that it stands for the proposition that "vesting the court with discretion to award 'additional' damages capped at $1000 is a guard against abusive lawsuits for trivial violations." 792 N.W. 2d at ¶ 8.  Carlisle certainly does not describe Ms. Jerman's suit as "abusive," and she demonstrates throughout this memorandum that the violation was not trivial.

Carlisle also violated the law for approximately 11 years prior to the filing of this action. The first 10 years of consumers were not class members due to the FDCPA's one year statute of limitations, 15 U.S.C. § 1692k(d).   Since Carlisle, who has "processed thousands of foreclosure cases of all types since 1970 in every county in the State of Ohio (McNellie Depo., Exhibit A at 7), violated the law for another 10 years, a reasonable inference exist that thousands of consumers received the illegal notice.   See *Kelly v. Montgomery Lynch & Associates, Inc.*, 2007 WL 4562913 at  *3, 69 Fed.R.Serv.3d 1126 (N.D. Ohio 2007) ("general knowledge and common sense" utilized in determining numerosity in FDCPA class action) (Gwin, J).

Moreover, Carlisle sent the unlawful notice to parties to this action–the class members–not to strangers to the litigation. See *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500, 506 (N.D. Ill. 2009) (debt collector's conduct with respect to non-parties immaterial in an individual action "as opposed to a class action"); *Richard v. Oak Tree Group Inc.*, 2008 WL 5060319 (W.D. Mich. Nov. 21, 2008), at *8 (distinguishing between "frequency and persistence" in individual and class actions).   They must all be considered violations.

Accepting Carlisle's argument would encourage debt collectors violating the FDCPA to do so on as wide a scale as possible and then argue that thousands of violations are the same as one and the consumer should therefore take nothing for stopping them.   This makes little sense in light of the Congressional policy, set forth at length above, of permitting statutory damages in order to deter debt collectors from just this sort of aggressive collection practice.   Carlisle's argument is without merit.

2.      Nature of Noncompliance.

Next, Carlisle argues that "[t]he nature of noncompliance in this case was trivial, technical and harmless." (Doc. 54, Memo. at 8)   Nothing could be further from the truth. As the Sixth Circuit has noted, "Congress added 15 U.S.C. § 1692g specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007), citing *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222 (9th Cir. 1988); accord, *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982) ("Congress clearly required the notice to inform the debtor that he could dispute any portion of the debt."); *Kelly v. Montgomery Lynch & Associates, Inc.*, 2008 WL 1775251 (N.D. Ohio 2008), at *8 (Gwin, J.).  The rights and obligations established by § 1692g were considered by the Senate to be a "significant feature" of the FDCPA.  S. Rep. No. 382, 95th Cong., 1st Sess. at 4.

The Ninth Circuit expounded further on the purpose of these notice provisions in *Camacho v. Bridgeport Financial Inc.*, 430 F.3d 1078 (9th Cir. 2005):

> Oral dispute of a debt precludes the debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute. 15 U.S.C. § 1692e(8). . . .  Additionally, if a consumer owes multiple debts and makes a payment, the debt collector is prohibited from applying such payment to a debt which is in dispute. . . .  Moreover, a debtor's oral notification to a debt collector entitles a debtor to relief under § 1692c(a)(1), which bars communication with a debtor at "a time or place known or which should be known to be inconvenient to the consumer."

*Id*. at 1082 (citations omitted).

Also, the oral dispute of a debt sets in motion a consumer's right under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a)(2) to have the dispute noted on his/her credit report.  See 15 U.S.C. § 1692e(8);  *Brady v. Credit Recovery Co.*, 160 F.3d 64, 66

12

(1st Cir. 1998) and *Camacho v. Bridgeport Financial Inc, supra*. The ability to dispute a debt orally is an important right because it gives rise to the right to have the disputed debt noted on a person's credit report, which affects an individual's credit score, and creditworthiness. Thus, Carlisle's violation was anything but "trivial, technical and harmless"–it deprived Ms. Jerman and the Class of substantial rights under the FDCPA.

        3.      <u>Carlisle's Resources.</u>

The parties have stipulated that Carlisle's net worth is $1,305,225.17. (Doc. 43, Stipulations at ¶ 5; Doc. 44, Order at ¶ 5) The award of the maximum amount of statutory damages of $1,000.00 for Ms. Jerman and $13,052.22 for the Class will not seriously impair Carlisle's ability to remain in existence.

