**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Karen L. Jerman,** | ) | **CASE NO. 1:06 CV 1397** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Carlisle, McNellie, Rini, Kramer** | ) | <u>**Memorandum of Opinion and Order**</u> |
| **& Ulrich, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**Introduction**</u>

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. 53) and Defendant's Motion for Partial Summary Judgment on Damages (Doc. 54).  This case arises under the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* The issue is whether plaintiff and the class should be awarded additional damages under the statute.   For the following reasons, plaintiff's motion is granted as to the underlying claim and denied as to damages.  Defendant's motion is granted.

<u>**Facts**</u>

The United States Supreme Court has set forth the following relevant facts and

procedural history:

> Respondents [defendants] in this case are a law firm, Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A., and one of its attorneys, Adrienne S. Foster (collectively Carlisle). In April 2006, Carlisle filed a complaint in Ohio state court on behalf of a client, Countrywide Home Loans, Inc. Carlisle sought foreclosure of a mortgage held by Countrywide in real property owned by petitioner [plaintiff] Karen L. Jerman. The complaint included a "Notice," later served on Jerman, stating that the mortgage debt would be assumed to be valid unless Jerman disputed it in writing. Jerman's lawyer sent a letter disputing the debt, and Carlisle sought verification from Countrywide. When Countrywide acknowledged that Jerman had, in fact, already paid the debt in full, Carlisle withdrew the foreclosure lawsuit.

> Jerman then filed her own lawsuit seeking class certification and damages under the FDCPA, contending that Carlisle violated § 1692g by stating that her debt would be assumed valid unless she disputed it in writing.[1] While acknowledging a division of authority on the question, the District Court held that Carlisle had violated § 1692g by requiring Jerman to dispute the debt in writing.[2] The court ultimately granted summary judgment to Carlisle, however, concluding that § 1692k(c) shielded it from liability because the violation was not intentional, resulted from a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. The Court of Appeals for the Sixth Circuit affirmed. Acknowledging that the

---

[1] Section 1692g(a)(3) requires a debt collector, within five days of an "initial communication" about the collection of a debt, to send the consumer a written notice containing, inter alia, "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."

[2] The District Court distinguished, for instance, *Graziano v. Harrison*, 950 F.2d 107, 112 (3rd Cir. 1991), which held a consumer's dispute of a debt under § 1692g must be in writing to be effective. Noting that district courts within the Sixth Circuit had reached different results, and distinguishing one unpublished Sixth Circuit decision which Carlisle suggested approved a form with an in-writing requirement, the court adopted the reasoning from *Camacho v. Bridgeport Financial, Inc*., 430 F.3d 1078, 1080-1082 (9th Cir. 2005), and held that the plain language of § 1692g does not impose an "in writing" requirement on consumers.

Courts of Appeals are divided regarding the scope of the bona fide error defense, and that the "majority view is that the defense is available for clerical and factual errors only," the Sixth Circuit nonetheless held that § 1692k(c) extends to "mistakes of law." The Court of Appeals found "nothing unusual" about attorney debt collectors maintaining "procedures" within the meaning of § 1692k(c) to avoid mistakes of law. Noting that a parallel bona fide error defense in the Truth in Lending Act (TILA), 15 U.S.C. § 1640(c), expressly excludes legal errors, the court observed that Congress has amended the FDCPA several times since 1977 without excluding mistakes of law from § 1692k(c).[3]

[The United States Supreme Court] granted certiorari to resolve the conflict of authority as to the scope of the FDCPA's bona fide error defense.

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605 (2010) (footnotes in the original).

The Supreme Court reversed the judgment of the Sixth Circuit and held that the bona fide error defense[4] in the FDCPA does not apply to a violation of the Act resulting from a debt collector's incorrect interpretation of the legal requirements of the FDCPA.

---

[3]    Because the question was not raised on appeal, the Court of Appeals did not address whether Carlisle's inclusion of the "in writing" requirement violated § 1692g. We likewise express no view about whether inclusion of an "in writing" requirement in a notice to a consumer violates § 1692g, as that question was not presented in the petition for certiorari. Compare *Graziano, supra*, at 112 (reading § 1692g(a)(3) to require that "any dispute, to be effective, must be in writing"), with *Camacho, supra*, at 1082 (under § 1692g(a)(3), "disputes need not be made in writing").