        4.      <u>Number of Persons Affected.</u>

Carlisle argues that "although 4,211 individuals were affected as a result of receiving the Validation Notice, neither Ms. Jerman nor a single Class member was 'adversely' affected." (Doc. 54, Memo. at 8-9) Its sole justification for this statement, which contradicts virtually all of the case law Ms. Jerman has provided above, is that it "necessarily follows from the concession of Ms. Jerman and the Class that they suffered no actual damages." (*Id*. at 9) Carlisle is wrong for four reasons.

First, it is well established that the amount of actual damages is not a factor to be considered pursuant to 15 U.S.C. § 1692k(b)(2), nor is such an award a prerequisite for statutory damages. See cases cited in Part A(1), *supra*. Carlisle has not attempted to distinguish this black-letter law.

Second, actual damages are not precluded for class members. The parties stipulated only that Ms. Jerman is not "seeking" actual damages for herself or the Class.

(Doc. 43, Stipulations ¶ 5; Doc. 44, Stipulations, ¶ 5; Doc. 45, Exhibit 2, Jerman Declaration, ¶ 4).  If any class member has actual damages, he/she may opt out of the class pursuant to Rule 23(c)(2).  *E.g.*, *Uniondale Beer Co., Inc. v. Anheuser-Busch, Inc.*, 117 F.R.D. 340, 343 (E.D.N.Y. 1987) ("[A]any class member holding a different position on the benefits of the lawsuit or believing that its interests conflict with those of the named representatives may 'opt out' pursuant to the provisions of Rule 23(c)(2)")..

Third, as mentioned above, a reasonable inference exist that thousands of persons were affected who are not class members.  Carlisle does not mention this fact.

Finally, Carlisle is not even able to come up with a single authority for the proposition that a court should lower its statutory damage award when there are no compensatory damages.  It certainly would not argue the opposite–that maximum statutory damages should be awarded where compensatory damages are the highest.  There is simply no connection between the two.  See cases cited in Part A(3), *supra*.

     5.    <u>The Extent to Which Noncompliance Was Intentional.</u>

The deposition testimony in this case undermines Carlisle's claim of perfect innocence.  The deposition of Richard L. McNellie, president of the Carlisle law firm, demonstrates that Carlisle intentionally read the statute for its own benefit.  The firm's policy is contained in the Federal Fair Debt Collection Practices Act Procures Manual ("FDCPA Manual") (Written Discovery, Exhibit B at 9-17)[13] which did not prevent the specific violation in this case.

---

[13] The FDCPA Manual has two sections: "Summary of Provisions" (Written Discovery, Exhibit B at 13-16) and the "Summary of Procedures Which Must be Followed." (*Id.* at 17-18).  If the complaint has not been filed and served upon a consumer who calls Carlisle, a form: "Notice under the Fair Debt Collection Practices Act" is sent out within five days of

Mr. McNellie dropped the "in writing" requirement "which has always been in our notice" because he didn't want the "hassles." (McNellie Depo., Exhibit A, at 39, 60-62, 80).[14]  His firm's lack of good faith is also demonstrated by the fact that there is no provision in Carlisle's FDCPA manual for dealing with oral disputes of debts after service of the summons and complaint. (Written Discovery, Exhibit B at 16, ¶ 1(b))[15]  Moreover, Mr. McNellie's rationale for rejecting the oral dispute mechanism of § 1692g(a)(3) is defective and demonstrates bad faith.

Mr. McNellie has no problem with consumers calling his firm for "other information." (McNellie Depo., Exhibit A at 126-127).  However, he believes that oral disputes of the amount owed his clients should not be the subject of telephone calls, not because he so read the FDCPA but because his firm "does not report defaults or credit information to third parties," and only "accepts full reinstatements and full payoffs," and he

---

the telephone call.  Otherwise, Carlisle relies upon the form: "Notice under the Fair Debt Collection Practices Act" that is attached to the complaint to comply with § 1692g's notice requirements. (McNellie Depo., Exhibit A at 25, 32, 36; Foster Depo., Exhibit C at 15-16).   References to these notices are contained in the "Summary of Provisions" where it is state: "We currently use a form which complies with this provision." (*Id*. at 14 However, there is no reference in the FDCPA manual for the staff to deal with oral disputes of debts after service of the summons and complaint, and there is no procedure in the manual to avoid making legal mistakes as to the applicability of the FDCPA.