[4]    The Act's bona fide error defense states, "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).

3

This matter is now before the Court upon the parties' cross-motions for summary judgment on damages.

**<u>Discussion</u>**

Plaintiff moves for summary judgment on two bases:  the merits of the underlying FDCPA cause of action and the amount of statutory damages under 15 U.S.C. § 1692k(a)(2)(B).  Defendants move for partial summary judgment on the basis that neither Jerman nor her class is entitled to an award of additional damages under the statute.  Thus, as the motions address the same issues they will be considered simultaneously.

First, plaintiff seeks summary judgment in her favor on the issue previously decided by this Court, i.e., defendants' form validation notice violates the FDCPA insofar as it states that disputes must be made in writing.  Defendants do not dispute that the Court's ruling remains the law of the case. The Court agrees that plaintiff is entitled to summary judgment on the merits of the underlying claim since the issue of whether the "in writing" requirement violates the Act was never presented on appeal.

Second, plaintiff contends that the Court[5] should award the maximum amount of statutory damages up to the statutory cap, i.e., $1,000.00 to Ms. Jerman and $13,052.35 to the class. In its own motion and in opposing plaintiff's motion, defendants assert that the Court should not award additional damages to Ms. Jerman and the class.

_____

[5]     It is undisputed that this issue is for the Court, not the jury, and the Act grants discretion to the district court in assessing statutory damages. See 15 U.S.C. § 1692k(a)(2)(A) (providing statutory damages shall be awarded as the *court* may allow), 15 U.S.C. § 1692k(b) (providing that in determining the amount of liability, the *court* shall consider the factors).

4

Plaintiff does not seek actual damages under 15 U.S.C. § 1692k(a)(1)[6], but seeks an award of statutory damages under 15 U.S.C. § 1692k(a)(2)(B), which states that in the case of a class action, the representative (named plaintiff) of the class may be awarded "additional damages" up to $1,000 as provided in § 1692k(a)(2)(A) and that class members may be awarded "such amount as the court may allow ... without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector."§1692k(a)(2)(B)(ii).

Thus, the Court has the authority to award Ms. Jerman any amount up to $1,000.  As to the class members[7], the parties have stipulated herein that the net worth of the debt collector (i.e., the Law Firm) is $1,305,225.17. (Doc. 44) Because one percent of the net worth ($13,052.25) is less is less than $500,000, the maximum class recovery is $13,052.25.

In making its determination in a class action, the Court considers the following statutory factors, "among other relevant factors":

> the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

15 U.S.C. § 1692k(b)(2). Plaintiff maintains that consideration of the factors weigh in favor of awarding the maximum statutory damages.  Defendants disagree.

**(1) frequency and persistence of noncompliance by the debt collector**

---

[6]     The parties have stipulated, "Neither Plaintiff nor the class are seeking 'actual damages' under 15 U.S.C. § 1692k(a)(1)." (Doc. 44 ¶ 1)

[7]     The stipulated potential class is 4,211.

5

Plaintiff contends that defendants' noncompliance was frequent and persistent given that in the course of one year, defendants sent 4,211 (one to each class member) letters which violated the FDCPA.

Defendants assert that the frequency of noncompliance was once, and the persistence was zero because only a single validation notice was sent to Ms. Jerman and each class member, and no one was badgered or harassed in connection with the notices. Defendants maintain that the Court cannot judge frequency and persistence on the total number of validation notices sent.

First, defendants contend that there was no persistence because it was impossible for the Law Firm to know that the words "in writing" would be found to violate the statute. Defendants point to this Court's determination that the Law Firm's violation was not intentional, it resulted from a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error.  On appeal, plaintiff only contested whether the bona fide error defense applied to mistakes of law, and whether a question of fact remained as to whether defendants maintained procedures reasonably adapted to avoid the violation.  The Sixth Circuit affirmed and also found that defendants maintained procedures adapted to avoid legal error relating to the "in-writing" requirement.  The United States Supreme Court reviewed only the scope of the FDCPA's bona fide error defense.  Thus, defendants assert, because it is the law of the case that the violation (noncompliance) was unintentional and made in good faith after maintaining procedures to avoid the error, there could have been no persistence in wrongful conduct.  Such wrongful conduct was only determined to be so after the lawsuit was filed, and when the Law Firm received the lawsuit it

6

deleted the "in writing" words from the validation notice.