[14] At his deposition, Mr. McNellie adamantly believes that this Court's decision was wrong, and is "still subject to dispute" and further "interpretation." (McNellie Depo. Exhibit A, at 39-40, 80, 88). He's seen no decision that would change [his] mind." *Id*. at 125.  The persistent denial of the violation should play a role in awarding statutory damages. *E.g., Nelson v. Select Fin. Servs., Inc*., 2006 WL 1672889 (E.D. Pa. 2006) at *2.

[15] Mr. McNellie did not make any changes in his firm's FDCPA manual to avoid making legal mistakes as to the applicability of the FDCPA. The firm's only oral instructions were to check to make sure that the phrase "in writing" were not in the notice. (McNellie Depo., Exhibit A at 88-90).

allegedly does not want to be "misleading" to the least sophisticated consumer. (McNellie

Depo., Exhibit A at 75-76). However, as one court has recognized, §1692g(a)(3) is

"perhaps intended to benefit undereducated or handicapped consumers who are unable to

communicate in writing." *Miguel Angel Rivera Almodovar v. P.V. Collection Services,*

*Inc.,* 2011 WL 381742 (D. P.R. 2011) at *3.

      McNellie admitted that he neither read nor heard of the key case expressing the

majority view on this matter, *Camacho v. Bridgeport Financial, Inc.*, *supra*, until this

action was filed. (McNellie Depo., Exhibit A at 71). At that time the vast weight of

authority held that dispute of a debt need not be in writing. *E.g.*, *Turner v. Shenandoah*

*Legal Group, P.C.,* 2006 WL 1685698 (E.D. Va., June 12, 2006); *Baez v. Wagner &*

*Hunt, P.A.,* 442 F.Supp.2d 1273 (S.D. Fla. 2006); *Walters v. PDI Management Services,*

2004 WL 1622217 (S.D. Ind. 2004); *In re Risk Management Alternatives, Inc., Fair Debt*

*Collection Practices Act,* 208 F.R.D. 493 (S.D. N.Y. 2002); *In re Sanchez,* 173 F.

Supp.2d 1029 (N.D. Cal. 2001); *Castro v. ARS Nat. Services, Inc.,* 2000 WL 264310

(S.D. N.Y. 2000); *Ong v. American Collection Enterprises, Inc.,* 1999 WL 51816 (E.D.

N.Y. 1999); *Reed v. Smith, Smith & Smith,* 1995 WL 907764 (M.D. La. 1995); *Young v.*

*Credit Bureau of Lockport, Inc.,* 1989 WL 79054 (W.D. N.Y. 1989), *order modified*, 729

F.Supp. 1421 (W.D. N.Y. 1989); *Harvey v. United Adjusters,* 509 F.Supp. 1218, 1221 (D.

Or. 1981); *contra, Graziano v. Harrison*, *supra*; *Ingram v. Corp. Receivables, Inc.,* 2003

WL 21018650 (N.D. Ill. 2003); *Castillo v. Carter,* 2001 WL 238121 (S.D. Ind. 2001);

*Sturdevant v. Thomas E. Jolas, P.C.,* 942 F.Supp. 426 (W.D. Wis. 1996).

      Mr. McNellie admitted that he intentionally adopted the "in writing" requirement

because he affirmatively believed it was the "approved practice in this Judicial District

based upon his "interpretation of the law." (McNellie Depo., Exhibit A, at 79-80). At his

deposition, Mr. McNellie defined "Judicial District" to be the Sixth Circuit, but relied upon

the Third Circuit's opinion in *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991), and an

unreported district court decision from Michigan, *Diamond v. Corcoran*, 1992 U.S. Dist.

LEXIS (W.D. Mich. 1992), neither of which are controlling in the Sixth Circuit.

(McNellie Depo., Exhibit A at 56-57, 75).