For the reasons discussed below with regard to factor number five, the Court finds that its determination concerning whether defendants acted intentionally has not been reversed.

Second, defendants argue that because one of the factors listed in § 1692k(b)(2) is "the number of persons adversely affected,"the "frequency and persistence of noncompliance" factor must refer to something other than the number of persons adversely affected. Consequently, plaintiff's assertion that the total number of notices sent (one to each class member) equates to frequency of conduct would render the terms superfluous of each other. Rather, defendants contend, because the "number of persons adversely affected" logically refers to the number of individuals who received the validation notice, the "frequency and persistence of noncompliance" must mean something different.  The only logical alternative is that it refers to the consistency of the debt collector's actions with respect to the individual debtor.

Plaintiff counters that defendants' position is "preposterous" given that not only did the Law Firm send 4,211 letters which violated the Act to class members, but it also violated the law for approximately 11 years prior to the filing of this action with the first 10 years of consumers not being class members due to the FDCPA's one year statute of limitations. The Court can reasonably infer, it asserts, that thousands of consumers received the illegal notice. Defendants deny that they violated the law for 11 years prior to the filing of the action, but instead only when this Court decided that the words "in writing" constituted a violation. Plaintiff also contends that accepting defendants' argument would encourage debt collectors violating the FDCPA to do so on as wide a scale as possible and then argue that thousands of

7

violations are the same as one and the consumer should therefore take no money for stopping them.

For the following reasons, the Court does not find that defendants' noncompliance was frequent and persistent.

The Court agrees with defendants' arguments with regard to the persistence factor. Although one notice was sent to each member of the class, there is no evidence that anyone was  was badgered or harassed.  Additionally, while the FDCPA is a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the Act, *Federal Home Loan Mtg. Corp. v. Lamar,* 503 F.3d 504 (6th Cir. 2007), there was no persistence on defendants' part because the Law Firm could not have known that this Court would find that the words "in writing" violated the statute.  The Court also agrees with defendants' contentions regarding the frequency factor.  Given that another factor to be considered is "the number of persons adversely affected," it would not make sense to accept plaintiff's position that frequency also refers to the number of persons who received the notice.  More likely, frequency would refer to the Law Firm's actions with respect to Jerman and each member of the class.  As stated earlier, each only received one notice.

Plaintiff cites to *Kelly v. Montgomery Lynch & Associates, Inc.,* 2007 WL 4562913 (N.D.Ohio Dec. 19, 2007), in support of its assertion that because defendants violated the law for another ten years during which those affected are not class members due to the applicable one year statute of limitations, the Court can reasonably infer that thousands of customers received the illegal notice.  Apparently, this lends credence to the notion that defendants' noncompliance was frequent. Plaintiff points to *Kelly*'s recognition that "general knowledge

8

and common sense" govern in determining numerosity in a FDCPA class action.  While the latter statement of the law may be true, it does not mean that this Court should consider defendants' actions in the prior ten years in determining frequency and persistence, especially given that the Court had not determined that the letter violated the law at that point.

Plaintiff additionally points to *Donnelly v. NCO Financial Systems, Inc.,* 263 F.R.D. 500 (N.D.Ill. 2009), for the proposition that because defendants sent the notice to parties in this action (the class) and not strangers to the litigation, each notice must be considered a violation. *Donnelly* recognized, in deciding a motion to compel, that "Courts in this jurisdiction have found that there is nothing in the clear language of the FDCPA which suggests that - in an individual action, as opposed to a class action - a court looks to a debt collector's practices regarding persons other than the plaintiff in determining the 'frequency and persistence of noncompliance.'" While it is true that courts do not consider, in individual actions, the defendant's conduct with respect to other consumers who are not plaintiffs in the action, this does not mean that in class actions the court considers consumers other than those in the class. Merely because in class actions the court considers all the defendant's conduct toward each member of the class, this does not equate to frequent conduct given that, as concluded herein, frequency cannot mean the same as the "number of persons adversely affected."  In fact, plaintiff's argument in this regard is consistent with defendants' argument that case law establishes that "frequency and persistence" in individual actions refers to defendant's conduct towards the individual debtor- with several letters to the same debtor being found to constitute frequency and persistence.  Application in a class action would mean that the Court looks to the amount of notices sent to plaintiff and each of the individual

class members.