 Even the American Collectors Association ("ACA"), a debt collectors' trade group

for debt collectors (which filed an amicus brief in the Supreme Court on behalf of

Carlisle, see - 2009 WL 4378900), has specifically directed its industry members to use

its § 1692g model disclosure form that tracks the statutory language verbatim, including

specifically § 1692g(a)(3):

> Unless you notify this office within 30 days after receiving this notice that
> you dispute the validity of this debt or any portion thereof, this office will
> assume this debt is valid. If you notify this office in writing within 30 days
> after receiving this notice that the debt or any portion thereof is disputed, this
> office will obtain verification of the debt or obtain a copy of a judgment, if
> there is one and mail you a copy of such judgment or verification. If you
> request this office in writing within 30 days after receiving this notice, this
> office will provide you with the name and address of the original creditor, if
> different from the current creditor.

See *McCabe v. Crawford and Company*, 272 F. Supp. 2d 736, 749-50 (N.D. Ill. 2003).

 This model disclosure form has been widely published and has never been

seriously challenged in any jurisdiction, including the Third Circuit in a post-Graziano

decision. See, *e.g., Wilson v. Quadremed Corp.*, 225 F.3d 350, 352 (3rd Cir. 2000);

*Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 994 (7th Cir. 2003); *Marshall-*

*Mosby v. Corporate Receivables, Inc.*, 194 F.3d 830, 832-33 (7th Cir. 1999); *Russell v.*

*Equifax A.R.S.*, 74 F.3 at 32; *Jang v. A.M. Miller and Associates*, 122 F.3d 480, 482 (7th

17

Cir. 1997); *Olson v. Risk Management Alternatives, Inc.*, 366 F.3d 509, 511 (7th Cir. 2004).  Nevertheless, McNellie testified at his deposition that he had no awareness of the ACA or the ACA form.  (McNellie Depo., Exhibit A at 103-04, 123).

Defendant Adrienne Foster ("Ms. Foster"), an attorney employed by the Carlisle firm, also failed to act in good faith.  She admitted she had some familiarity with the FDCPA. (Foster Depo., Exhibit C (attached hereto) at 10)  Her duties included preparing a foreclosure complaint, and making sure that "everything is done properly." (McNellie Depo., Exhibit A at 24-25)  However, Ms. Foster admits that she did not conduct such an investigation on the § 1692g(a)(3) issue; rather she blindly utilized Mr. McNellie's form notice. (Foster Depo., Exhibit C, at 22-23. 35-36)[16]  Therefore, Ms. Foster did not act in good faith either.

Carlisle insists on its innocence, and that everything it did was unintentional.[17]  As Ms. Jerman has demonstrated above, this is a totally false impression.  Moreover, the Sixth Circuit has held that Congress intended the FDCPA to impose strict liability:

---

[16] Additionally, in Carlisle's motion to dismiss, Ms. Foster argues that *Savage* is controlling, and that she relied upon it.  However, at her deposition, she admitted that she never read the case.  (Foster Depo., Exhibit C at 21-22)

[17] In still another attempt to project innocence and blame everyone but itself, Carlisle argued before the Supreme Court that "the FDCPA's private enforcement provisions have fostered a 'cottage industry' of professional plaintiffs who sue debt collectors for trivial violations of the Act. . . .  If debt collecting attorneys can be held personally liable for their reasonable misinterpretations of the requirements of the Act, Carlisle and its *amici* foresee a flood of lawsuits against creditors' lawyers by plaintiffs (and their attorneys) seeking damages and attorneys fees." *Jerman v. Carlisle*, 130 S. Ct. at 1620. And the dissenters argued that the FDCPA creates "incentives to file lawsuits even where no actual harm has occurred" and are illustrative of what the dissent perceives to be a 'troubling dynamic of allowing certain actors in the system to spin even good-faith, technical violations of federal law into lucrative litigation." *Id*. at n. 15. Seven Justices rejected these arguments.  This Court should also reject them by granting the maximum award under the FDCPA, "modest" though it may be.

> These provisions sweep with extraordinary breadth, *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992), and call for strict liability, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages, *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir.2007) (citing 15 U.S.C. § 1692k(a)).

*Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009) (internal quotations omitted).