Finally, plaintiff points to *Richard v. Oak Tree Group, Inc.,* 2008 WL 5060319 (W.D.Mich. 2008), for the proposition that courts distinguish between "frequency and persistence" in individual and class actions.  Defendants cite to the same case in support of their own argument.  Indeed, the reasoning set forth in that case (adopting *Dewey v. Associated Collectors, Inc.*, 927 F.Supp. 1172 (W.D.Wis.1996) ) has been accepted here:

> In setting forth the factors that courts should consider in awarding statutory damages for violations of the act, § 1692k(b) makes a distinction between individual actions and class actions. Courts are to consider the "frequency and persistence of noncompliance by the debt collector" in each type of action. In class actions, courts are to consider "the number of persons adversely affected" as well. § 1692k(b)(2).

> If the term "the number of persons adversely affected" is to have meaning, it must be something additional to the "frequency and persistence of noncompliance." Otherwise, the term would be superfluous and contradict the familiar statutory canon that an interpretation should give meaning to all components of a statute. Applying this canon, I find that "frequency and persistence of noncompliance" does not pertain to actions taken by a debt collector in other cases but only to the consistency of the debt collector's actions with respect to the debtor bringing suit. If Congress had intended courts to address the issue of a debt collector's comprehensive business activities in individual actions, it would have included "the number of persons adversely affected" or other similar language as a relevant factor in subpart (1) of § 1692k(b). It appears that Congress recognized the inefficiency of delving into such matters in cases where statutory damages are limited to $1000.

The Court finds that plaintiff fails to establish that defendants' noncompliance was frequent and persistent.

**2. Nature of the Noncompliance**

Defendants contend that the nature of noncompliance was trivial, technical, and harmless[8] as evidenced by the fact that plaintiff and the class suffered no actual damages.

---

[8]     The Supreme Court's dissent in *Jerman* found the violation to be technical and harmless.

Furthermore, defendants point out that some cases have found that an "in writing" requirement does not harm the debtor, but actually increases a debtor's protection under the statute.

Plaintiff asserts that the noncompliance misinformed the consumer of the right to dispute the debt orally, making it more difficult to dispute the debt and exercise its rights under the FDCPA.  Plaintiff cites to *Camacho v. Bridgeport Financial, Inc.,* 430 F.3d 1078 (9th Cir. 2005), which found that "an oral dispute triggers multiple statutory protections." There, the Ninth Circuit found that requiring a dispute to be in writing could cause harm to the debtor by depriving it of certain statutory rights:

> Oral dispute of a debt precludes the debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute (15 U.S.C. §1692e(8) ... Additionally, if a consumer owes multiple debts and makes a payment, the debt collector is prohibited from applying such payment to a debt which is in dispute. (15 U.S.C. § 1692h)  Moreover, a debtor's oral notification to a debt collector entitles a debtor to relief under § 1692c(a)(1), which bars communication with a debtor at a time or place known or which should be known to be inconvenient to the consumer.

*Id.* at 1082 (internal citations and quotations omitted).

Defendants assert that while *Camacho* recognized that an "in writing" requirement could potentially cause harm to the debtor, none of this potential harm occurred here because, as evidenced by Richard McNellie's affidavit testimony, in pursuing foreclosures against plaintiffs the Law Firm,

> 1. did not communicate defaults or credit information of any kind to third parties;
>
> 2. did not accept partial payments of debt, but rather, only accepted full reinstatements and full payoffs directed to particular loan accounts; and

11

      3. did not telephone borrowers except to return a borrower's call at the
telephone number left by that borrower.

Nor, defendants assert, has plaintiff produced evidence of such harm.

      Plaintiff argues that defendants' assertion in this regard is equivalent to telling
consumers that while they have been deprived of their statutory right to dispute a debt orally,
they should not worry because other provisions of the FDCPA will not be violated.  Plaintiff
asserts that this flouts the statute's purpose in imposing damages so as to discourage debt
collectors from violating the law.   Moreover, plaintiff or the class members would not have
known when they received the notice that the Law Firm would make an effort not to cause
further harm to them.  As to defendants' assertion that they do not accept partial payments on
debts, plaintiffs contend that this is nonsensical in this context given *Camacho's* reference to
"multiple debts," and the Law Firm does not claim that a consumer with two debts must pay
them off together or not at all- an unlikely position taken by any debt collector.  Finally, while
the Law Firm states that it does not telephone borrowers, which would mean that it does not
communicate with them "at a time or place known or which should be known to be
inconvenient to the consumer," it admits that it "returns a borrower's call" which would still
require it to refrain from violating this prohibition.