This is not an unfair result, even to a blameless debt collector (which Carlisle is not). As the Supreme Court put it in another context, "[I]t does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035 (1965) (citation and quotation marks omitted); see *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2nd Cir. 1996) (applying this principle to the "general context of consumer protection–of which the Fair Debt Collection Practices Act is a part").

## C.    CARLISLE'S "ETHICAL DILEMMA" ARGUMENT IS OF NO SUBSTANCE.

Carlisle argues, in effect, that a lawyer who is required to avoid "personal liability and damages" has an irreconcilable conflict with his client, but only where "additional damages are assessed in any amount where the violation is plainly technical and harmless." (Doc. 54, Memo. at 12). Carlisle is wrong for two reasons.

First, Carlisle's only support for this position is the dissent in *Jerman v. Carlisle*, 130 S.Ct. at 1620-21, which says nothing about technical or harmless violations.[18] In fact, technicalities have nothing to do with Carlisle's argument. An attorney debt collector contemplating whether to use abusive strong-arm tactics to collect a debt for his

---

[18] Of course, Ms. Jerman vigorously denies that there was anything technical or harmless about Carlisle's violations. See Part B(2), *supra*.

client has the same ethical problem:  If the attorney collects the debt in an illegal manner, his client will gain, but the attorney risks sanctions.  Does Carlisle seriously mean to argue that lawyers should never be at risk for monetary punishment as long as they are zealously representing their clients, no matter how much they violate the law?

Carlisle has obviously not thought this argument through.  The same argument certainly made no impression on the seven-judge majority in *Jerman v. Carlisle.*  This Court should also reject it.

Second, there is no record evidence that Carlisle ever considered its ethical duties to its clients when it was considering whether to follow § 1692g(a)(3).  The right to dispute orally has nothing to do with zealously representing a client. Carlisle's violation had to do with its avoidance of oral interaction with Ms. Jerman, and with the Class. Carlisle's actions were performed pursuant to its interest in not accepting oral disputes, after the service of the summons and complaint, which McNellie incredulously claims was also in the best interest of consumers.  However, taking away the right to dispute a debt orally is clearly detrimental to the least sophisticated consumer, who would be more inclined to pick up the phone and call Carlisle, rather than write a letter.  Thus, Carlisle's ethical argument is of no substance, and the Court should reject it.

**D.**    **C**ARLISLE'S **F**IRST **A**MENDMENT **A**RGUMENT IS **S**IMILARLY **W**ITHOUT **M**ERIT.

Carlisle cites the Supreme Court dissent in *Jerman v. Carlisle* again, as well as *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 545, 121 S.Ct. 1043 (2001), in arguing that the First Amendment prevents attorneys from being "punished for making a good-faith legal error . . . ." (Doc. 54, Carlisle Memo. at 13)  The Sixth Circuit expressly rejected this argument in *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 615-16 (6th

20

Cir. 2009).  If the First Amendment does not help an attorney with regard to statements made in court, then, *a fortiori*, it should not apply to Carlisle's office conduct here.

## CONCLUSION

For the foregoing reasons, this Court should grant Ms. Jerman's motion for summary judgment, award her $1,000 in statutory damages, and award the class $13,052.25 in statutory damages pursuant to 15 U.S.C. 1692k(a)(2)(B).

Respectfully submitted,

/s/ Stephen R. Felson
Stephen R. Felson  (0038432)
215 E. Ninth St., Suite 650
Cincinnati, Ohio  45202
(513) 721-4900
(513) 639-7011 (fax)
E-Mail: SteveF8953@aol.com

/s/ O. Randolph Bragg
O. Randolph Bragg, *pro hac vice*
Horwitz, Horwitz and Assoc.
25 E. Washington, Suite 900
Chicago, Illinois 60602
(312) 372-8822
(312) 372-1673 (Facsimile)
E-mail: rand@horwitzlaw.com

/s/ Edward A. Icove
Edward A. Icove (0019646)
Icove Legal Group, Ltd.
550 Public Square, Suite 627
Terminal Tower
Cleveland, OH 44113
(216) 802-0000
(216) 802-0002 (fax)
E-mail: ed@icovelegal.com
Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I hereby certify that on Feburary 14, 2011 this document was filed electronically. Also, notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this through the Court's system.

/s/ Edward A. Icove
Attorney for Plaintiff and the Class