      Given the importance of the right to orally dispute a debt as stated in *Camacho*, *supra*,
the Court is not prepared to find that defendants' noncompliance was trivial, and yet the fact
there is no readily apparent harm that was caused, this factor does not weigh in either party's
favor.

      **(3) the resources of the debt collector**

      As previously discussed, the parties have stipulated to defendants' net worth of

$1,305,225.17.  If warranted, Jerman would recover a maximum of $1,000, and the class a maximum of $13,052.25.

Plaintiffs assert that the maximum award would not seriously impair the Law Firm's ability to remain in existence.  Defendants, however, assert that given the good faith nature of the violation and the lack of resultant harm, even a nominal award would unjustly punish the Law Firm when this Court has found that no procedure could have lead it to know that the Court would find an FDCPA violation in the notice sent to plaintiff.

Plaintiff also contends that the maximum amount that could be awarded is minor considering the litigation costs that both sides have incurred up to this point.  Defendants maintain that litigation costs are irrelevant because they are not a statutory factor, nor should they be used as a comparison to conclude that additional damages would be considered "minor."  If the Court were to consider such, defendants assert, it should note that Jerman's initial settlement demand and her subsequent appeals possibly fueled the costs. Plaintiff urges the Court to ignore the latter argument given the "modest" settlement proposal, and the Act's need for sophisticated consumers to bring private actions against those who violate it.

Although the Court agrees with defendants that plaintiff's litigations costs should not be considered, the award sought by plaintiffs would not have a severe impact on the Law Firm's ability to operate.  As stated above, due to the strict liability nature of the statute, damages may be awarded even in the absence of actual damages for defendants' violation of the statute.

**(4)  the number of persons adversely affected**

Defendants contend that while 4,211 Ohio consumers were sent the notice, none was

13

*adversely* affected- as this necessarily follows from Jerman's concession that no actual damages were suffered by her or the class. Plaintiff and the class have not presented evidence that they were adversely affected, harmed, or damaged by the notice.

Plaintiff points out that the amount of actual damages is not a statutory factor to be considered, nor are actual damages a prerequisite to an award of statutory damages. Plaintiff also contends that actual damages are not precluded for class members given that the parties only stipulated that Ms. Jerman is not "seeking" actual damages for herself or the class.  If any class member has actual damages, he may opt out of the class. Plaintiff further asserts that given the fact that the Law Firm sent the notices for 11 years prior to the filing of this lawsuit, a reasonable inference exists that thousands of consumers received the notice.  Thus, all these people, who are not class members, were affected.

Defendants note that plaintiff avoids the word "adversely" while merely repeatedly stating the number of people "affected."  Defendants contend that whether class members may opt out is irrelevant given that if they do so, they will no longer be plaintiffs in the lawsuit.

Plaintiff additionally argues that there is no way to tell how many recipients of the notice were intimidated into waiving their dispute rights, but the FDCPA is designed to be enforced by consumers acting as private attorneys general and, to that end, Congress clearly intended to build some deterrent into the Act.  Defendants urge the Court to reject plaintiff's attempt to only show the number of people which *may* have been affected.  And, despite plaintiff's statement that "there is no way to tell" the number of people adversely affected, defendants assert that the Court can tell by recognizing plaintiff's stipulation that neither she

14

nor the class suffered actual damages.

This Court agrees with defendants that plaintiff fails to show the number of persons *adversely* affected.

### (5) the extent to which the debt collector's noncompliance was intentional

Defendants initially assert that a court *may* consider a debt collector's good faith misinterpretation of the law when deciding the issue of additional damages. Defendants point to language in the *Jerman* opinion which they maintain shows that the Supreme Court preserved a court's ability to consider a debt collector's "good faith misinterpretation of the law" when determining an award of additional damages even though it precluded mistakes of law from the bona fide error defense:

> Carlisle perceives an inconsistency between our reading of the term "intentional" in that provision [bona fide error defense provision] and the instruction in § 1692k(b) that a court look to whether "noncompliance was intentional" in assessing statutory additional damages. But assuming § 1692k(b) encompasses errors of law, we see no conflict, only congruence, in reading the Act to permit a court to adjust statutory damages for a good-faith misinterpretation of law, even where a debt collector is not entitled to the categorical protection of the bona fide error defense.

*Jerman*, 120 S.Ct. at 1619.  On this basis, defendants contend, while a court can no longer consider a debt collector's good faith misinterpretation of the law to excuse its strict liability under the Act, it may consider its good faith misinterpretation of the law in deciding whether to award additional damages.  This Court agrees.

Defendants contend that the noncompliance was not intentional.  In good faith, the Law Firm relied on existing case law in misinterpreting the requirements of the FDCPA.  That misinterpretation only became so after this Court's initial ruling.  According to defendants, this Court's original determination that there was no intentional violation is the law of the

15

case because it was not disturbed on appeal.

Specifically, defendants point to the following language in this Court's June 20, 2007

Memorandum of Opinion and Order:

> [B]ecause the statute was not unambiguous and the law was not settled (and appeared to even favor defendants in this Circuit), defendants' violation was not intentional.
>
> ***
>
> [G]iven the unsettled law that existed on this issue, no procedure could have lead defendants to know that this Court would find an FDCPA violation in the validation notice sent to plaintiff.

(Doc. 31 at 15, 17) On appeal to the Sixth Circuit, plaintiff argued:

> (1) the district court erred in concluding that the FDCPA's bona fide error defense may apply to mistakes of law, and (2) even if the defense does apply to mistakes of law, the district court erred in concluding that Defendants were entitled to summary judgment on the defense, because a question of fact remains as to whether Defendants maintained procedures reasonably calculated to avoid the violation.

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*, 538 F.3d 469, 472 (6th Cir. 2008).

As such, defendants maintain that plaintiff did not contest this Court's findings that the

violation was not intentional or that it resulted from a bona fide good faith error.[9] The Sixth

Circuit determined that the bona fide error defense in the FDCPA applies to mistakes of law,

and the Law Firm maintained procedures reasonably adapted to avoid legal error relating to

the written-dispute requirement.  On appeal to the United States Supreme Court, one issue

---

[9]  As the Sixth Circuit recognized, "To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Jerman*, 538 F.3d at 476-477. On appeal, Jerman only argued that there was a genuine issue of material fact regarding the third prong. *Id.*

was presented:

> This case presents the question whether the 'bona fide error' defense in § 1692k(c) applies to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA.

*Jerman*, 130 S.Ct. 1608.  Thus, defendants assert that the issue of the Law Firm's lack of

intent was not appealed to the Supreme Court.

Plaintiff disagrees and asserts that the Supreme Court expressly rejected defendants'

intention argument when it stated:

> The parties disagree about whether a "violation" resulting from a debt collector's misinterpretation of the legal requirements of the FDCPA can ever be "not intentional" under § 1692k(c). Jerman contends that when a debt collector intentionally commits the act giving rise to the violation (here, sending a notice that included the "in writing" language), a misunderstanding about what the Act requires cannot render the violation "not intentional," given the general rule that mistake or ignorance of law is no defense. Carlisle and the dissent, in contrast, argue that nothing in the statutory text excludes legal errors from the category of "bona fide error[s]" covered by § 1692k(c) and note that the Act refers not to an unintentional "act" but rather an unintentional "violation." The latter term, they contend, evinces Congress' intent to impose liability only when a party knows its conduct is unlawful. Carlisle urges us, therefore, to read § 1692k(c) to encompass "all types of error," including mistakes of law. Brief for Respondents 7.

> We decline to adopt the expansive reading of § 1692k(c) that Carlisle proposes.

*Id.* at 1611.  On this basis, plaintiff contends that the issue of unintentional/intentional was

expressly presented and expressly decided in a higher court. As plaintiff also recognizes,

however, given that the FDCPA is a strict liability statute, the Supreme Court's quote here

shows that the Act imposes liability for any failure to comply without regard to the debt

collector's intent because ignorance of the law is no excuse.

This Court agrees with defendants in this regard.  This Court originally found that the

bona fide error defense applies to mistakes of law, and that the three prongs of that defense

17

were satisfied- including that the violation was not intentional. Plaintiff appealed to the Sixth Circuit challenging whether the bona fide error defense applied to mistakes of law, and whether defendants proved the third prong of the bona fide error defense test, i.e., whether defendants maintained procedures reasonably adapted to avoid any legal error as to the written-dispute requirement. On appeal to the Supreme Court, the only issue was whether the bona fide error defense applied to mistakes of law. As the Supreme Court concluded that the defense did not apply in such a situation, it did not examine whether or not the Law Firm's violation in this case was intentional, i.e., one of the requisites for finding that a defendant qualifies for the bona fide error defense.  This Court found that the violation was not intentional.[10]  Because this issue was not presented on appeal, it has been left undisturbed.

In sum, the Court finds that the frequency and persistence of noncompliance by the debt collector weighs in defendants' favor, the nature of the noncompliance is neutral, the resources of the debt collector weigh in plaintiff's favor, and the number of persons adversely affected as well as the extent to which the debt collector's noncompliance was intentional weigh in defendants' favor.  Because the factors tilt in defendants' favor, additional damages will not be awarded to plaintiff.

### (6) other relevant factors

Plaintiff[11] urges the Court to consider the reasonableness of awarding the statutory

---

[10]    Plaintiff argues at length that the Law Firm's actions in maintaining the "in writing" requirement show that the violation was intentional. Some of these arguments were set forth to the Court in the original motion for summary judgment. The Court need not address these contentions as it is concluding that the original finding was not disturbed on appeal.

[11]    The Court need not address the other relevant factors proposed by defendants as it has already found in their favor.

maximum, i.e., $1,000 to Jerman and $13,052.25 (or a little over $3.00 per class member).

Plaintiff notes the dual purpose in statutory damages- to create a deterrent to unlawful

conduct by debt collectors and to provide an incentive for private individuals to go to court to

enforce compliance even where actual damages are non-existent or hard to quantify.  Plaintiff

maintains that in this case the damages sought are reasonable given the small amount ($3.00)

to be awarded each class member and that cutting the class members' award to zero would

send a message to other debt collectors that the risk of taking an aggressive view of the law is

minimal while the benefits can be great.  Plaintiff surmises that the Law Firm saved money by

not setting up a system to receive and process in-person or telephonic disputes of consumers'

debts for 11 years.   As for Ms. Jerman, the maximum statutory damages is reasonable given

her persistence in prosecuting the case.

Defendants ask the Court to reject plaintiff's assertion that it should consider the

reasonableness of an amount which is potentially recoverable.  Defendants contend that the

concept of reasonableness is already embedded in the "amount" of damages provided by §

1692k(a).  Under that section, the Court has discretion to determine actual damages sustained

(none here), additional damages from $0 to $1,000 for Ms. Jerman, and additional damages

from $0 to $13,025 for the class.  Given that these are relatively nominal, defendants assert

that Congress has already determined that the range of additional damages is *prima facie*

reasonable.  On this basis, the issue is not whether the "amount" in the two ranges is

reasonable, but whether plaintiff has proven the right to any damages under the statutory

factors.

_____

Additionally, as to Ms. Jerman, defendants assert that her "persistence" in prosecuting the case is irrelevant, and that her costs and attorney's fees are covered elsewhere in the Act. As to the class, defendants point out that plaintiff presents no evidence to support the assertion that the Law Firm was unable to receive oral disputes over the 11 years, or that it saved money.  Rather, defendants assert that the evidence shows that it did have telephones during this time frame, and spoke with debtors who called regarding their foreclosure cases. Defendants also dispute plaintiff's characterization of the Law Firm's interpretation of the "in writing" requirement as "aggressive," especially given that this Court found that it acted reasonably.

Further, while acknowledging that statutory damages may be awarded in the absence of actual damages, defendants note that the Act sets *no minimum* damages.  Thus, additional damages are not automatic.  And, defendants contend, where there are no actual damages and no evidence of an intent to engage in abusive and deceptive debt collection practices, additional damages are not warranted.

This Court agrees with the arguments set forth by defendants in this regard.  Plaintiff has not demonstrated that this Court should weigh the reasonableness of the additional damages as a relevant factor to be considered. Additionally, although plaintiff contends that an award of a little over $3.00 to each class member is clearly reasonable, it is difficult to conclude that it would actually be of any consequence to the recipients.

**<u>Conclusion</u>**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted as to the underlying claim and denied as to damages.  Defendant's Motion for Partial Summary

20

Judgment on Damages is granted.  Therefore, "additional damages" will not be awarded.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/13/11